UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                                  :

MARVEL WORLDWIDE, INC.,               :
MARVEL CHARACTERS, INC. and     :
MVL RIGHTS, LLC,                    :
                                                  :     Civil Action No. 10 Civ. 141 (CM) (KNF)
               Plaintiffs,        :
                                                  :
     - against-                   :
                                                  :
LISA R. KIRBY, BARBARA J. KIRBY,   :
NEAL L. KIRBY and SUSAN N. KIRBY,  :
                                                    :
              Defendants.      :
-------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO JOIN INDISPENSABLE PARTIES

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................... ii

PRELIMINARY STATEMENT ................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .................................. 4

ARGUMENT ....................................................................... 6

I.     THIS COURT HAS PERSONAL JURISDICTION OVER ALL DEFENDANTS .......... 7

     A.    Personal Jurisdiction Over Lisa and Neal Kirby Is Proper Under C.P.L.R. § 302(a)(1) Because Marvel's Claim Arises Out of Defendants' Transaction of Business in New York ....................................................... 7

          1.    Defendants Transacted Business in New York ................................ 8

               a.    Service of the Termination Notices is sufficient to constitute a "transaction of business" in New York under C.P.L.R. § 302(a)(1) ............................................. 8

               b.    All of Kirby's conduct that gave rise to the Works and the Termination Notices occurred in New York .......................... 12

          2.    Marvel's Claim Arises out of Defendants' Contacts with New York .................................................................. 14

     B.    The Exercise of Personal Jurisdiction over Lisa and Neal Kirby Comports with Due Process Because They Have Sufficient Contacts with New York and to Litigate Marvel's Claims in New York Is Reasonable .................................. 15

          1.    Defendants' Transaction of Business in New York Is Sufficient to Satisfy the "Minimum Contacts" Requirement of Due Process ..................... 15

          2.    Maintenance of Marvel's Action against Defendants in New York Would Be Reasonable ............................................... 16

II.    LISA AND NEAL KIRBY ARE NEITHER NECESSARY NOR INDISPENSABLE PARTIES ..................................................... 18

III.   DEFENDANTS' ALLEGATIONS OF FORUM SHOPPING AND IMPROPER CONDUCT ARE FALSE ....................................................... 23

CONCLUSION ..................................................................... 25

i

## TABLE OF AUTHORITIES

### CASES

**Page(s)**

*A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993) ....................................................7

*American Optical Co. v. Curtiss*, 59 F.R.D. 644 (S.D.N.Y. 1973) .............................................20

*Andy Stroud, Inc. v. Brown*, No. 08 Civ. 8246 (HB), 2009 WL 539863
    (S.D.N.Y. Mar. 4, 2009) ........................................................................................7, 8, 9

*Asahi Metal Industries Co. v. Superior Court of California*, 480 U.S. 102 (1987) .....................16

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 547 F.3d 109 (2d Cir. 2008) ....................................22

*Bancroft & Masters, Inc. v. August National, Inc.*, 223 F.3d 1082
    (9th Cir. 2000) ....................................................................................................10, 11

*Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200 (S.D.N.Y. 2005) ...................................20

*Beacon Enters., Inc. v. Menzies*, 715 F.2d 757 (2d Cir. 1983) ....................................................11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ...................................................12, 15, 17

*Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349 (S.D.N.Y. 2009) ..........................8

*Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, No. 08 Civ. 5463 (CM),
    2009 WL 1059647 (S.D.N.Y. Apr. 17, 2009) ..................................................................18

*CP Solutions PTE, LTD. v. General Elec. Co.*, 553 F.3d 156 (2d Cir. 2009) .......................21, 22

*Cutco Indus., Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986) .....................................................12

*Dichiara v. Ample Faith Inv., Ltd.*, No. 06-CV-3838, 2006 WL 3431197
    (S.D.N.Y. Nov. 29, 2006) ...............................................................................................20

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063
    (10th Cir. 2008) ..................................................................................................10, 11

*Felix Cinematografica v. Penthouse Int'l, Ltd.*, 99 F.R.D. 167 (S.D.N.Y. 1983) .......................23

*G.H. Bass & Co. v. Wakefern Food Corp.*, No. 91 Civ. 2683 (RWS), 1991 WL 285622
    (S.D.N.Y. Dec. 31, 1991) .................................................................................................13

*Global Discount Travel Servs., LLC v. TWA*, 960 F. Supp. 701 (S.D.N.Y. 1997) ......................23

*Gross v. British Broad. Corp.*, 386 F.3d 224 (2d Cir. 2004) ....................................6, 23

*GT Plus, Ltd. v. Ja-Ru, Inc.*, 41 F. Supp. 2d 421 (S.D.N.Y. 1988) ............................24

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984) ...........................16

*Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005) ....................22

*Holland v. Fahnestock & Co.*, 210 F.R.D. 487 (S.D.N.Y. 2002) .................................20

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ......................................15

*John Wiley & Sons, Inc. v. Treeakarabenjakul*, No. 09 Civ. 2108 (CM),
2009 WL 1766003 (S.D.N.Y. June 18, 2009) ...................................8, 14, 16, 18

*Levi Strauss & Co. v. Textiles Y Confecciones Europas, S.A.*, 222 U.S.P.Q. 971
(S.D.N.Y. 1983) ...........................................................................13

*Lottie Joplin Thomas Trust v. Crown Publisher, Inc.*, 592 F.2d 651
(2d Cir. 1978) .............................................................................13

*Madden v. International Ass'n of Heat & Frost Insulators and Asbestos Workers*,
889 F. Supp. 707 (S.D.N.Y. 1995) ...................................................8

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ......................15

*Ory v. Country Joe McDonald*, No. CV 01-8177 NM (AIJx), 2003 WL 22909286
(C.D. Cal. Aug. 5, 2003) ...............................................................13

*Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13 (1970) ....................................9

*PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997) ............................7, 8, 9

*P.E.A. Films v. Metro-Goldwyn-Mayer, Inc.*, No. 96 Civ. 7228(TPG), 1998 WL 54610
(S.D.N.Y. Feb. 10, 1998) ...............................................................6

*Pearson Educ., Inc. v. Shi*, 525 F. Supp. 2d 551 (S.D.N.Y. 2007) .................................8

*Plunket v. Estate of Dame Jean Conan Doyle*, No. 99-CV-11006, 2001 WL 175252
(S.D.N.Y. Feb. 22, 2001) ...............................................................20

