UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                      :
MARVEL WORLDWIDE, INC.,                               :
MARVEL CHARACTERS, INC. and                           :
MVL RIGHTS, LLC,                                      :
                                                      :
              Plaintiffs,                             :
                                                      :
    - against-                                        :
                                                      :
LISA R. KIRBY, BARBARA J. KIRBY,                      :
NEAL L. KIRBY and SUSAN N. KIRBY,                     :
                                                      :
              Defendants.                             :
------------------------------------------------------x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/14/10
```

10 Civ. 141 (CM) (KNF)

## DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS

McMahon, J.:

### OVERVIEW

Presently before the Court is a motion by defendants Lisa and Neal Kirby to dismiss this case as against them for lack of personal jurisdiction, and a motion by all defendants to dismiss the action in its entirety on the ground that it cannot proceed in the absence of Lisa and Neal Kirby, who are indispensable parties. For the reasons set forth below, the Court concludes that it has transactional personal jurisdiction over Lisa and Neal Kirby; therefore, the motion to dismiss is denied and the case will proceed on the merits here in New York.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

Jack Kirby was an illustrator whose drawings appeared in comic books published by predecessors-in-interest of Marvel for the better part of forty years. (Compl. ¶ 8; Decl. of Eli

---

[1] Defendants' objections to Plaintiffs' declarations have been considered and rejected.

Bard ("Bard Decl.") ¶ 3.) Between 1958 and 1963, Kirby collaborated with other individuals engaged by Marvel to contribute to the creation of many now-treasured comic books, featuring such familiar and enduring characters as the Fantastic Four, the Incredible Hulk and the X-Men (hereinafter "the Works"). (Compl. ¶¶ 8-9, 14; Compl. Ex. 1.)

Kirby died in 1994. (Decl. of Marc Toberoff ("Toberoff Decl.") Ex. A at ¶ 18.) Defendants Lisa R. Kirby, Barbara J. Kirby, Neal L. Kirby and Susan J. Kirby (collectively, the "Kirby Heirs" or "Defendants") are Kirby's children. Barbara and Susan Kirby live in New York; Lisa and Neal Kirby live in California. (Id. ¶¶ 5-8.)

Since its inception in 1939 (under the name "Timely Comics"), and during all times relevant to this action, Marvel and its predecessors-in-interest have been headquartered in New York. (Compl. ¶ 8; Bard Decl. ¶ 5.) Marvel and its predecessors-in-interest maintained no offices outside of New York between 1958 and 1963, the time period during which the Works were created. (Bard Decl. ¶ 5.) During that time, Kirby worked in New York, and all of the conceiving, writing, illustrating, editing, layout and proofreading of the Works at issue in this lawsuit took place in New York. (Id. ¶¶ 6, 8.) To this day, the center of gravity of Marvel's publishing business is New York. (Id. ¶ 6.) While Marvel has offices in Los Angeles, its New York office has always been the center for creative and executive decision-making on all matters related to the publication of its comic books. (See id.)

On August 31, 2009, the Walt Disney Company announced that it had agreed to acquire Marvel's ultimate parent. (Decl. of Alan N. Braverman ("Braverman Decl.") ¶ 3.) Two weeks later, on or about September 16, 2009, the Kirby Heirs sent approximately forty-five Termination Notices relating to the Works to Marvel and other Marvel-related and unrelated entities. (Compl. ¶ 12; Bard Decl. ¶ 10.) The Termination Notices are addressed to eleven Marvel-named entities

in New York. (Bard Decl. ¶ 10.) The Notices purport to terminate all alleged transfers to Marvel of rights relating to Kirby's contribution to the Works. (Compl. ¶¶ 13-14.) The notices assert that Defendants are persons owning a sufficient interest in the Works under the Copyright Act to exercise a right to terminate a purported transfer of rights in the Works to Marvel. (Compl. ¶ 12); see also 17 U.S.C. § 304(c).

Under the Copyright Act, the Termination Notices are self-executing documents; assuming they are valid, they automatically divest Marvel of its exclusive rights in the Works on the dates specified therein. However, Marvel believes that the Termination Notices are invalid. It takes the position that Kirby never had any copyright in the Works, because all of them were created as works made for hire. (Compl. ¶ 16.) If that is correct, then the copyrights are Marvel's as a matter of federal law, and Kirby's heirs have no ability to terminate Marvel's rights.