*Potomac Elec. Power Co. v. Babcock & Wilcox Co.*, 54 F.R.D. 486
(D. Md. 1972) ............................................................................23

*Prescription Plan Serv. Corp. v. Franco*, 552 F.2d 493 (2d Cir. 1977) ................................21, 22

*Sluys v. Hand*, 831 F Supp. 321 (S.D.N.Y. 1993) ........................................................11

*Smith v. Kessner*, 183 F.R.D. 373 (S.D.N.Y. 1998) ....................................................23

*Temple v. Synthes Corp.*, 498 U.S. 5 (1990) ..............................................................21

*Veryfine Prods., Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16 (D. Mass. 2000) ...................24

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 1999) .........................15, 16

*World-Wide Volkswagen Corp. v. Woodson*, 440 U.S. 286 (1980) ..............................15

## STATUTES AND RULES

17 U.S.C. § 304 ......................................................................................... passim

Fed. R. Civ. P. 4(k)(1)(a) ...............................................................................7

Fed. R. Civ. P. 12(b)(7) ................................................................................18

Fed. R. Civ. P. 19 ......................................................................18, 19, 20, 21

N.Y. C.P.L.R. § 302(a)(1) ........................................................................ passim

## ADDITIONAL AUTHORITIES

4 CALLMANN ON UNFAIR COMP., TR. & MONO. (4th ed.) ............................................14

8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE
    (3d ed. 2009) ........................................................................................20

Plaintiffs Marvel Worldwide, Inc., Marvel Characters, Inc. and MVL Rights, LLC (collectively, "Marvel") respectfully submit this Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Failure to Join Indispensable Parties.

## PRELIMINARY STATEMENT

In September 2009, barely two weeks after The Walt Disney Company ("Disney") announced its plan to acquire the ultimate parent of Marvel, Defendants, the children of comic book illustrator Jack Kirby ("Kirby"), sent and filed legal notices claiming to have certain future rights to iconic Marvel comic book characters and stories published between 1958 and 1963. Purporting to act in compliance with provisions of the Copyright Act of 1976, all four Defendants, acting together as a unit and through a common attorney admitted to practice in New York, sent to multiple entities in New York, including numerous Marvel-related entities, a set of forty-five termination notices (the "Termination Notices").  In all, Marvel-related entities were sent hundreds of Termination Notices in New York relating to numerous works that feature many of Marvel's famous characters, including the Incredible Hulk, the Fantastic Four and the X-Men.

The Termination Notices are self-executing documents under the Copyright Act.  They purport to divest Marvel of its exclusive rights in the subject works *automatically* on the dates specified therein.  Marvel believes that the Termination Notices are invalid in purporting to exercise copyright rights that were retained by Kirby (and now are purportedly exercisable by his children) when, instead, all of the works in issue were created as works made for hire, the copyright interests in which have from their inception rested with Marvel.  Accordingly, upon receiving the Termination Notices, as well as inquiries from major licensees of Marvel who also were served with the Termination Notices, it was incumbent upon Marvel to protect its rights and

1

remove the legal cloud over those rights.  This action to declare the Termination Notices invalid and of no legal force or effect resulted.

Defendants by this motion  now seek to prevent Marvel from litigating in New York notwithstanding that:

- Defendants jointly served hundreds of self-executing Termination Notices on no fewer than eleven Marvel addressees in New York;

- the core Marvel business underlying this dispute – its comic book publishing operations – is now (as it was when Kirby was associated with Marvel) headquartered in New York;

- all of the work that went into the writing, illustrating, editing, layout and overall creation of the works at issue in this lawsuit took place in New York;

- a sufficient number of Defendants are before the Court, in any event, to enable the Court to determine the legal question presented; and

- at least one of the Defendants – Lisa Kirby – inconsistently with the attestations in her declaration to this Court, has regularly transacted business on behalf of the Kirby estate (and otherwise) with New York-based Marvel entities, including entering into agreements that contain New York choice-of-law and forum-selection provisions.

The sole basis for the instant motion is that two of the four Defendants who jointly took action in New York do not happen to live here.  And while Defendants decry as "forum shopping" Marvel's eminently reasonable decision to commence this action in New York, it is obviously Defendants who have employed that tactic by their later filing of a virtually identical lawsuit in California, where exactly the same number of Defendants reside as do in New York: two.

Defendants' motion to dismiss should be denied on multiple grounds.  First, as we demonstrate, having acted in unison to serve Termination Notices on Marvel in New York, all four Defendants are amenable to jurisdiction in New York and must face the foreseeable consequences of these acts in New York.

Second, even were the Court to conclude otherwise, no prejudice can result from maintaining this action in New York as to the two remaining Defendants.  As is evidenced by their joint actions and selection of common counsel, the interests of Kirby's children are fully aligned.  There is no basis for assuming that, were the case to proceed in New York as to fewer than all of the Defendants, the interests of all Defendants would be prejudiced.  The specter raised by Defendants of multiple or inconsistent litigations or relief is simply illusory.  This being the case, a judgment as to the ownership rights in those works even as to two of the Defendants will be determinative as to the status of the copyright rights in issue.

To accede to Defendants' arguments would create the anomalous circumstance in which Marvel, having received Defendants' Termination Notices, could not seek a declaration of its rights anywhere without Defendants' collective consent.  It cannot be the law that an entity such as Marvel, in a situation such as that presented here, is constrained from seeking judicial intervention to protect its intellectual property interests.  So long as its forum of choice indisputably affords a full and fair opportunity for the claims of similarly situated, commonly interested, and commonly represented copyright claimants to be heard, there can be no conceivable prejudice to those claimants.  This conclusion follows *a fortiori* where those claimants in reality serve as litigation proxies for the real claimant in interest (Kirby), whose own contacts with New York are indisputable.

## FACTUAL AND PROCEDURAL BACKGROUND

Kirby was an illustrator whose drawings appeared in comic books published by predecessors-in-interest of Marvel for the better part of forty years.  *See* Complaint ("Compl.") ¶ 8; Declaration of Eli Bard ("Bard Decl.") ¶ 3.  Between 1958 and 1963, Kirby collaborated with other individuals engaged by Marvel to contribute to the creation of many now-treasured comic books that are the subject of the Termination Notices (the "Works"), featuring the Fantastic Four, the Incredible Hulk, the X-Men and other enduring characters.  *See* Compl. ¶¶ 8-9, 14; Compl. Exh. 1.