Shortly after serving the Termination Notices, Defendants' counsel contacted Disney to try to seek a settlement arrangement. (Braverman Decl. ¶ 6.) For several months, the parties engaged in a good-faith attempt to resolve the dispute. (Id.) When it became clear that the issues could not be resolved, Marvel filed the instant complaint on January 8, 2010. The complaint seeks a declaration that the Works were in fact works for hire, that Marvel owns the copyrights, and that the Termination Notices were invalid. (Compl. ¶¶ 16-18.)

On January 19, 2010, in accordance with Federal Rule of Civil Procedure 26(f) and this Court's Order Scheduling an Initial Conference, the parties conferred telephonically to attempt to arrive at a mutually agreeable discovery schedule. (Decl. of James W. Quinn ("Quinn Decl.") ¶¶ 3-4.) Ultimately, however, the parties were unable to reach agreement. (Id. ¶ 5.) On March 9, 2010—the same day they filed their Motion to Dismiss in this Court—Defendants filed their own

complaint in the United States District Court for the Central District of California, seeking, among other things, the mirror image of the declaratory judgment sought by Marvel in this action. (Toberoff Decl. ¶ 6, Ex. A.)

On March 22, 2010, Magistrate Judge Fox issued an order staying discovery in this action until the initial pretrial conference before the Court, scheduled for April 16, 2010. (Quinn Decl. ¶ 6.)

## DISCUSSION

### I.  Legal Standard

Where, as here, "there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience . . . or . . . special circumstances . . . giving priority to the second." First City Nat. Bank and Trust Co. v. Simmons, 878 F.2d. 76, 79 (2d Cir. 1989). The action filed in this District was unquestionably first in time, and there is no "convenience of the parties or witnesses" basis to transfer it to California under 28 U.S.C. §§ 1404 or 1406. The case is governed by federal copyright law, with which the two courts in question are equally familiar. Therefore, there are no special circumstances favoring the second action, and the case should be litigated in New York in the absence of a jurisdictional defect.

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff "bears the burden of showing that the court has jurisdiction over the defendant." In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003). If jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003).

4

In opposing Defendants' pre-discovery motion to dismiss, Marvel need only make a prima facie showing that the non-domiciliary Defendants are amenable to personal jurisdiction in New York. A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79 (2d Cir. 1993). To determine whether such a prima facie showing has been made, "The Court must accept the allegations of the plaintiff's complaint and affidavits as true, and all doubts are resolved in favor of the plaintiff, notwithstanding any controverting presentation by the moving party." Andy Stroud, Inc. v. Brown, No. 08 Civ. 8246, 2009 WL 539863, at *3 (S.D.N.Y. Mar. 4, 2009). "However, conclusory allegations are not enough to establish personal jurisdiction." Galerie Gmurzynska v. Hutton, 257 F. Supp. 2d 621, 625 (S.D.N.Y. 2003) (internal quotations omitted), aff'd, 355 F.3d 206 (2d Cir. 2004).

Here, it is undisputed that two of the defendants live in New York and two live in California. The Court concludes that it has jurisdiction over the two California defendants. Therefore, the motion to dismiss is denied, the stay of discovery imposed by Magistrate Judge Fox is lifted, and the action will proceed here.

## II. New York Long Arm Jurisdiction

In this case, this Court's jurisdiction over New York residents Susan and Barbara Kirby is undisputed. Defendants' motion centers on the contention that, as non-residents, neither Lisa Kirby nor Neil Kirby is amenable to suit in New York. This contention is wrong.