Kirby died in 1994.  Declaration of Marc Toberoff in Support of Defendants' Motion to Dismiss ("Toberoff Decl.") Exh. A, ¶ 18.  Defendants Lisa R. Kirby, Barbara J. Kirby, Neal L. Kirby and Susan J. Kirby (collectively, the "Kirby Heirs" or "Defendants") are Kirby's children.  Barbara and Susan Kirby live in New York; Lisa and Neal Kirby live in California.  *Id.* ¶¶ 5-8.  The extent of at least Lisa Kirby's contacts with New York have been misrepresented to the Court by Defendants.  Contrary to her representation that she does not "'systematically and continuously' transact or solicit business in New York," *see* Declaration of Lisa R. Kirby ("Lisa Kirby Decl.") ¶ 6, Lisa Kirby in fact has conducted substantial business with Marvel-related entities in New York over the last few years on behalf of her parents' estates.  These business dealings include selling pieces of her father's artwork to Marvel on numerous occasions and licensing publication rights to Marvel for a comic book series she helped write based on concepts and artwork created by her father before his death.  Bard Decl. ¶¶ 13-14.  In those contracts, Lisa Kirby agreed to New York choice-of-law and forum-selection provisions.  *Id.* ¶ 13.

Since its inception in 1939 as Timely Comics, and during all times relevant to this action, Marvel and its predecessors-in-interest have been headquartered in New York.  *See* Compl. ¶ 8; Bard Decl. ¶ 5.  Marvel and its predecessors-in-interest maintained no offices outside of New

York between 1958 and 1963, the time period during which the Works were created.  *See* Bard Decl. ¶ 5.  During that time, Kirby worked in New York, and all of the conceiving, writing, illustrating, editing, layout and proofreading of the works at issue in this lawsuit took place in New York.  *Id.* ¶¶ 6, 8.  To this day, the center of gravity of Marvel's publishing business is New York.  *Id.* ¶ 6.  Specifically, Marvel's New York office has always been the center for creative and executive decision-making on all matters related to the publication of its comic books.  *Id.* In addition, New York is the only place where Marvel's officers direct, control and coordinate the company's publishing activities.  *Id.*

On approximately September 16, 2009, shortly after the public announcement on August 31, 2009 that Disney had agreed to acquire the ultimate parent of Marvel, the Kirby Heirs sent the Termination Notices to Marvel, as well as other Marvel-related and unrelated entities.  *See* Compl. ¶ 12; Bard Decl. ¶ 10.  The Termination Notices were addressed to eleven Marvel-named entities in New York and claim that Defendants are persons owning a sufficient interest in the Works under the Copyright Act to exercise a right to terminate a purported transfer of rights in the Works to Marvel.  *See* Compl. ¶ 12; *see also* 17 U.S.C. § 304(c).  Specifically, the Termination Notices seek to terminate all alleged transfers to Marvel of rights relating to Kirby's contribution to the Works.  *See* Compl. ¶¶ 13-14.  Shortly after serving the Termination Notices, Defendants' counsel contacted Disney to try to seek a settlement arrangement.  For several months, the parties engaged in a good-faith attempt to resolve the dispute.  *See* Declaration of Alan N. Braverman ("Braverman Decl.") ¶ 6.  At no time during that period did Marvel or Disney represent that it would refrain from filing a lawsuit, nor did Disney insist as a condition to the talks that Defendants refrain from filing a lawsuit.  *Id.* ¶ 7.

When it became clear that the issues could not be resolved, Marvel filed its complaint in this action on January 8, 2010.  *Id.* ¶ 6.  On January 19, 2010, in accordance with Fed. R. Civ. P. 26(f) and this Court's Order Scheduling an Initial Conference, the parties conferred telephonically to attempt to arrive at a mutually agreeable discovery schedule.  *See* Declaration of James W. Quinn ("Quinn Decl.") ¶¶ 3-4.  Ultimately, however, the parties were unable to reach agreement.  *Id.* ¶ 5.  On March 9, 2010 – the same day they filed their Motion to Dismiss in this Court – Defendants filed their own complaint in the United States District Court for the Central District of California seeking, among other things, the mirror image of the declaratory judgment sought by Marvel in this action.  *See* Toberoff Decl. ¶ 6, Exh. A.  On March 22, 2010, Magistrate Judge Fox issued an order staying discovery in this action until the initial pretrial conference before the Court, scheduled for April 16, 2010.  *See* Quinn Decl. ¶ 6.

## ARGUMENT

Defendants seek to prevent Marvel from litigating this case in New York, where its publishing headquarters is and always has been located.  *See* Bard Decl. ¶ 6.  As explained in Part I below, Marvel chose to sue in its home state, where all of the activities that give rise to this action took place and where Defendants' purposeful conduct demonstrably subjects them to personal jurisdiction.  Marvel's "choice of forum should not lightly be disturbed."  *P.E.A. Films v. Metro-Goldwyn-Mayer, Inc.*, No. 96 Civ. 7228(TPG), 1998 WL 54610, at *3 (S.D.N.Y. Feb. 10, 1998); *see also Gross v. British Broad Corp.*, 386 F.3d 224, 230 (2d Cir. 2004).  This is especially so where, as detailed in Part II, Defendants are not acting as four separate individuals but as a unitary whole – with identical interests, identical claimed rights, and identical counsel – such that the dismissal of two of them would be of no moment to the Court's ability to fully adjudicate the rights at issue in this action.  Defendants' failure to show that any of their interests

would be impaired or impeded in any way by having these claims litigated here is fatal to their motion.

## I.  THIS COURT HAS PERSONAL JURISDICTION OVER ALL DEFENDANTS

In opposing Defendants' motion to dismiss, Marvel need only make a *prima facie* showing that the non-domiciliary Defendants are amenable to personal jurisdiction in New York. *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir. 1993).  To determine whether such a *prima facie* showing has been made, "[t]he Court must accept the allegations of the plaintiff's complaint and affidavits as true, and all doubts are resolved in favor of the plaintiff, notwithstanding any controverting presentation by the moving party."  *Andy Stroud, Inc. v. Brown*, No. 08 Civ. 8246 (HB), 2009 WL 539863, at *3 (S.D.N.Y. Mar. 4, 2009).