New York law determines this Court's jurisdictional reach over Defendants. See PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997); see also Fed. R. Civ. P. 4(k)(1)(a). Under New York Civil Practice Law and Rules ("CPLR") § 302(a)(1), a non-domiciliary defendant is subject to personal jurisdiction if he or she "transacts any business within the state or contracts anywhere to supply goods or services in the state," as long as the cause of action

"aris[es] from any" such transaction of business. CPLR § 302(a)(1). The section 302(a)(1) inquiry involves two elements: first, did the non-domiciliary defendant "transact business" in New York; and second, does the plaintiff's claim against the defendant arise out of that activity? See, e.g., Andy Stroud, Inc., 2009 WL 539863 at *4 (citations omitted). If the answer to both those questions is yes, the Court must also decide whether the exercise of jurisdiction comports with due process. Capitol Records, LLC v. VideoEgg, Inc., 611 F. Supp. 2d 349, 364 (S.D.N.Y. 2009).

      A.      **Defendants Have Transacted Business in New York**

Acting collectively, Defendants transacted business in New York within the meaning of the CPLR.

Under section 302(a)(1), "the issue is whether the defendant 'has engaged in some purposeful activity in this State in connection with the matter in the suit.'" Andy Stroud, Inc., 2009 WL 539863 at *4 (quoting Madden v. International Ass'n of Heat & Frost Insulators and Asbestos Workers, 889 F. Supp. 707, 710 (S.D.N.Y. 1995)). Courts take a broad view of what qualifies as "transacting business." The term "business" in the context of CPLR section 302(a)(1) encompasses "more than profit-seeking" or purely "commercial" activities. Madden, 889 F. Supp. at 710. The qualifying activity need not be repeated or of any particular duration— "An exercise of jurisdiction under New York's long-arm statute is valid on the basis of a single act, even one taken outside New York, as long as the transaction is purposeful and a substantial relationship exists between the act and the claim being brought." John Wiley & Sons, Inc. v. Treeakarabenjakul, No. 09 Civ. 2108, 2009 WL 1766003, at *4 (S.D.N.Y. June 18, 2009) (citing Deutsche Bank Sec., Inc. v. Montana Bd. of Invs., 7 N.Y.3d 65, 71, (2006) (internal quotation marks omitted)).

Defendants dispatched a multitude self-executing Termination Notices to Marvel entities and licensees in New York in September 2009. This constitutes "transacting business" under section 302(a)(1). By virtue of having mailed the Termination Notices to Marvel, all four Kirbys —the two who live in New York and the two who live in California—"project[ed] themselves into New York and into the local commerce." John Wiley & Sons, Inc., 2009 WL 1766003 at *5 (internal quotation marks and alterations omitted).

The Termination Notices, which purport to operate automatically to divest Marvel of its exclusive interests in the Works on the dates specified therein, see 17 U.S.C. § 304(c)(6) ("all of a particular author's rights under this title that were covered by the terminated grant revert, upon the effective date of termination, to that author or . . . to the persons owning his or her termination interest"), are the fulcrum of Defendants' plan to obtain royalty payments in relation to the Works. As their complaint in the California action makes clear, Defendants seek the right to deal directly with licensees and to obtain significant royalties from third parties. (See Toberoff Decl., Ex. A at ¶ 32.) They sent the Termination Notices with the intention of disrupting Marvel's established New York-based publishing business, so that they could divert any royalties associated with licensing Jack Kirby's work from Marvel to themselves.

In the Second Circuit, letters sent into New York aimed in part at "negotiating royalty agreements" with alleged violators of a party's intellectual property rights have been considered to be a transaction of business for purposes of CPLR section 302(a)(1). PDK Labs, 103 F.3d at 1109. In Andy Stroud, Inc. v. Brown, 2009 WL 539863, at *4-5, for example, plaintiffs satisfied their prima facie burden under section 302(a)(1) because, inter alia, they alleged that the non-domiciliary defendant represented to a third-party record company that he, not plaintiffs, should be sent royalties arising from works at issue. Here, Defendants sent a total of forty-five

termination notices to Marvel entities and licensees. (Compl. ¶12; Bard Decl. ¶10.) Among them, were eleven entities in New York. (Bard Decl. ¶ 10.)

It is true that defendants sent their notices to Marvel and related entities, not to the third parties with whom they hope some day to deal, so the notices were not in furtherance of some future business deal. However, I reject Defendants' argument that the Termination Notices were insufficient to trigger specific jurisdiction. Defendants argue that the Notices were merely acts required to comply with 17 U.S.C. § 304(c)(4) and did not constitute purposeful availment; that legal notices or claims of rights to New York addressees are insufficient under CPLR § 302(a)(1); and that the use of interstate mail for the purpose of sending the Termination Notices is insufficient to sustain personal jurisdiction. These arguments are without merit.