### A.  Personal Jurisdiction Over Lisa and Neal Kirby Is Proper Under C.P.L.R. § 302(a)(1) Because Marvel's Claim Arises Out of Defendants' Transaction of Business in New York

This Court's jurisdiction over New York residents Susan and Barbara Kirby is undisputed.  Defendants' motion centers on the contention that, as non-residents, neither Lisa Kirby nor Neil Kirby is amenable to suit in New York.  This contention is wrong.

New York law determines this Court's jurisdictional reach over Defendants.  *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997); *see also* Fed. R. Civ. P. 4(k)(1)(a).  Under N.Y. C.P.L.R. section 302(a)(1), a non-domiciliary defendant is subject to personal jurisdiction if he or she "transacts any business within the state or contracts anywhere to supply goods or services in the state," so long as the cause of action "aris[es] from any" such transaction of business.  The section 302(a)(1) inquiry involves two elements: first, the defendant must "transact business" in New York; second, the plaintiff's claim against the defendant must arise out of that activity.  *See, e.g.*, *Andy Stroud, Inc.*, 2009 WL 539863 at *4 (citations omitted).

7

The Court must also assess whether the exercise of jurisdiction comports with due process.

*Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 357 (S.D.N.Y. 2009).

### 1.     *Defendants Transacted Business in New York*

Acting collectively, Defendants transacted business in New York within the meaning of the statute.  Under section 302(a)(1), "the issue is whether the defendant has engaged in some purposeful activity in this State in connection with the matter in the suit."  *Andy Stroud, Inc.*, 2009 WL 539863 at *4 (quoting *Madden v. International Ass'n of Heat & Frost Insulators and Asbestos Workers*, 889 F. Supp. 707, 710 (S.D.N.Y. 1995)).  Courts take a broad view of what qualifies as "transacting business;" the term "business" in the context of N.Y. C.P.L.R. section 302(a)(1) encompasses "more than profit-seeking" or purely "commercial" activities.  *Madden*, 889 F. Supp. at 710.  The qualifying activity need not be repeated or of any particular duration – "[a]n exercise of jurisdiction under New York's long-arm statute is valid on the basis of a single act, even one taken outside New York, as long as the transaction is purposeful and a substantial relationship exists between the act and the claim being brought."  *John Wiley & Sons, Inc. v. Treeakarabenjakul*, No. 09 Civ. 2108 (CM), 2009 WL 1766003, at *4 (S.D.N.Y. June 18, 2009) (McMahon, J.); *see also PDK Labs*, 103 F.3d at 1109; *Pearson Educ., Inc. v. Shi*, 525 F. Supp. 2d 551, 555 (S.D.N.Y. 2007).

### a.     Service of the Termination Notices is sufficient to constitute a "transaction of business" in New York under C.P.L.R. § 302(a)(1)

The dispatch of literally hundreds of self-executing Termination Notices to Marvel entities and licensees in New York constitutes "transacting business" under section 302(a)(1). By virtue of having mailed the Termination Notices to Marvel, the out-of-state Defendants have "use[d] the communications to project themselves into New York and into the local commerce." *John Wiley & Sons, Inc.*, 2009 WL 1766003 at *5 (internal quotation marks and alterations

omitted).  Sending the self-executing Termination Notices is a far more purposeful act than simply mailing correspondence to New York:  absent some affirmative action by Marvel to protect and enforce its ownership interest in the Works, the Termination Notices purport to operate automatically to divest Marvel of its exclusive interests in the Works on the dates specified therein.  *See* 17 U.S.C. § 304(c)(6) ("[A]ll of a particular author's rights under this title that were covered by the terminated grant revert, upon the effective date of termination, to that author or, . . . to the persons owning his or her termination interest. . . .").

The Termination Notices are the fulcrum of Defendants' scheme to extract royalty payments in relation to the Works.  As their complaint in the California action makes clear, Defendants seek the right to deal directly with licensees and to obtain significant royalties from third parties.  *See* Toberoff Decl., Exh. A at ¶ 32.  In the Second Circuit, letters sent into New York aimed toward "negotiating royalty agreements" with alleged violators of a party's intellectual property rights are "transacting business" for purposes of N.Y. C.P.L.R. section 302(a)(1).  *See PDK Labs*, 103 F.3d at 1109; *Andy Stroud, Inc.*, 2009 WL 539863 at *4-5 (finding plaintiffs satisfied *prima facie* burden under section 302(a)(1) in part because they alleged defendant represented to third-party record company that he, not plaintiffs, should be sent royalties arising from works at issue).  Hence, the use of the mails in this case was not, as Defendants appear to contend, an ancillary mode of transmission used as a conduit to establish a contract or course of dealing with Marvel; rather, here the interstate communication *is* the transaction of business in New York sufficient for section 302(a)(1) jurisdiction.  *See Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13 (1970) (finding communication constituted the transaction at issue and provided a basis for jurisdiction over non-domiciliary defendant).

Communications such as the Termination Notices purposefully targeted at a person or entity in the forum compelling action or the loss of rights are more than sufficient to confer personal jurisdiction.  For example, in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008), the court found that a Colorado district court had personal jurisdiction over a foreign company that had submitted notices of claimed copyright infringement ("NOCIs") to eBay in California, because the defendants' "express aim in acting was to halt a Colorado-based sale by a Colorado resident." *Id.* at 1075-76.  The court relied on the fact that "it was defendants who . . . took the intentional action of sending a NOCI specifically designed to terminate plaintiffs' auction." *Id.* at 1074.  The court expressly distinguished such a notice from an ordinary cease-and-desist letter sent into the forum: "Defendants' NOCI went well beyond providing notice to plaintiffs of the claimed infringement and seeking settlement; it purposefully caused the cancellation of their auction and allegedly threatened their future access to eBay and the viability of their business." *Id.* at 1082.

Similarly, in *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082 (9th Cir. 2000), the court held that a foreign company was subject to personal jurisdiction in California because it had sent a notice to a website domain registrar in Virginia that caused the cancellation of the California plaintiffs' website. *Id.* at 1087-88.  There, the defendant's notice was "purposeful availment" because it "forced [the plaintiff] to bring suit or lose control of its website." *Id.* at 1087.  Unlike a cease-and-desist letter, the notice did more than simply put the plaintiff "on notice" of a competing claim; rather, it served automatically to disable access to the website. *Id.* at 1089.  After receiving the notice, the plaintiffs were forced either to accede to the disabling of the website or to file a declaratory judgment action to protect their rights. *See id.* at 1088.