When a communication constitutes the transaction at issue, it provides a basis for asserting jurisdiction over a non-domiciliary defendant under CPLR 302(a)(1). Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13 (1970). The interstate communications here in issue— the Termination Notices—constitute the business transaction between the plaintiffs and defendants. It is the document that purports to end a course of New York-based business that that parties have engaged in since 1958, when Jack Kirby began working for Marvel. The sending of the notices was designed to stop Marvel from controlling the rights to characters it has long published and licensed to others, as well as to compel Marvel to take some action in order to protect its rights.

Unlike a cease and desist letter, which merely warns a party that he may be infringing upon another's intellectual property rights, communications like the Termination Notices confer transactional personal jurisdiction over non-domiciliaries because they alter the status quo between the parties, by requiring the recipient to take legal action or lose his intellectual property

rights. For example, in Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063 (10th Cir. 2008), the court found that a Colorado district court had personal jurisdiction over a foreign company that had submitted notices of claimed copyright infringement ("NOCIs") to eBay in California. The court reasoned that the defendants' "express aim in acting was to halt a Colorado-based sale by a Colorado resident." Id. at 1075-76. The court relied on the fact that "it was defendants who . . . took the intentional action of sending a NOCI specifically designed to terminate plaintiffs' auction." Id. at 1074 (emphasis added). The court expressly distinguished such a notice from an ordinary cease-and-desist letter sent into the forum: "Defendants' NOCI went well beyond providing notice to plaintiffs of the claimed infringement and seeking settlement; *it purposefully caused the cancellation of their auction* and allegedly threatened their future access to eBay and the viability of their business." Id. at 1082 (emphasis added). "The letter initiated procedures under which the plaintiff either had to give in to the defendant's demands (thereby losing use of its domain name), or take legal action." Id.

Similarly, in Bancroft & Masters, Inc. v. Augusta National, Inc., 223 F.3d 1082 (9th Cir. 2000), the court held that a foreign company was subject to personal jurisdiction in California because it had sent a notice to a website domain registrar in Virginia, which resulted in the cancellation of the California plaintiff's website. Id. at 1087-88. The defendant's notice was "purposeful availment" because it "forced [the plaintiff] to bring suit or lose control of its website." Id. at 1087. Unlike a cease-and-desist letter, the notice did more than simply put the plaintiff "on notice" of a competing claim; rather, it served automatically to disable access to the website. Id. at 1089. After receiving the notice, the plaintiffs were forced either to accede to the disabling of the website or to file a declaratory judgment action to protect their rights. See id. at 1088.

9

The facts here are even more compelling. As in Dudnikov, the Termination Notices "went well beyond providing notice to [plaintiff] of the claimed" rights held by Defendants. Instead, the Termination Notices were intended to "purposefully cause[] the cancellation of" Marvel's rights in the Works. Dudnikov, 514 F.3d at 1082. And, as in Bancroft, the Termination Notices purport to become "automatically" effective and to operate "automatically" to prevent Marvel from exercising its exclusive rights in the Works. See Bancroft, 223 F.3d at 1089. Unlike Bancroft and Dudnikov, however, the Termination Notices not only had direct and targeted effects in the forum, but they were also actually sent directly into the forum where Marvel has filed suit. Thus, there is even more reason to find jurisdiction in this case as compared to Dudnikov and Bancroft, both of which suggest that there would be jurisdiction in New York even if the Termination Notices had been sent only to Marvel entities outside New York. The exercise of personal jurisdiction over the non-resident Defendants therefore "is triggered by [their] own action in projecting . . . [themselves] into New York." Sluys v. Hand, 831 F Supp. 321, 325 (S.D.N.Y. 1993). And here, Defendants "knew or reasonably should have known that by sending the [Termination Notices] into New York, [they were] running the risk of suit in New York in connection with that activity." Id.