The facts here are even more compelling.  As in *Dudnikov*, the Termination Notices "went well beyond providing notice to [plaintiff] of the claimed" rights held by Defendants; instead, the Termination Notices were intended to "purposefully cause[] the cancellation of" Marvel's rights in the Works.  *Dudnikov*, 514 F.3d at 1082.  And, as in *Bancroft*, the Termination Notices purport to become "automatically" effective and to operate "automatically" to prevent Marvel from exercising its exclusive rights in the Works.  *Bancroft*, 223 F.3d at 1089.  Unlike *Bancroft* and *Dudnikov*, however, the Termination Notices not only had direct and targeted effects in the forum, but they were also actually sent directly into the forum where Marvel has filed suit.  Thus, there is even more reason to find jurisdiction in this case as compared to *Dudnikov* and *Bancroft*, both of which indicate that there would be jurisdiction in New York even if the Termination Notices had been sent only to Marvel entities outside New York.  The exercise of personal jurisdiction over the non-resident Defendants therefore "is triggered by [their] own action in projecting . . . [themselves] into New York."  *Sluys v. Hand*, 831 F Supp. 321, 325 (S.D.N.Y. 1993).  And here, Defendants "knew or reasonably should have known that by sending the [Termination Notices] into New York, [they were] running the risk of suit in New York in connection with that activity."  *Id.*

Contrary to Defendants' contentions, the Termination Notices are fundamentally unlike ordinary cease-and-desist letters.  Marvel could not simply choose to ignore the Termination Notices, as they purported to terminate Marvel's exclusive rights automatically.  The Termination Notices did not merely "alleg[e] infringement in an unspecified locale and threaten[] litigation in an unspecified forum."  *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983).  The potpourri of cases cited by Defendants in which cease-and-desist letters were found to be insufficient to invoke section 302(a)(1) jurisdiction are simply inapposite.

Defendants argue that because the Copyright Act required them to serve the Termination Notices on Marvel in New York, the service of the Termination Notices on New York addressees did not constitute availment of New York laws.  *See* Defendants' Motion to Dismiss ("Defs.' Mot.") at 8.  There is no merit to this argument.  Supreme Court and Second Circuit precedent makes clear that the fact that communications were required to be sent into the forum state does not negate a finding of purposeful availment.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985) (contacts were sufficient to impose personal jurisdiction even where governing contract required all relevant notices and payments to be sent into forum); *Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 368 (2d Cir. 1986) (finding sufficient contacts based in part on royalties and fees sent to plaintiff's New York office, even where such transmissions were required by operative agreement).  The relevant question is not whether Defendants' contacts with New York were voluntary, but whether Defendants purposefully projected their interests into the State.  Here, they plainly did just that.

>   b.   **All of Kirby's conduct that gave rise to the Works and the Termination Notices occurred in New York**

Jurisdiction over the non-resident Defendants who projected themselves into New York is also appropriate because their claimed interest is based upon activities and interests that arose in New York.  All of the facts underlying Marvel's claim to exclusive ownership of the copyrights in the Works arose in New York, where the Works were created and published and where Kirby, along with his family, lived at the time he made his contributions to the Works and was paid for them.  *See* Bard Decl. ¶¶ 6-9.  Marvel, which is headquartered in New York and received hundreds of Termination Notices in New York, logically chose to file suit to enforce its rights in the forum where all of those operative facts arose.  Indeed, Defendants cannot seriously dispute that were Kirby still alive and asserting the same termination rights himself, he would be

subject to personal jurisdiction in New York by virtue of his domicile and other extensive contacts with New York during the relevant time.  As Defendants' asserted rights in the Works arise solely as a result of their relationship to Kirby, *see* 17 U.S.C. § 304(c)(2)(B), and Kirby himself would be subject to personal jurisdiction in New York with respect to any claim under section 304(c) of the Copyright Act, Kirby's jurisdictional status inures to Defendants as his successors in interest under the Copyright Act.

The concept that a successor in copyright interests inherits a predecessor rightholder's position is hardly a novel one.  For example, the Second Circuit has applied the defense of laches in the copyright context and held that the plaintiff was bound by her predecessors' inaction because "plaintiff (or her predecessors in interest) did not assert her or their rights diligently." *Lottie Joplin Thomas Trust v. Crown Publisher, Inc.*, 592 F.2d 651, 655 (2d Cir. 1978); *see also Ory v. Country Joe McDonald*, No. CV 01-8177 NM (AIJx), 2003 WL 22909286, at *5 (C.D. Cal. Aug. 5, 2003) (rejecting plaintiff's argument that her delay in bringing infringement claim was reasonable because "[a] copyright assignee cannot claim rights that would not have been available to his assignor") (citations omitted).

Relatedly, in the trademark context, courts in this district have repeatedly exercised personal jurisdiction over alleged contributory infringers with no direct relationship to the forum where the direct infringers to whose infringement they allegedly contributed had transacted business here.  *See G.H. Bass & Co. v. Wakefern Food Corp.*, No. 91 Civ. 2683 (RWS), 1991 WL 285622, at *2-3 (S.D.N.Y. Dec. 31, 1991) (finding personal jurisdiction over contributory infringer even though it did not manufacture product at issue, was not authorized to do business in New York, and never maintained inventory in New York); *Levi Strauss & Co. v. Textiles Y Confecciones Europas, S.A.*, 222 U.S.P.Q. 971, 974 (S.D.N.Y. 1983) (using contributory

13

infringement theory to exercise long-arm jurisdiction over Spanish company that did business exclusively in Spain and whose sole connection to New York was sale of goods through New York-based distributor); *see also* 4 CALLMANN ON UNFAIR COMP., TR. & MONO. § 24:1 (4th ed.).

Consistent with this authority, Lisa and Neal Kirby are subject to personal jurisdiction in New York because necessarily they have inherited their father's jurisdictional status in this forum.  Moreover, while Lisa Kirby declaims any business contacts in New York, her dealings with Marvel in New York plainly indicate otherwise.  To wit, Lisa Kirby, acting in her capacity as administrator of Kirby's estate, has engaged in negotiations and entered into contracts with Marvel's publishing arm in New York to sell and license certain artworks, and has agreed to incorporate into the parties' contracts New York choice-of-law and forum-selection clauses.  Accordingly, this Court may exercise personal jurisdiction over Lisa Kirby in her own right, separate and apart from her contacts in this State that arose from the Termination Notices.  *See* Bard Decl. ¶¶ 13-16.