To support their contention that the Termination Notices were no different than cease-and-desist letters, Defendants cite to Carlson v. Cuevas, 932 F. Supp. 76, 79 (S.D.N.Y. 1996), and this Court's opinion in Arquest, Inc. v. Kimberly-Clark Worldwide, Inc., 2008 U.S. Dist. LEXIS 60987, at *27-29 (S.D.N.Y. July 31, 2008). (Defs.' Reply in Supp. of Mot. to Dismiss ("Defs.' Reply Br.") at 5.) These cases are completely distinguishable. The Termination Notices are fundamentally unlike ordinary cease-and-desist letters. Marvel could not simply choose to ignore the Termination Notices, because they did not merely "alleg[e] infringement in an

unspecified locale and threaten[ ] litigation in an unspecified forum." Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 766 (2d Cir. 1983). Rather, they purported to terminate Marvel's exclusive rights. Indeed, if Defendants are correct that Jack Kirby held a copyright in his characters, they *did* terminate Marvel's existing rights in these works. The cases in which cease-and-desist letters were found to be insufficient to invoke section 302(a)(1) jurisdiction are inapposite, because cease-and-desist letters do nothing except give notice, whereas these Termination Notices effect a business transaction.

Defendants argue that because the Copyright Act required them to serve the Termination Notices on Marvel in New York, the service of the Termination Notices on New York addressees did not constitute availment of New York laws. (See Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mot.") at 8.) There is no merit to this argument. Under both Supreme Court and Second Circuit precedent, the fact that a communication was required to be sent into the forum state actually counsels in favor of a court's exercise of personal jurisdiction. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 480 (1985) (contacts were sufficient to impose personal jurisdiction in part because governing contract required all relevant notices and payments to be sent into forum); Cutco Indus., Inc. v. Naughton, 806 F.2d 361, 368 (2d Cir. 1986) (finding sufficient contacts based in part on royalties and fees sent to plaintiffs' New York office where such transmissions were required by operative agreement). The relevant question is not whether Defendants' contacts with New York were voluntary, but whether Defendants purposefully projected their interests into the State. Here, they plainly did just that.

Because they chose to purposefully avail themselves into New York for the purpose of advancing their business interests, the Court concludes that it has jurisdiction over Lisa and Neal Kirby in connection with this dispute. As a result, it is not necessary to reach any of the other

11

issues raised by plaintiffs, including their assertion that Lisa Kirby conducted business in New York with sufficient regularity to subject her to general jurisdiction, and that all the Kirbys can be sued in New York because their late father could indisputably have been sued in New York.

### B. Marvel's Claim Arises out of Defendants' Contacts with New York

The requirement in the section 302(a)(1) analysis that Marvel's cause of action must "arise out of" Defendants' contacts with the forum is easily met. A cause of action arises out of a particular transaction in New York "if there is a 'substantial relationship' or 'articulable nexus' between the activity and the lawsuit." John Wiley & Sons, Inc., 2009 WL 1766003, at *4 (citations omitted). There is unquestionably a substantial relationship between the filing and sending of the Termination Notices to New York and Marvel's claim that the Termination Notices are invalid. Moreover, the underlying dispute involves Works that were created in New York while Kirby lived in New York, pursuant to work assignments given by Marvel to Kirby in New York, delivered to editors and publishers in New York, and for which Kirby received payment in New York. (See Bard Decl. ¶¶ 7-9.)

### III. Due Process

The Court's exercise of personal jurisdiction over Lisa and Neal Kirby comports with the Due Process Clause of the Fourteenth Amendment. Due Process requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). This analysis involves a two-part inquiry: first, Defendants must be shown to have sufficient "minimum contacts" in New York; second, maintenance of the lawsuit in New York must be reasonable. See Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 99 (2d Cir. 2000).

### A. Defendants' Transaction of Business in New York Is Sufficient to Satisfy the "Minimum Contacts" Requirement of Due Process

The ultimate purpose of the due process inquiry is simply to determine whether Defendants could have foreseen that they would be subjected to suit in New York based on their activities in the State. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The "minimum contacts" test therefore looks to the "quality and nature" of the defendant's contacts in New York under a totality-of-the-circumstances test, with the crucial question being whether the defendant has "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 474-75. The inquiry does not, as Defendants contend, require that Marvel "establish that Defendants Lisa and Neal Kirby have 'continuous and systematic' business contacts with New York." (Defs.' Mot. at 11.) The "continuous and systematic" standard, which Defendants misstate, is in fact "a more stringent minimum contacts test" used to determine whether a defendant is subject to *general* personal jurisdiction. See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996). Here, plaintiffs assert only specific or transactional jurisdiction.