2.      ***Marvel's Claim Arises out of Defendants' Contacts with New York***

The requirement in the section 302(a)(1) analysis that Marvel's cause of action must "arise out of" Defendants' contacts with the forum is easily met.  A cause of action arises out of a particular transaction in New York "if there is a 'substantial relationship' or 'articulable nexus' between the activity and the lawsuit."  *John Wiley & Sons, Inc.*, 2009 WL 176003 at *4 (citations omitted).  There is unquestionably a substantial relationship between the filing and sending of the Termination Notices to New York and Marvel's claim that the Termination Notices are invalid.  Moreover, Marvel's declaratory judgment claim involves Works that were created in New York while Kirby lived in New York, pursuant to work assignments given by Marvel to Kirby in New York, delivered to editors and publishers in New York, and for which Kirby received payment in New York.  *See* Bard Decl. ¶¶ 7-9.

**B.**   **The Exercise of Personal Jurisdiction over Lisa and Neal Kirby Comports with Due Process Because They Have Sufficient Contacts with New York and to Litigate Marvel's Claims in New York Is Reasonable**

The Court's exercise of personal jurisdiction over Lisa and Neal Kirby comports with the Due Process Clause of the Fourteenth Amendment.  Due Process requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  This analysis involves a two-part inquiry: first, Defendants must be shown to have sufficient "minimum contacts" in New York; second, maintenance of the lawsuit in New York must be reasonable.  *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 99 (2d Cir. 2000).

**1.**   ***Defendants' Transaction of Business in New York Is Sufficient to Satisfy the "Minimum Contacts" Requirement of Due Process***

The ultimate purpose of the due process inquiry is simply to determine whether Defendants could have foreseen that they would be subjected to suit in New York based on their activities in the State.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  The "minimum contacts" test therefore looks to the "quality and nature" of the defendant's contacts in New York under a totality-of-the-circumstances test, with the crucial question being whether the defendant has "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Burger King*, 471 U.S. at 474-75.  The inquiry does not, as Defendants contend, require that Marvel "establish that Defendants Lisa and Neal Kirby have 'continuous and systematic' business contacts with New York," Defs.' Mot. at 11; the "continuous and systematic" standard, which Defendants misstate, is in fact "the more stringent minimum contacts test" used to determine whether a defendant is subject to *general* personal jurisdiction.  *See Metropolitan Life*

*Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Moreover, the decision in

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984), on which Defendants rely in

their erroneous recitation of the standard, makes clear that the "continuous and systematic

contacts" standard is not necessary for jurisdiction under the long-arm statute. *See id.* at 416.

New York's long-arm statute has been found to be virtually coextensive with the

constitutional limit. *John Wiley & Sons, Inc.*, 2009 WL 1766003 at *7 ("Because New York's

long-arm statute has been interpreted to extend to the constitutional limit, exercising jurisdiction

consistent with that statute . . . also passes constitutional muster.") (citation omitted).

Accordingly, Defendants' contacts with New York – including sending the Termination Notices

into New York and the significant contacts of Jack Kirby, from whom they have inherited their

termination rights and jurisdictional status – are sufficient to satisfy the "minimum contacts"

inquiry under the Due Process Clause.

### 2.  *Maintenance of Marvel's Action against Defendants in New York Would Be Reasonable*

As the Second Circuit has explained, "once a plaintiff has made a 'threshold showing' of

minimum contacts, the defendant must come forward with a 'compelling case that the presence

of some other considerations would render jurisdiction unreasonable.'" *Wiwa*, 226 F.3d at 99

(quoting *Metro. Life Ins. Co.*, 84 F.3d at 568). Under the factors articulated in *Asahi Metal

Indus. Co. v. Superior Court of California*, 480 U.S. 102 (1987), the non-domiciliary Defendants

must show that this Court's jurisdiction would be unfair based on: (1) the burden that the

exercise of jurisdiction will impose on them; (2) the interests of the forum state in adjudicating

the case; (3) Marvel's interest in obtaining convenient and effective relief; (4) the interstate

judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the

shared interests of the states in furthering social substantive policies. *Id.* at 113-14; *Burger King*, 471 U.S. at 476-77.

Defendants' moving papers fail even to address this second prong of the due process inquiry, let alone make a "compelling" case that the exercise of jurisdiction in this Court is unreasonable. The particulars of this case weigh decidedly in favor of the Court's exercise of jurisdiction. "[W]here individuals purposefully derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other States for the consequences that arise proximately from such activities; the Due Process Clause may not be readily wielded as a territorial shield." *Burger King*, 471 U.S. at 473-74. It can scarcely be disputed here that Defendants have purposefully derived a substantial benefit from their interstate activities: the Termination Notices, if unchallenged, purport automatically to establish in Defendants certain rights in the Works and would allow them to obtain substantial royalties for any grants or licenses of those rights.

This Court has a significant interest in adjudicating this action because it involves the fundamental rights of its citizens – Marvel is headquartered in New York and two of the four Defendants live in New York. Indeed, this action rests entirely on the nature of the relationship between Kirby and Marvel, which was formed and existed in New York. The greatest import of the Termination Notices will be felt by Marvel and its affiliates in New York. Moreover, having sent the Termination Notices to Marvel and its licensees in New York, Defendants cannot hide behind the non-residence of the remaining Defendants to avoid being subject to litigation here. Defendants' attempt to dictate the forum for this litigation by choosing which Defendants will consent to which jurisdiction offends equity and fairness. Marvel also has a substantial interest in obtaining convenient and effective relief in this Court, and the resolution of this case will be

most efficient in this district, because all of the underlying events that gave rise to the creation of the Works, as well as most of the documentary evidence and several of the witnesses, are located here.  Even if Defendants are ultimately successful in this litigation, Marvel and its New York licensees will retain certain rights in the Works and in derivative works based on those Works, which will continue to be exploited and licensed in New York.  *See* 17 U.S.C. § 304(c)(6)(A).  Any claimed inconvenience to the non-domiciliary Defendants as a result of litigating in New York falls far below the threshold of what is constitutionally unreasonable and can be, and already has been, mitigated by the use of telephonic and electronic communication.  *See, e.g.*, *John Wiley & Sons, Inc.*, 2009 WL 1766003 at *8; *Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, No. 08 Civ. 5463 (CM), 2009 WL 1059647, at *8 (S.D.N.Y. Apr. 17, 2009) (McMahon, J.) (finding that burden on the defendant "falls well short of depriving defendant of due process" because "[m]odern technology may be able to overcome many of the difficulties associated with travel").