New York's long-arm statute has been found to be coextensive with the constitutional limit. John Wiley & Sons, Inc., 2009 WL 1766003, at *7 ("Because New York's long-arm statute has been interpreted to extend to the constitutional limit, exercising jurisdiction consistent with that statute . . . also passes constitutional muster.") (citation omitted). Accordingly, Defendants' sending of the Termination Notices into New York is sufficient to satisfy the "minimum contacts" inquiry under the Due Process Clause.

### B. Maintenance of Marvel's Action against Defendants in New York Would Be Reasonable

As the Second Circuit has explained, "Once a plaintiff has made a 'threshold showing' of minimum contacts, the defendant must come forward with a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" Wiwa, 226 F.3d at 99 (quoting Metro. Life Ins. Co., 84 F.3d at 568). Under the factors articulated in Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102 (1987), the non-domiciliary Defendants must show that this Court's jurisdiction would be unfair based on: (1) the burden that the exercise of jurisdiction will impose on them; (2) the interests of the forum state in adjudicating the case; (3) Marvel's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interests of the states in furthering social substantive policies. Id. at 113; Burger King, 471 U.S. at 476-77.

Defendants' moving papers fail to address this second prong of the due process inquiry, let alone make a "compelling" case that the exercise of jurisdiction in this Court is unreasonable. The particulars of this case weigh decidedly in favor of the Court's exercise of jurisdiction. "[W]here individuals purposefully derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other States for the consequences that arise proximately from such activities; the Due Process Clause may not be readily wielded as a territorial shield." Burger King, 471 U.S. at 473-74 (citation omitted). It can scarcely be disputed here that Defendants have purposefully derived a substantial benefit from their interstate activities: if the Termination Notices are valid, they automatically give Defendants certain rights in the Works, which would allow them to obtain substantial royalties for any grants or licenses of those rights.

14

This Court has a significant interest in adjudicating this action because it involves the fundamental rights of its citizens. Marvel is headquartered in New York and two of the four Defendants live in New York. The result in this case rests entirely on the nature of the relationship between Kirby and Marvel, which was formed and existed in New York. The greatest import of the Termination Notices will be felt by Marvel and its affiliates in New York. Moreover, having sent the Termination Notices to Marvel and its licensees in New York, Defendants cannot hide behind the non-residence of the remaining Defendants to avoid being subject to litigation here. Defendants' attempt to dictate the forum for this litigation by choosing which Defendants will consent to which jurisdiction offends equity and fairness.

Marvel also has a substantial interest in obtaining convenient and effective relief in this Court, and the resolution of this case will be most efficient in this district. All of the underlying events that gave rise to the creation of the Works, as well as most of the documentary evidence and several of the witnesses, are located here. Even if Defendants are ultimately successful in this litigation, Marvel and its New York licensees will retain certain rights in the Works and in derivative works based on those Works, which will continue to be exploited and licensed in New York. See 17 U.S.C. § 304(c)(6)(A). Any claimed inconvenience to the non-domiciliary Defendants as a result of litigating in New York falls far below the threshold of what is constitutionally unreasonable and can be, and already has been, mitigated by the use of telephonic and electronic communication. See, e.g., John Wiley & Sons, Inc., 2009 WL 1766003, at *8; Centrifugal Force, Inc. v. Softnet Commc'n, Inc., No. 08 Civ. 5463, 2009 WL 1059647, at *8 (S.D.N.Y. Apr. 17, 2009) (finding that burden on the defendant "falls well short of depriving defendant of due process" because "[m]odern technology may be able to overcome many of the difficulties associated with travel").

## CONCLUSION

For all the foregoing reasons, the Defendants' Motions to Dismiss (docket no. 9) is denied. The Clerk of the Court shall remove the motion at docket no. 9 from the Court's active motion list.

This constitutes the decision and order of this Court.

Dated: April 14, 2010

                                                U.S.D.J.

BY ECF TO ALL PARTIES