## II.     LISA AND NEAL KIRBY ARE NEITHER NECESSARY NOR INDISPENSABLE PARTIES

Even if the Court were to dismiss the two non-resident Defendants – and for the reasons stated, they should not be dismissed – this case nonetheless should proceed before this Court, as the rights of all parties will be fully resolved in an action against the two New York Defendants.  By arguing that if Lisa and Neal Kirby were to be dismissed from this action for lack of personal jurisdiction, this case should be dismissed under Fed. R. Civ. P. 19 and 12(b)(7), Defendants stretch "necessary and indispensable parties" principles beyond recognition.  Rule 19(a) provides that "[a] person *who is subject to service of process* and whose joinder *will not deprive the court of subject matter jurisdiction* must be joined" if, among other things, that party's absence would "impair or impede" his interests.  Fed. R. Civ. P. 19(a) (emphasis added).  Marvel does not seek

to join any party whose addition to the case would destroy the Court's diversity-of-citizenship jurisdiction – the type of case to which Rule 19(a) was meant to apply.  More significantly, however, even if Rule 19 did apply in this case, the interests of Lisa and Neal Kirby will in no way be "impair[ed] or impede[d]" if they are dropped as parties.  Their interests are identical to the interests of their New York resident siblings, who will remain as Defendants.  The Termination Notices were exercised by all four siblings as a unitary whole, and all four siblings acted with a common goal.  Lisa and Neal Kirby's interests therefore will be fully represented by the remaining Defendants and their chosen counsel in this case.

According to Defendants, Marvel's action must be halted because this Court lacks jurisdiction over two of the four Kirby Heirs and this case cannot proceed unless all four Kirby Heirs are joined before a single court.  Defendants cite no case or statutory provision that requires that all – or even a majority – of the Kirby Heirs be party to a single action to adjudicate their rights to the Works.  The Copyright Act itself does not require unanimity to exercise a purported termination right; instead, the Copyright Act expressly contemplates that persons owning termination interests will be the beneficiaries of terminated rights even if they did not join in the original sending of the Termination Notices at issue.  *See* 17 U.S.C. § 304(c)(6).  Having set into motion the events that gave rise to Marvel's claim, and having "started the clock" against Marvel's opportunity to seek confirmation of its exclusive ownership of the Works, Defendants now appear to argue that Marvel cannot seek redress in any court except with their express consent.  This is not the law.

This is not a case where there are four separate interests and where to proceed in the absence of one of those interests would cause prejudice to the absent party.  The interests of Lisa and Neal Kirby are identical to those of Barbara and Susan Kirby.  Under such circumstances,

courts routinely refuse to find absent parties to be necessary to a litigation under Rule 19(a).  *See, e.g.*, *Dichiara v. Ample Faith Inv., Ltd.*, No. 06-CV-3838, 2006 WL 3431197, at *9 (S.D.N.Y. Nov. 29, 2006) (parent company was not "necessary" because "as a practical matter, [its] interests are identical to those of defendants [subsidiaries] here and will be fully protected by them"); *see also Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 233 (S.D.N.Y. 2005). The few cases Defendants cite in support of their position are wholly inapposite, as each of those cases involves an absent party that (a) had a unique interest not adequately represented by other parties in the suit, and (b) stood in Marvel's position – *i.e.*, in opposition to the termination of a grant of rights.  *See Plunket v. Estate of Doyle*, No. 99-CV-11006, 2001 WL 175252, at * 7 (S.D.N.Y. Feb. 22, 2001) (ordering plaintiff to show cause why all *grantees* of rights should not be joined in declaratory judgment action to determine validity of termination notices under the Copyright Act because to find notices were effective could adversely affect their rights); *American Optical Co. v. Curtiss*, 59 F.R.D. 644, 647 (S.D.N.Y. 1973) (absent licensor was necessary party where plaintiff sought to destroy alleged license agreement and thereby eliminate licensor's right to receive royalties).

Dismissal for failure to join an indispensable party is an extreme measure and should be avoided wherever possible.  *See Holland v. Fahnestock & Co.*, 210 F.R.D. 487, 494-95 (S.D.N.Y. 2002).  Courts are loath to grant motions to dismiss under Rule 19(b), and "in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result."  8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1609 (3d ed. 2009).  Here, dismissal is easily avoided as neither Lisa nor Neal Kirby is necessary to this litigation, so the Court need not determine whether they are

"indispensable" parties under Rule 19(b).  *See Temple v. Synthes Corp.*, 498 U.S. 5, 8 (1990) (*per curium*).

The inquiry under Rule 19(b) inheres "in equity and good conscience," and requires the Court to consider four factors to determine whether dismissal is proper: (1) prejudice caused by a judgment rendered in the party's absence, (2) whether any such prejudice could be alleviated, (3) whether any such judgment would be adequate, and (4) whether the plaintiff would have an adequate remedy if the action were dismissed.  *CP Solutions PTE, LTD. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009); *see also* Fed. R. Civ. P. 19(b).

There is no prejudice to any of the Defendants should this case proceed in the absence of Lisa and Neal Kirby.  *See CP Solutions*, 553 F.3d at 159 (finding relevant issue is whether prejudice would result to remaining defendants if other defendants are dropped from a case). Indeed, any claim Defendants make of ownership rights in the Works necessarily rises or falls based on the circumstances of their father's relationship with Marvel and its predecessors-in-interest many years ago.  Accordingly, as discussed above, Defendants' claims and rights are entirely derivative of the rights that belonged to Kirby.

Moreover, as the Second Circuit recently held, an action should not be dismissed in the absence of a party if, "after it was dropped as a party, [another defendant] could champion its interest."  *Id.* at 160 (citation omitted).  This conclusion is further buttressed where, as here, the absent parties and the remaining parties are brothers and sisters "represented by the same counsel, and defendants have not alerted [the Court] to any evidence to suggest [their] interests are diverse."  *Id.*; *see also Prescription Plan Serv. Corp. v. Franco*, 552 F.2d 493, 497 (2d Cir. 1977) (finding no prejudice because "counsel for those remaining in the case will be no less vigorous in their advocacy because they represent two fewer persons").  In fact, the interests of

all four Kirby Heirs are not only similar – by definition they are identical because under the

Copyright Act, they are entitled to inherit nothing more than equal shares of the recaptured

copyright interests.  Each Kirby Heir thus has an equal interest in protecting the right to

terminate, and each can and will equally "champion [the] interests" of the others.  *CP Solutions*,

553 F.3d at 160.  Moreover, all four Defendants are represented by the same counsel, who is

admitted to practice in New York and who will doubtless serve as a zealous advocate on behalf

of the interests of any absent Kirby Heir.  *See id.*; *Prescription Plan Serv. Corp.*, 552 F.2d at

497.  Defendants have utterly failed to articulate any prejudice that would befall Lisa or Neal

Kirby due to their potential absence from this action, nor can they suggest that this Court will be

unable to issue a reasoned and adequate ruling this case based on a record that will not be

affected by the presence or absence of Lisa or Neal Kirby as named Defendants.

Nor would the presence or absence of Lisa or Neal Kirby impact the ability of the Court

to resolve definitively the issue before it.  All four Defendants have an identical interest and

share the same counsel.  Thus, an adjudication in Marvel's favor that the Termination Notices

are invalid will finally and completely settle the question as to all of the Kirby Heirs and Marvel.

Likewise, an adjudication that the Termination Notices are valid will bind all of the Kirby Heirs

and Marvel.  *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 547 F.3d 109, 112 n.1 (2d Cir.

2008) ("The fundamental notion of the doctrine of collateral estoppel . . . is that an issue of law

or fact actually litigated and decided by a court of competent jurisdiction in a prior action may

not be relitigated in a subsequent suit between the same parties *or their privies*.") (emphasis

added); *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 92 (2d Cir. 2005) (finding that

"[t]he requirements for privity under federal law [are] identity of interests and adequacy of

representation").  In contrast, if the Court were to dismiss this action, Defendants will have

22

achieved their objective of being able to dictate the forum in which this dispute is to be litigated in derogation of Second Circuit law, which affords great deference to the forum of the plaintiff's choosing.  *See, e.g.*, *Gross*, 386 F.3d at 230 ("[A] plaintiff's choice of forum is presumptively entitled to substantial deference.").  Ironically, Defendants accuse Marvel of forum shopping.

There is no support in Defendants' cited case law for the contention that their later-filed complaint gives Marvel an adequate remedy, as all their cases involve a parallel action that was *earlier* instituted.  *See Smith v. Kessner*, 183 F.R.D. 373, 376 (S.D.N.Y. 1998) (finding plaintiffs had adequate remedy because "plaintiffs have already filed a state court action against two former defendants in this case. . . which alleges the same facts and seeks the same damages that are sought in this action"); *Global Disc. Travel Servs., LLC v. TWA*, 960 F. Supp. 701, 710 (S.D.N.Y. 1997) (noting "[a]ll parties to this action are also involved in a state court action in Missouri"); *Felix Cinematografica v. Penthouse Int'l, Ltd.*, 99 F.R.D. 167, 172-73 (S.D.N.Y. 1983) (granting motion to dismiss, in part, due to an earlier-filed action filed by defendant in Italy); *Potomac Elec. Power Co. v. Babcock & Wilcox Co.*, 54 F.R.D. 486, 491 (D. Md. 1972) (noting plaintiffs "have already filed suit in another forum").  Here, it is obvious that the Defendants' position can be reduced to a single premise: Marvel has no right to pursue an adjudication of rights to the Works unless it is on Defendants' terms.  Marvel's natural and justifiable choice of forum should not be abrogated solely because Defendants prefer another forum.

### III.   DEFENDANTS' ALLEGATIONS OF FORUM SHOPPING AND IMPROPER CONDUCT ARE FALSE

Defendants dedicate almost a full page of their memorandum of law to casting aspersions upon Marvel.  This improper attempt to distract the Court and cast Marvel in a negative light warrants only brief mention.  Prior to the close of the Disney-Marvel deal, there were settlement

discussions initiated at Defendants' request during the latter part of 2009. *See* Braverman Decl.

¶¶ 5-6. No resolution was reached. *Id.* ¶ 6. Marvel was able to file its declaratory judgment

action immediately upon receiving the Termination Notices and was therefore always able to file

before Defendants. Defendants' assertion that they were prejudiced by participating in the

discussions that their counsel initiated is simply nonsense. Moreover, at no time did any

representative from Marvel or Disney ever make any representations to Defendants or their

counsel that they would refrain from litigation or from otherwise pursuing their rights with

respect to the Termination Notices, or condition its willingness to engage in discussions on a

commitment that Defendants refrain from filing suit or otherwise acting in any way Defendants

found appropriate to protect their rights. *Id.* ¶ 7. Marvel's conduct in filing suit in this district

did not amount to anything even approximating improper forum shopping. *See, e.g.*, *GT Plus,*

*Ltd. v. Ja-Ru, Inc.*, 41 F. Supp. 2d 421, 427 (S.D.N.Y. 1998) (finding that first-filed action was

not a case of improper forum shopping where plaintiff did not "cut off a promising dialogue,"

nor did it "falsely imply that it would refrain from litigation"); *see also Veryfine Prods., Inc. v.*

*Phlo Corp.*, 124 F. Supp. 2d 16, 23 (D. Mass. 2000) (finding that even when negotiations are

ongoing, if "there is no false implication that a party will refrain from litigation during those

negotiations," a finding of improper forum shopping is unwarranted).

## CONCLUSION

For all the foregoing reasons, in the interest of equity and good conscience, this Court should not countenance Defendants' attempt to avoid this Court's jurisdiction.  Marvel respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety.  In any event, even if this Court were inclined to dismiss this action as to Lisa or Neal Kirby, the case nonetheless should proceed in this Court with respect to the remaining Defendants.

Dated: March 26, 2010

By:   /s/ James W. Quinn

WEIL, GOTSHAL & MANGES LLP

James W. Quinn
R. Bruce Rich
Randi W. Singer
767 Fifth Avenue
New York, NY 10153
Tel:  (212) 310-8000
Fax: (212) 310-8007

PAUL, HASTINGS, JANOFSKY &
WALKER LLP

David Fleischer
Jodi A. Kleinick
75 East 55th Street
New York, NY 10022
Tel.: (212) 318-6000
Fax: (212) 319-4090

*Attorneys for Plaintiffs*