UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x
                                :

MARVEL WORLDWIDE, INC.,        :
MARVEL CHARACTERS, INC. and  :
MVL RIGHTS, LLC,             :
                                :

          Plaintiffs,        :

  - against-              :

LISA R. KIRBY, BARBARA J. KIRBY,  :
NEAL L. KIRBY and SUSAN N. KIRBY, :
                                :

        Defendants.     :
---------------------------------------------------x    Civil Action No. 10 Civ. 141 (CM) (KNF)
                                :

LISA R. KIRBY, BARBARA J. KIRBY,  :
NEAL L. KIRBY and SUSAN N. KIRBY, :
                                :

       Counterclaim-Plaintiffs,  :

  - against-              :

MARVEL ENTERTAINMENT, INC.,    :
MARVEL WORLDWIDE, INC.,      :
MARVEL CHARACTERS, INC., MVL  :
RIGHTS, LLC, THE WALT DISNEY   :
COMPANY and DOES 1 through 10,  :
                                :

       Counterclaim-Defendants.  :
---------------------------------------------------x

## COUNTERCLAIM-DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS PURSUANT TO RULE 12(b)(6)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

COUNTERCLAIM ALLEGATIONS ..................................................................... 3

    The Termination Notices and Claims of Copyright Ownership of Kirby's Works ........... 3

    Marvel's Return of Kirby's Original Artwork ................................................ 4

    Marvel's Bankruptcy ......................................................................... 5

    Marvel's Release of The Incredible Hulk and X-Men Origins: Wolverine ..................... 5

ARGUMENT ......................................................................................... 6

I.    DEFENDANTS' FIRST COUNTERCLAIM SHOULD BE DISMISSED AS A
    MERE "MIRROR IMAGE" OF MARVEL'S SOLE CAUSE OF ACTION .................. 6

II.    DEFENDANTS HAVE FAILED TO STATE A VIABLE CLAIM FOR
    DECLARATION REGARDING THE PRINCIPLES TO BE APPLIED IN AN
    ACCOUNTING OF PROFITS .......................................................................... 7

    A.    The Court Lacks Subject Matter Jurisdiction Over Defendants' Claim for
        an Accounting Because It Presents No Actual Case or Controversy .................... 8

    B.    The Court Should Exercise Its Discretion To Decline Jurisdiction Over
        Defendants' Premature Claim for an Accounting ..................................... 9

III.    DEFENDANTS HAVE FAILED TO STATE VIABLE CLAIMS FOR EITHER
    CONVERSION OR BREACH OF CONTRACT ............................................... 10

    A.    The Third and Fourth Counterclaims Were Discharged Pursuant to a
        Confirmed and Consummated Reorganization Plan ................................. 11

    B.    The Third and Fourth Counterclaims Are Time-Barred ............................. 11

        1.    The Conversion Counterclaim Is Barred By The Statute Of
            Limitations ............................................................... 11

        2.    Defendants' Claim For Breach Of Contract Is Barred By The
            Statute Of Limitations ..................................................... 13

    C.    Barbara and Susan Kirby Lack Standing To Assert Claims of Conversion
        or Breach of Contract on Behalf of the Rosalind Kirby Trust ......................... 14

    D.    The Third And Fourth Counterclaims Fail To State a Claim ........................ 15

IV.    DEFENDANTS HAVE FAILED TO STATE A VIABLE CLAIM FOR FALSE
    ADVERTISING ................................................................................ 16

V.    ALL CLAIMS ASSERTED AGAINST NON-PLAINTIFFS DISNEY AND
      MARVEL ENTERTAINMENT SHOULD BE DISMISSED ........................................ 18

      A.    Defendants Fail to Allege Any Facts In Support of Alter-Ego Liability ............. 19

      B.    Defendants Fail to Allege Any Facts In Support of Liability Under An
            Agency Theory ..................................................................................................... 20

CONCLUSION ..................................................................................................................... 22

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351 (2d Cir. 1997) ....................................14

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967)............................................................................10

*Ackerman v. Local Union 363, Int'l Bhd.*, 423 F. Supp. 2d 125 (S.D.N.Y. 2006) .........................5

*Allen v. Wright*, 468 U.S. 737 (1984) ............................................................................................8

*In re Arbitration between Holborn Oil Trading Ltd. and Interpol Bermuda Ltd.*, 774 F.
    Supp. 840 (S.D.N.Y. 1991)................................................................................................20

*Arista Records LLC v. Usenet.com, Inc.*, 07 Civ. 8822 (HB), 2008 WL 4974823
    (S.D.N.Y. Nov. 24, 2008) ...................................................................................................6

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ........................................................................... *passim*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ............................................................6, 21

*Bertin v. U.S.*, 478 F.3d 489 (2d Cir. 2007)................................................................................13

*Boerger v. Levin*, 812 F. Supp. 564 (E.D. Pa. 1993) ......................................................................9

*Broughel v. Battery Conservancy*, No. 07 Civ. 7755, 2010 WL 1028171 (S.D.N.Y Mar.
    16, 2010) ...........................................................................................................................18

*Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41 (2d Cir. 2003)................................................3

*Carell v. Shubert Org.*, 104 F. Supp. 2d 236 (S.D.N.Y. 2000)......................................................8

*City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353 (S.D.N.Y. 2000).................8

*Cromer Finance Ltd. v. Berger*, 137 F. Supp. 2d 452 (S.D.N.Y. 2001).......................................21

*Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) ..................................16, 17, 18

*Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64 (2d Cir. 2003)....................................................21

*In re Drexel Burnham Lambert Group Inc.*, 995 F.2d 1138 (2d Cir. 1993)..................................10

*Fletcher v. Atex, Inc.*, 68 F.3d 1451 (2d Cir. 1995)......................................................................19

*In re Foxmeyer*, 290 B.R. 229 (D. Del. Bankr. 2003) ..................................................................20

*Grosz v. Museum of Modern Art*, No. 09 Civ. 3706 (CM) (THK), 2010 WL 807431
(S.D.N.Y. Mar. 3, 2010) ...................................................................................12, 13

*Gurvey v. Cowan, Liebowitz, & Latman, P.C.*, No. 06 Civ. 1202, 2009 WL 1117278
(S.D.N.Y. Apr. 24, 2009)........................................................................................16

*In re Hydro Investors, Inc.*, 328 Fed. Appx. 10 (2d Cir. 2009) ....................................13

*Interested Lloyd's Underwriters v. Ross*, No. 04 Civ. 4381 (RWS), 2005 WL 2840330
(S.D.N.Y. Oct. 28, 2005) ........................................................................................13

*Interscope Records v. Kimmel*, No. 07 Civ. 108, 2007 WL 1756383 (N.D.N.Y. June 18,
2007) ...........................................................................................................................7

*John Wiley & Sons, Inc. v. Shumacher*, No. 09 Civ. 2108(CM), 2010 WL 103886
(S.D.N.Y. Jan. 4, 2010)........................................................................................3, 6

*In re Kalikow*, 602 F.3d 82 (2d Cir. 2010)...................................................................11

*Lund's, Inc. v. Chemical Bank*, 870 F.2d 840 (2d Cir. 1989) .......................................11

*Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469 (2d Cir. 1999) ...............................9

*Marfia v. T.C. Ziraat Bankasi, N.Y. Branch*, 100 F.3d 243 (2d Cir. 1996) .................21

*Marvel Worldwide, Inc. v. Kirby*, No. 10 Civ. 141(CM), 2010 WL 1655253 (S.D.N.Y.
Apr. 14, 2010)......................................................................................................4, 12

*Maverick Recording Co. v. Chowdhury*, Nos. 07 Civ. 200, 07 Civ. 640, 2008 WL
3884350 (E.D.N.Y. Aug. 19, 2008).........................................................................7

*Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113 (2d Cir. 1998) ..................20

*Minskoff v. Am. Express Travel Related Serv. Co.*, 98 F.3d 703, 708 (2d Cir. 1996) .................21

*Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260 (D. Del. 1989) .....................19

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003)..........................8

*N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122 (2d Cir. 2008)...............8, 9, 10

*Pot Luck, L.L.C. v. Freeman*, No. 06 Civ. 10195, 2009 WL 693611 (S.D.N.Y. Mar. 10,
2009) .........................................................................................................................17

*In re R.H. Macy & Co., Inc.*, 283 B.R. 140 (S.D.N.Y. 2002).......................................11

*Simmonds v. I.N.S.*, 326 F.3d 351 (2d Cir. 2003) ....................................................8, 9

*Sirohi v. Trs. of Columbia Univ.*, No. 97-7912, 1998 WL 642463 (2d Cir. Apr. 16, 1998) .........15

*Smartix Int'l Corp. v. Mastercard Int'l LLC*, No. 06 Civ 5174 (GBD), 2008 WL
    4444554 (S.D.N.Y. Sept. 30, 2008) ......................................................................18

*Spagnola v. Chubb Corp.*, 264 F.R.D. 76 (S.D.N.Y. 2010) ....................................................20, 21

*Thomas Publ'g Co., LLC v. Tech. Evaluation Ctrs., Inc.*, No. 06 Civ. 14212 (RMB),
    2007 WL 2193964 (S.D.N.Y. July 27, 2007) ...........................................................17

*Tomas v. Gillespie*, 385 F. Supp. 2d 240 (S.D.N.Y. 2005)............................................................8

*Trevino v. MERSCorp., Inc.*, 583 F. Supp. 2d 521 (D. Del. 2008)..............................................19

*Union Carbide Corp. v. Air Prods. & Chems., Inc.*, 202 U.S.P.Q. 43 (S.D.N.Y. 1978)...............19

*United States v. Bestfoods*, 524 U.S. 51 (1998) ............................................................................19

*Wellnx Life Scis., Inc. v. Iovate Health Scis. Research Inc.*, 516 F. Supp. 2d 270
    (S.D.N.Y. 2007) ........................................................................................................17

## STATE CASES

*Cadle Co. v. D'Addario*, 957 A.2d 536 (Conn. App. Ct. 2008) ......................................................9

*Close-Barzin v. Christie's, Inc.*, 51 A.D.3d 444 (1st Dep't 2008)...........................................12, 13

*Davidson v. Fasanella*, 269 A.D.2d 351 (2d Dep't 2000).............................................................12

*Garber v. Ravitch*, 186 A.D.2d 361 (1st Dep't 1992)....................................................................16

*Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724 (Del. Sup.
    Ct. 1996) ....................................................................................................................19

*Pillsbury v. Karmgard*, 22 Cal. App. 4th 743 (Cal. Ct. App. 1994)............................................15

*Saks v. Damon Raike & Co.*, 7 Cal. App. 4th 419 (Cal. Ct. App. 1992) ................................14, 15

*Sports Legends Inc. v. Carberry*, 61 A.D.3d 449 (1st Dep't 2009)..............................................13

*Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso, Tex.*, 87 N.Y.2d 36 (1995) ............12

*Walden Terrace, Inc. v. Broadwall Mgmt. Corp.*, 213 A.D.2d 630 (2d Dep't 1995)....................15

**DOCKETED CASES**

*Classic Media, Inc. v. Mewborn*, No. 05-452 (C.D. Cal. Filed Sept. 29, 2005) ............................17

**FEDERAL STATUTES**

11 U.S.C. § 1141(d)(1)(A) ....................................................................................................11

15 U.S.C. § 1125(a)(1) .....................................................................................................16, 17

17 U.S.C. §§ 304(c)(3), (c)(4)(A) ............................................................................................3

FED. R. CIV. P. 8 .................................................................................................................15

FED. R. EVID. 201 ................................................................................................................5

**STATE STATUTES**

CAL. CIV. PROC. CODE § 367 (2010)......................................................................................14

N.Y. C.P.L.R. § 213(2) ........................................................................................................14

N.Y. C.P.L.R. § 214(3) ........................................................................................................11

**OTHER SOURCES**

60 CAL. JUR. 3d Trusts § 368.................................................................................................14

Counterclaim-Defendants Marvel Worldwide, Inc., Marvel Characters, Inc. and MVL Rights LLC (collectively, "Marvel"), together with Counterclaim-Defendants The Walt Disney Company ("Disney") and Marvel Entertainment, Inc. ("Marvel Entertainment"), respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Defendants' Counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The seeds of this lawsuit were sown in September 2009, barely two weeks after Disney announced its plan to acquire the ultimate parent of Marvel. Defendants, the heirs of comic book illustrator Jack Kirby, sent legal notices ("Termination Notices") claiming to have certain future rights to iconic Marvel characters including the Incredible Hulk, Fantastic Four and X-Men. In January, Marvel filed the instant lawsuit seeking a declaratory judgment that these Termination Notices were invalid and of no effect because all of the subject works were created for Marvel's predecessors as works-made-for-hire and, thus, Marvel's rights were not subject to termination under the federal copyright law. After this Court denied defendants' motion to dismiss, defendants filed their Answer and Counterclaims on April 28, 2010 (the "Counterclaims") (Docket #30). All the counterclaims must be dismissed.

The First Counterclaim – for a declaratory judgment that the Termination Notices are valid – is merely a mirror-image of the relief Marvel seeks. It is redundant and unnecessary.

The Second Counterclaim – for a declaratory judgment with respect to the principles to be applied in an accounting of profits – is plainly not ripe because defendants have not prevailed on their underlying copyright ownership claim. There is no need for the Court and the parties to engage in a speculative inquiry as to how to calculate hypothetical future payments before defendants have established that they are entitled to an accounting of any kind, particularly since

according to their own Termination Notices and Counterclaims, they would have no rights until at least 2014. There is simply nothing to account for yet and there may never be.

The Third and Fourth Counterclaims – for conversion and breach of contract – are unrelated to the validity of the Termination Notices. They level vague and baseless accusations that Marvel might not have turned over physical pieces of some of Kirby's original artwork in the 1980s and might still have some unidentified physical pieces of artwork in some unidentified location. Even if defendants were able to point to specific works (which they are not), these counterclaims must still be dismissed for three reasons: first, they were extinguished under the terms of a confirmed bankruptcy plan of reorganization; second, they are time-barred by at least twenty years; and third, they are brought only by the two New York defendants, who lack standing to bring those claims on behalf of the putative owner of the unspecified pieces of art, the Rosalind Kirby Trust.

The Fifth Counterclaim – for a violation of the Lanham Act – is also unrelated to the validity of the Termination Notices. This counterclaim alleges that Kirby was not properly credited in connection with the *The Incredible Hulk* and *X-Men: Wolverine* motion pictures. This counterclaim must be dismissed as a matter of law because the Supreme Court has expressly held that there is no cause of action under the Lanham Act for failure to credit a purported creator of a work.

Finally, regardless of any substantive merit with respect to Marvel, all of the counterclaims must be dismissed as to Disney and Marvel Entertainment. Defendants' allegations concerning the purported alter-ego or agency liability of these two parties are wholly conclusory and plainly insufficient to survive dismissal. Moreover, neither company had any relationship to Marvel until at least 20 years after the time period relevant to any of the

counterclaims. Accordingly, the allegations concerning the current corporate relationship – the sole allegations against these entities – are both irrelevant and conclusory, and must be dismissed.

## COUNTERCLAIM ALLEGATIONS

For the purposes of this motion only, defendants' well-pled allegations will be accepted as true. *See, e.g.*, *John Wiley & Sons, Inc. v. Shumacher*, No. 09 Civ. 2108(CM), 2010 WL 103886, at *2 (S.D.N.Y. Jan. 4, 2010) (McMahon, J.) (citing *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003)). Conclusory statements, however, are not entitled to a presumption of veracity; courts should not "credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1954 (2009).

### The Termination Notices and Claims of Copyright Ownership of Kirby's Works

Jack Kirby was a comic book artist whose drawings appeared in numerous comic books published by Marvel (and its predecessors) and other publishers in the industry for the better part of sixty years. *See* Counterclaims ¶¶ 14, 18. Between 1958 and 1963, Kirby contributed to numerous well-known Marvel comic book stories, including "The Fantastic Four," "X-Men," "Iron Man," "Spider-Man," and "The Incredible Hulk," among others (the "Works"). *Id.* ¶ 19. Kirby was paid on a per-page basis for his work. *Id.* ¶ 22.

On or about September 16, 2009, defendants served 45 Termination Notices on Marvel and various other entities that purport to terminate an alleged assignment of copyright in the Works and to reclaim the balance of the renewal term of the copyrights in the Works. *Id.* ¶ 25. Under the statutory scheme set forth in the Copyright Act of 1976, the earliest date on which any of the Termination Notices will become effective is in 2014. *See id.*; *see also* 17 U.S.C. §§ 304(c)(3), (c)(4)(A).

**Marvel's Return of Kirby's Original Artwork**

In counterclaims unrelated to the alleged termination of rights, the two New York defendants – Barbara and Susan Kirby – allege that unidentified Marvel predecessors, at some unidentified point in time, took possession of the physical pieces of Kirby's original artwork for purposes of publishing the Works. Counterclaims ¶ 38. Upon Kirby's death in 1994, ownership of these physical pieces of artwork is alleged to have passed from Kirby to his wife, Rosalind Kirby, and then to the Rosalind Kirby Trust upon her death sometime later. *Id.* ¶ 39. Lisa Kirby is the trustee of the Rosalind Kirby Trust, and in that capacity manages the affairs of Jack Kirby's estate and Rosalind Kirby's estate. *See* Declaration of Lisa R. Kirby in Support of Defendants' Motion to Dismiss, dated March 9, 2010, ¶ 3 ("Lisa Kirby Decl.") (Docket No. 11); Reply Declaration of Lisa R. Kirby in Support of Defendants' Motion to Dismiss, dated April 6, 2010, ¶¶ 1-2, 4-5 ("Lisa Kirby Reply Decl.") (Docket No. 24).

In 1982, Kirby allegedly demanded the return of all pieces of artwork from an unspecified Marvel entity, and by October 1986, the unspecified Marvel entity had returned what it contended was all of Kirby's artwork that was in its possession or control. Counterclaims ¶¶ 40, 42. Susan and Barbara Kirby claim that they are "informed and believe" that the Marvel entity did not return all of the artwork and to this day retains in its possession certain items. *Id.* ¶ 43. The Third and Fourth Counterclaims are brought solely by Susan and Barbara Kirby, who are not alleged to be trustees of the Rosalind Kirby Trust. *See id.* ¶¶ 37-54. Though this Court has determined that it has jurisdiction over the remaining defendants, Lisa and Neal Kirby, s*ee Marvel Worldwide, Inc. v. Kirby*, No. 10 Civ. 141(CM)(KNF), 2010 WL 1655253, at *1 (S.D.N.Y. Apr. 14, 2010), they do not assert these Counterclaims

### Marvel's Bankruptcy

This Court can take judicial notice of the fact that on December 27, 1996, Marvel Entertainment Group, Inc. and nine of its subsidiaries including Marvel Characters, Inc. (collectively, the "Debtors") filed petitions for relief under chapter 11 of the United States Bankruptcy Code. *See* FED. R. EVID. 201; *Ackerman v. Local Union 363, Int'l Bhd.*, 423 F. Supp. 2d 125, 127-28 (S.D.N.Y. 2006) (McMahon, J.) (citations omitted). On July 31, 1998, an order confirming the Fourth Amended Joint Plan of Reorganization Proposed by the Secured Lenders and Toy Biz, Inc. for the Debtors (the "Plan") was entered. *See* Declaration of Eli Bard in Support of Marvel's Motion to Dismiss Defendants' Counterclaims dated May 24, 2010 ("Bard Decl.") ¶¶ 3-4, Ex. B, C. Section 12.2(a) of the Plan provides as follows:

> Except as otherwise provided herein, *upon the Consummation Date, all Claims against and Equity Interests in each of the Debtors will be satisfied, discharged and released* in full exchange for the consideration provided hereunder. *All entities shall be enjoined and precluded from asserting against any Debtor or Newco or their respective properties or interests in property, any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Consummation Date.*

(emphasis added). The Plan was consummated on October 1, 1998. *See* Bard Decl. Ex. D.

### Marvel's Release of *The Incredible Hulk* and *X-Men Origins: Wolverine*

Within the last two years, two motion pictures have been released based on characters and comic books to which Kirby is alleged to have contributed: *The Incredible Hulk*, produced by Marvel and released on or about June 13, 2008, and *X-Men Origins: Wolverine*, produced and released under a license to Twentieth Century Fox on approximately May 1, 2009. *See* Counterclaims ¶ 56. Kirby received screen credit in connection with *The Incredible Hulk*. *See* Bard Decl. Ex. A.

## ARGUMENT

Defendants' First Counterclaim must be dismissed as impermissibly duplicative of Marvel's sole cause of action and the Second, Third, Fourth and Fifth Counterclaims must be dismissed because they do not "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations, citations and alterations omitted). Thus, unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Id.* at 570; *Iqbal*, 129 S.Ct. at 1950-51; *see also John Wiley & Sons, Inc.*, 2010 WL 103886, at *2 (applying standard to motion to dismiss defendant's counterclaims).

## I.    DEFENDANTS' FIRST COUNTERCLAIM SHOULD BE DISMISSED AS A MERE "MIRROR IMAGE" OF MARVEL'S SOLE CAUSE OF ACTION

Defendants' First Counterclaim seeks a declaration that the Termination Notices are effective and "will validly terminate, on the respective Termination dates, all prior grants, assignments or transfers of renewal rights in and to each and/or all of" the Works, *see* Counterclaims ¶¶ 29-32, 72. Such "mirror-image" counterclaims cannot stand, as they merely restate legal or factual issues already put before the Court in the plaintiff's complaint. *See, e.g.*, *Arista Records LLC v. Usenet.com, Inc.*, No. 07 Civ. 8822(HB), 2008 WL 4974823, at *5

(S.D.N.Y. Nov. 24, 2008) (dismissing counterclaims for declaratory relief because they "serve no purpose because they mirror the issues raised in Plaintiffs' Complaint"); *Maverick Recording Co. v. Chowdhury*, Nos. 07 Civ. 200(DGT), 07 Civ. 640(DGT), 2008 WL 3884350, at *2 (E.D.N.Y. Aug. 19, 2008) (finding counterclaim seeking declaratory judgment to be viable only when it presents independent case or controversy); *Interscope Records v. Kimmel*, No. 07 Civ. 108, 2007 WL 1756383, at *2-4 (N.D.N.Y. June 18, 2007) (dismissing counterclaim that was merely "mirror image" of the complaint and served no purpose) (citations omitted).

The First Counterclaim is the exact mirror-image of Marvel's cause of action, and seeks nothing more than the reverse of what Marvel seeks. With no additional factual allegations or legal theories apart from those set forth in Marvel's Complaint, defendants have not pled an independent controversy on this claim; the issues and legal theories at play in this counterclaim are identical to the Complaint, notwithstanding the purported joinder of Disney and Marvel Entertainment. It is redundant and superfluous, and need not be entertained by this Court.

## II.    DEFENDANTS HAVE FAILED TO STATE A VIABLE CLAIM FOR DECLARATION REGARDING THE PRINCIPLES TO BE APPLIED IN AN ACCOUNTING OF PROFITS

The Second Counterclaim must be dismissed because it is plainly unripe for judicial review. Defendants ask this Court to issue a declaratory judgment relating to an accounting for profits because they falsely allege that "an actual and justifiable controversy has arisen and now exists . . . concerning how Profits from Co-Owned Kirby Works should be defined for purposes of [the parties'] duty to account to one another for their respective exploitation of such works." Counterclaim ¶ 34. That statement is simply wrong; any alleged right to an accounting would arise only if this Court were to determine that defendants had a future ownership interest in the Works. Even then, no such rights would vest until 2014, and then only if one of the counterclaim defendants actually realized a profit through the exploitation of the Works.

A.    **The Court Lacks Subject Matter Jurisdiction Over Defendants' Claim for an Accounting Because It Presents No Actual Case or Controversy**

Article III of the United States Constitution limits the jurisdiction of federal courts to "actual 'cases or controversies,'" *see Allen v. Wright*, 468 U.S. 737, 750 (1984), and requires, among other things, that a case be ripe for adjudication. The ripeness doctrine prevents a court "from entertaining claims based on contingent future events that may not occur as anticipated or at all." *City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353, 359 (S.D.N.Y. 2000) (McMahon, J.) (internal quotations omitted). To determine whether a case is constitutionally ripe, courts evaluate (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).

The accounting counterclaim fails on both prongs of the analysis. First, "the 'fitness analysis is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur." *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 132 (2d Cir. 2008) (quoting *Simmonds v. I.N.S.*, 326 F.3d 351, 359 (2d Cir. 2003)). Here, there can be no dispute that the need for an accounting may never occur because this counterclaim is entirely contingent on a determination that the Works at issue in this action were not created as works-made-for-hire, and therefore that a statutory termination right may exist. Furthermore, no profits in which defendants can claim an interest have been alleged to have been realized by any party to this action. "Without . . . declaratory relief [determining copyright ownership rights], none of the subsidiary remedies that flow from it – [including] an accounting . . . – are available." *Tomas v. Gillespie*, 385 F. Supp. 2d 240, 246 (S.D.N.Y. 2005); *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 252 (S.D.N.Y. 2000) (noting that remedies that flow from declaration of co-ownership include accounting for profits by co-owner). At this juncture, the accounting counterclaim is far

from sufficiently concrete for judicial review.  It fails on the fitness prong of the ripeness formula.

The accounting counterclaim also fails on the second prong because defendants do not allege that they will be harmed or that it will "create[] a direct and immediate dilemma" if this Court does not adjudicate the accounting claim.  *Grandeau*, 538 F.3d at 134 (quoting *Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469, 478 (2d Cir. 1999)).  Even if defendants somehow prevailed with respect to the underlying claim relating to the validity of the Termination Notices, no ownership interest would vest *until 2014 at the earliest*, and "[t]he mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship."  *Id.* (quoting *Simmonds*, 326 F.3d at 360).  Indeed, numerous courts have found accounting claims that are contingent upon a judicial determination of rights to be premature and unripe.  *See, e.g., Boerger v. Levin*, 812 F. Supp. 564, 565 (E.D. Pa. 1993) (dismissing claim for accounting of alleged overpayment of legal fees as unripe and "as yet nonexistent" where underlying malpractice claim had not yet been adjudicated); *Cadle Co. v. D'Addario*, 957 A.2d 536, 539 (Conn. App. Ct. 2008) (dismissing accounting claim as premature where injury was "hypothetical" because it was contingent on rulings with respect to priority of creditors and the sufficiency of estate funds).

> **B.    The Court Should Exercise Its Discretion To Decline Jurisdiction Over Defendants' Premature Claim for an Accounting**

Even if the Court were to find that it has subject matter jurisdiction, it should nevertheless exercise its discretion to decline jurisdiction over the premature accounting claim because the complex, burdensome and  currently hypothetical claim "will be *better* decided later and . . . the parties will not have constitutional rights undermined by the delay."  *Simmonds*, 326 F.3d at 357 (emphasis in original).  As the Second Circuit has recently recognized, "[p]rudential ripeness is .

9

. . a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary." *Grandeau*, 528 F.3d at 131 (quotations omitted).

Prudential ripeness is guided by the same two-part inquiry as constitutional ripeness, "requiring [the Court] to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 131-32 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). Any determination of the principles to be applied in an accounting of profits based on future co-ownership of the copyrights in the Works is unnecessary and defendants can claim no conceivable hardship by having to wait to see whether they can establish the validity of the Termination Notices before turning to the monetary aspects of ownership. By contrast, if the Court declines jurisdiction over the complex and hypothetical accounting counterclaim at this procedural juncture, it will avoid "entangling [itself] in abstract disagreements." *In re Drexel Burnham Lambert Group Inc.*, 995 F.2d 1138, 1146 (2d Cir. 1993) (quoting *Abbott Labs.*, 387 U.S. at 148).

## III. DEFENDANTS HAVE FAILED TO STATE VIABLE CLAIMS FOR EITHER CONVERSION OR BREACH OF CONTRACT

Rarely do claims presented in a federal lawsuit suffer from as many facial defects as the conversion and contract counterclaims pleaded by defendants in this case. Defendants' allegations that unidentified predecessors of the Marvel parties took possession of and retained unidentified pieces of artwork created by Kirby, despite Kirby's demand for their return in 1982 (Counterclaims ¶¶ 38-40), have been extinguished in a federal bankruptcy case, are barred by the applicable statutes of limitations, are brought by defendants who have no standing to do so, and moreover fail even to state a claim for which relief can be granted.

A.    **The Third and Fourth Counterclaims Were Discharged Pursuant to a Confirmed and Consummated Reorganization Plan**

In the Debtors' chapter 11 bankruptcy cases, a Plan of Reorganization was confirmed on July 31, 1998 and consummated on October 1, 1998.  Bard Decl., Exs. C, D.  Section 12.2 of the Plan provided that once it became effective, all claims against the Debtors were "satisfied, discharged and released" and further that "[a]ll entities shall be enjoined and precluded from asserting against any Debtor or Newco or their respective properties or interests in property, any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Consummation Date."  Bard Decl., Ex. B.  Thus, any viable conversion or breach of contract claims against the Debtors – Marvel Entertainment Group, Inc. and nine of its subsidiaries including Marvel Characters, Inc. – were extinguished on consummation of the Plan.  *See In re Kalikow*, 602 F.3d 82, 94 (2d Cir. 2010) ("When there is a confirmation order of a reorganization plan in bankruptcy pursuant to Chapter 11, that confirmation order discharges the debtor from all pre-confirmation claims." (citing 11 U.S.C. § 1141(d)(1)(A))); *In re R.H. Macy & Co., Inc.*, 283 B.R. 140, 146 (S.D.N.Y. 2002) (finding confirmation plan and Bankruptcy Code provided for permanent injunction enjoining claims discharged by the plan, including breach of contract claims).

B.    **The Third and Fourth Counterclaims Are Time-Barred**

1.    ***The Conversion Counterclaim Is Barred By The Statute Of Limitations***

Any alleged conversion claim (if it ever existed) is barred under New York's three-year statute of limitations because it would have accrued no later than the date of Kirby's alleged demand for the return of the pieces of artwork in 1982.  *See* N.Y. C.P.L.R. § 214(3).  Conversion claims are governed by the law of the state where the wrongful taking occurred or, alternatively, where the property at issue is located.  *See Lund's, Inc. v. Chem. Bank*, 870 F.2d 840, 845-46 (2d

11

Cir. 1989).  As any alleged wrongful taking must have occurred in New York where the artwork

was created and where Marvel's predecessors were headquartered, New York law applies to the

conversion counterclaim.  *See Kirby*, 2010 WL 1655253, at *1.  Under well-established New

York law, the three-year statute of limitations for conversion is triggered by the act of wrongful

taking of the property and not by the discovery of the taking.  *See Vigilant Ins. Co. of Am. v.*

*Housing Auth. of City of El Paso, Tex.*, 87 N.Y.2d 36, 44 (1995); *Davidson v. Fasanella*, 269

A.D.2d 351, 352 (2d Dep't 2000).  Where an owner has entrusted his or her property to another,

as defendants allege Kirby did, the conversion claim accrues when the party in possession

refuses to return the property upon the owner's demand.  *See Grosz v. Museum of Modern Art*,

No. 09 Civ. 3706(CM)(THK), 2010 WL 807431, at *7-10 (S.D.N.Y. Mar. 3, 2010) (McMahon,

J.) (applying New York's "demand and refusal rule").

Defendants allege that Kirby demanded return of the artwork in or around 1982.

Counterclaims ¶ 39.  There can be no dispute that Kirby, having personally submitted the

artwork to predecessors of the Marvel parties, knew who possessed them.  Counterclaims ¶ 22.

Consequently, any alleged refusal to return the artwork would have triggered Kirby's right to

bring a conversion claim at that time.  *See Close-Barzin v. Christie's, Inc.*, 51 A.D.3d 444, 444-

45 (1st Dep't 2008) (affirming dismissal of conversion claim as time-barred where alleged taking

occurred more than three years before action was commenced and plaintiff knew defendants held

property and had all information necessary to pursue claim within limitations period).  Kirby's

failure to bring a conversion suit within three years after his demand in 1982 forecloses any

attempt by his heirs to bring a claim 25 years later.

Defendants' wholly-conclusory allegations that Marvel somehow concealed the fact that

it retained certain pieces of artwork, presumably an attempt to invoke equitable tolling of the

statute of limitations, are unavailing.  The equitable tolling exception to the statute of limitations bar is extremely limited, and applies only in the rare and exceptional circumstance where a party can show that an affirmative fraudulent concealment prevented it from filing a timely claim.  *See Grosz*, 2010 WL 807431, at *14; *Close-Barzin*, 51 A.D.3d at 444.  No such thing is alleged here. Moreover, equitable tolling is only available to a plaintiff who has exercised "reasonable diligence" in bringing the action in question.  *See Bertin v. U.S.*, 478 F.3d 489, 494 n.3 (2d Cir. 2007) (citations omitted).  No explanation for the 25-year delay here is provided.

New York courts have repeatedly refused to apply the equitable tolling exception to revive untimely conversion claims under virtually identical circumstances.  *See, e.g., Interested Lloyd's Underwriters v. Ross*, No. 04 Civ. 4381(RWS), 2005 WL 2840330, at *6 (S.D.N.Y. Oct. 28, 2005) (dismissing artwork conversion claim as time-barred and refusing to toll statute of limitations where plaintiff had knowledge of artwork's whereabouts and there was no indication of fraudulent concealment); *Sports Legends Inc. v. Carberry*, 61 A.D.3d 449,  449-50 (1st Dep't 2009) (affirming dismissal of conversion claim as time-barred where statute of limitations began to run when defendant failed to comply with demand letter); *see also In re Hydro Investors, Inc*., 328 Fed. Appx. 10, 12 (2d Cir. 2009) (affirming that statute of limitations for conversion should not be tolled in the absence of fraud).

## 2. *Defendants' Claim For Breach Of Contract Is Barred By The Statute Of Limitations*

In their Fourth Counterclaim, defendants assert a time-barred claim for breach of an October 31, 1986 contract between an unidentified Marvel entity and Kirby pursuant to which any and all pieces of artwork in the possession of the unnamed Marvel entity or entities would allegedly be returned.  Counterclaims ¶ 50.  Any contract claim would be barred by New York's six-year statute of limitations on contract claims, which begins to run at the time of the breach,

not the time of discovery of the breach. *See* N.Y. C.P.L.R. § 213(2); *ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 360 (2d Cir. 1997) ("[I]n New York, it is well settled that the statute of limitation for breach of contract begins to run from the day the contract was breached, not from the day the breach was discovered, or should have been discovered."). Defendants fail to allege specifically when the alleged breach of the supposed October 31, 1986 contract occurred; however, as the alleged contract purportedly called for performance by return of the artwork, any such breach would have occurred upon demand for the return of the artwork in October 1986. *See* Counterclaims ¶¶ 50, 53. Accordingly, if defendants ever had a breach of contract claim, it expired almost twenty years ago in 1992.

### C. Barbara and Susan Kirby Lack Standing To Assert Claims of Conversion or Breach of Contract on Behalf of the Rosalind Kirby Trust

Moreover, even if the conversion and contract claims were not clearly discharged by the bankruptcy and plainly time-barred, neither Barbara nor Susan Kirby has standing to assert claims for conversion or breach of contract. Upon Kirby's death, any rights he had – including any conversion claim or contract rights – passed directly to his wife, Rosalind Kirby, and upon her death to the Rosalind Kirby Trust. *See* Counterclaims ¶ 39. Lisa Kirby is the trustee of the Rosalind Kirby Trust. Lisa Kirby Decl. ¶ 3; Lisa Kirby Reply Decl. ¶ 5. The Rosalind Kirby Trust is a "California testamentary trust," Lisa Kirby Reply Decl. ¶ 1, so California law applies. Under California law, only the trustee has the right to sue on behalf of the trust. *See* CAL. CIV. PROC. CODE § 367 (2010) ("Every action must be prosecuted in the name of the real party in interest . . . ."); *Saks v. Damon Raike & Co.*, 7 Cal. App. 4th 419, 427 (Cal. Ct. App. 1992) ("[W]here a cause of action is prosecuted on behalf of an express trust, the trustee is the real party in interest because the trustee has legal title to the cause."); *see also* 60 CAL. JUR. 3d Trusts § 368, p.1.

14

Accordingly, even if Defendants' conversion and breach of contract claims were somehow viable, neither Barbara nor Susan Kirby has standing to bring them because the beneficiary of a trust "has no legal title or ownership in the trust assets; his or her right to sue is ordinarily limited to the enforcement of the trust, according to its terms." *Saks*, 7 Cal. App. 4th at 427; *Pillsbury v. Karmgard*, 22 Cal. App. 4th 743, 753 (Cal. Ct. App. 1994). Only Lisa Kirby in her capacity as trustee of the Rosalind Kirby Trust has standing to assert the Third and Fourth Counterclaims; since she has not done so, they must be dismissed.

## D.    The Third And Fourth Counterclaims Fail To State a Claim

The conversion and breach of contract counterclaims also fail to meet the *Iqbal* "plausibility standard" applicable to all claims subject to FED. R. CIV. P. 8. *Iqbal*, 129 S. Ct. at 1951. Defendants' counterclaims for conversion and breach of contract are utterly devoid of sufficient factual allegations to create any plausible inference of wrongdoing. The claims for the return of the pieces of Kirby artwork fail to specify even one particular piece of art supposedly withheld, let alone when any artwork was allegedly withheld or by whom. Counterclaims ¶¶ 37-54; *see Walden Terrace, Inc. v. Broadwall Mgmt. Corp.*, 213 A.D.2d 630, 631 (2d Dep't 1995) (dismissing conversion claim where plaintiff "failed to allege any specific and identifiable property converted by the defendants") (citations omitted); *Sirohi v. Trs. of Columbia Univ.*, No. 97-7912, 1998 WL 642463, at *2 (2d Cir. Apr. 16, 1998) (finding breach of contract claim will survive dismissal only where "the essential terms of the parties' purported contract [is alleged] in nonconclusory language, including the specific provisions of the contract upon which liability is predicated") (internal quotations omitted). Defendants merely allege that "Marvel retains in its possession certain Kirby Artwork that it did not return to Kirby," that Marvel "concealed and continues to conceal that Marvel retained certain Kirby Artwork that it did not return to Kirby . . ." and that Marvel "fail[ed] to return to Jack Kirby all of his original artwork in their possession,

15

custody and control."  Counterclaims at ¶ 43, 53.  These wholly-conclusory claims "[stop] short of the line between possibility and plausibility of entitlement to relief," *Iqbal*, 129 S. Ct. at 1949 (internal quotations and citations omitted), and are plainly insufficient to rescue a meritless conversion claim based on activities that supposedly occurred 25 years ago.  *See Garber v. Ravitch*, 186 A.D.2d 361, 362 (1st Dep't 1992) (refusing to toll limitations period based on fraudulent concealment when allegations of fraud were merely added as a means to avoid anticipated statute of limitations defense).

## IV.    DEFENDANTS HAVE FAILED TO STATE A VIABLE CLAIM FOR FALSE ADVERTISING

Nominally, the Fifth Counterclaim alleges false advertising in violation of the Lanham Act section 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B).  The predicate for this claim is Marvel's alleged failure to properly credit Kirby as a creator of various characters featured in two films, *The Incredible Hulk* and *X-Men Origins: Wolverine* (the "Films").  Counterclaims ¶¶ 56-57, 59. In fact, Kirby did receive a co-creator screen credit in *The Incredible Hulk*, *viz.*, "Based on the Marvel Comic Book by Stan Lee and Jack Kirby."  *See* Bard Decl. Ex. A.

Section 43(a) of the Lanham Act creates two prongs of civil liability – one for false designation of origin and one for false advertising.  15 U.S.C. § 1125(a)(1)(A) and (B); *Gurvey v. Cowan, Liebowitz, & Latman, PC.*, No. 06 Civ. 1202, 2009 WL 1117278, at *4-5 (S.D.N.Y. Apr. 24, 2009).  These causes of action are distinct from copyright law, and the U.S. Supreme Court has "been careful to caution against misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright."  *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) (internal quotations and citations omitted).

In *Dastar*, the Supreme Court held that "no Lanham Act liability attaches" to the producer of a video merely for saying that it is the producer of the program, regardless of who

else may or may not have contributed to the work, because the phrase "origin of goods" "refers to the producer of the tangible goods that are offered for sale and not to the author of any idea, concept or communication embodied in those goods." *Id.* at 37-38. In so holding, the Court reasoned that to expand the Lanham Act's reach to the extent Defendants seek to do in this case would "conflict with the law of copyright, which addressees [the] subject specifically." *Id.* at 33. Thus, defendants' Lanham Act counterclaim based upon any alleged failure to attribute contributions to a creative work is squarely precluded by *Dastar*, in keeping with the Court's enunciated rationale regarding the unwarranted stretching of copyright claims. S*ee, e.g.*, *Pot Luck, L.L.C. v. Freeman*, No. 06 Civ. 10195(DAB), 2009 WL 693611, at *3-4 (S.D.N.Y. Mar. 10, 2009) (dismissing claim for false designation of origin where manufacturers and distributors of film at issue were "the origin" of goods); *Thomas Publ'g Co., LLC v. Tech. Evaluation Ctrs., Inc.*, No. 06 Civ. 14212(RMB), 2007 WL 2193964, at *2-3 (S.D.N.Y. July 27, 2007) (dismissing false advertising and false designation of origin claims based on alleged failure to attribute credit).

Defendants cannot avoid Supreme Court precedent by attempting to frame their Lanham Act counterclaim as one for "false advertising" under section 43(a)(1)(B) of the Lanham Act; the gravamen of defendants' claim that Marvel's licensees failed to properly identify Kirby as the author or co-author of the underlying works is actually a false designation of origin claim under section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(B); *see also Wellnx Life Scis., Inc. v. Iovate Health Scis. Research Inc.*, 516 F. Supp. 2d 270, 286 (S.D.N.Y. 2007). The alleged failure by the Counterclaim-Defendants or their licensees to credit Kirby as an author or co-author of any of the characters is simply not actionable under the Lanham Act. *See Classic Media, Inc. v. Mewborn*, No. 05-452 (C.D. Cal. Filed Sept. 29, 2005) (dismissing Lanham Act §

43(a) claim by heir of author of *Lassie* — who was represented by Toberoff & Associates P.C. — asserting that advertising for certain *Lassie* works misrepresented heir's affiliation with such works) (attached hereto); *see also Broughel v. Battery Conservancy*, No. 07 Civ. 7755(GBD), 2010 WL 1028171, at *3-4 (S.D.N.Y Mar. 16, 2010) (dismissing false advertising claim where defendants allegedly failed to credit plaintiff as author and designer); *Smartix Int'l Corp. v. Mastercard Int'l LLC*, No. 06 Civ. 5174 (GBD), 2008 WL 4444554, at *5-7 (S.D.N.Y. Sept. 30, 2008) (dismissing claims for false advertising and false designation of origin as plaintiff's software and technology were merely ideas embodied in defendants' affinity card program and not protected by Lanham Act). Defendants' attempt to stretch the Lanham Act to apply to areas traditionally occupied by copyright law is the very misuse and over-extension of the statute against which the Supreme Court cautioned in *Dastar*, 539 U.S. at 34. The Fifth Counterclaim should be dismissed.

## V.    ALL CLAIMS ASSERTED AGAINST NON-PLAINTIFFS DISNEY AND MARVEL ENTERTAINMENT SHOULD BE DISMISSED

Defendants improperly attempt to impose liability upon Marvel's parent companies based on wholly conclusory allegations that they "are informed and believe" that the parties are "alter-egos" of one another, or in the alternative, that they acted as agents on one another's behalf. Counterclaims ¶ 15, 17. These allegations are plainly insufficient to state a claim that is "plausible on its face," *Iqbal*, 129 S. Ct. at 1949, and must be dismissed. Neither Disney nor Marvel Entertainment had any corporate relationship to Marvel at the time the conduct alleged in the Counterclaims took place. Consequently, the Counterclaims are completely devoid of any factual allegations relating to any possible wrongdoing by either Disney or Marvel Entertainment and must be dismissed (assuming that defendants ever properly joined these non-parties without first obtaining the requisite leave of this Court under the permissive joinder provisions of Rule

18

20(a), *see, e.g.*, *Union Carbide Corp. v. Air Prods. & Chems., Inc.*, 202 U.S.P.Q. 43, 51-52 (S.D.N.Y. 1978)).

### A.  Defendants Fail to Allege Any Facts In Support of Alter-Ego Liability

Defendants have not alleged *any* facts – leave alone sufficient facts – to support a finding of liability as to either Marvel Entertainment or Disney.  As the Supreme Court has noted, "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries."  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotation omitted).  Accordingly, "it is the exceptional instance where a court will disregard the corporate form, [and] the party who wishes the court to disregard that form bears the burden of proving that there are substantial reasons for doing so." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 270 (D. Del. 1989).  Defendants have not met this burden.

The question of whether the corporate veil may be pierced is examined under the law of the state of incorporation of the company whose veil is sought to be pierced.  *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995).  All three Marvel plaintiffs are Delaware corporations, *see* Complaint ¶¶ 5-6, so Delaware law applies.  To plead an alter-ego claim under Delaware law, a plaintiff must allege that (1) the corporation whose identity is to be disregarded was subject to complete domination and control by the parent company such that they "operated as a single economic entity," and (2) "an overall element of injustice or unfairness is present." *Trevino v. MERSCorp., Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008).  Notably, "[m]ere domination and control of the parent over the subsidiary will not support alter ego liability." *Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 729 (Del. Sup. Ct. 1996) (requiring allegation of "fraud or similar injustice").

Defendants make no factual allegations whatsoever that relate to any alleged "domination or control" by Disney or Marvel Entertainment, much less any allegations of fraud or injustice that might justify alter-ego liability.  Defendants allege only that Marvel was "recently purchased by Disney, on December 31, 2009."  Counterclaims ¶ 10.  As all of the events that supposedly give rise to the Counterclaims took place a minimum of 25 years before December 31, 2009, Disney could not have been the alter-ego of Marvel with respect to any of them.  *See In re Arbitration between Holborn Oil Trading Ltd. and Interpol Bermuda Ltd.*, 774 F. Supp. 840, 845 (S.D.N.Y. 1991); *In re Foxmeyer*, 290 B.R. 229, 234-35 (D. Del. Bankr. 2003) (noting plaintiff's request to pierce corporate veil related to corporation's relationship to parent company at time of events alleged).  Similarly, Marvel Entertainment was not formed until 1993, and as all of the events that supposedly give rise to the Counterclaims took place prior to this time, Marvel Entertainment could not have been the alter-ego of Marvel with respect to any of them.  *See* Bard Decl. ¶ 6, Ex. E.

## B.  Defendants Fail to Allege Any Facts In Support of Liability Under An Agency Theory

Defendants have also failed to allege any facts upon which this Court may infer that either Disney or Marvel Entertainment may be liable for Marvel's alleged acts on an agency theory.  "Simply put, the law recognizes that corporations may be organized in ways to limit liability among separate corporate entities . . . thus a parent company is not automatically liable for the acts of a wholly-owned subsidiary."  *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 89 (S.D.N.Y. 2010) (internal quotation omitted).  Rather, for a subsidiary to be able to bind its parent company as an agent, it "must have authority, whether apparent, actual or implied." *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 122 (2d Cir. 1998).

The sole allegation that relates to agency states only that "each of the Counterclaim-Defendants was the agent, partner, servant, employee, or employer of each of the other Counterclaim-Defendants herein, and that at all times herein mentioned, each of the Counterclaim-Defendants was acting within the course and scope of such employment, partnership and/or agency and that each of the Counterclaim-Defendants is jointly and severally responsible for the damages hereinafter alleged."  Counterclaims ¶ 17.  This conclusory statement is plainly insufficient even to "nudge[] [defendants'] claims across the line from conceivable to plausible," *Twombly* 550 U.S. at 570, and does not include any facts that might support a finding of agency.  *See, e.g.*, *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 68 (2d Cir. 2003) (defining actual authority as "the power of the agent to do an act or to conduct a transaction on account of the principal which . . . he is privileged to do because of the principal's manifestations to him" (quoting *Minskoff v. Am. Express Travel Related Serv. Co.*, 98 F.3d 703, 708 (2d Cir. 1996))); *Marfia v. T.C. Ziraat Bankasi, N.Y. Branch*, 100 F.3d 243, 251 (2d Cir. 1996) (defining implied authority "as actual authority given implicitly by a principal to his agent") (internal quotations and citations omitted); *Cromer Finance Ltd. v. Berger*, 137 F. Supp. 2d 452, 486 (S.D.N.Y. 2001) (finding plaintiff must allege "words or conduct *of the principal*, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction on behalf of the principal") (emphasis in original).

Indeed, it is patently absurd to imagine allegations that either Disney or Marvel Entertainment – neither of which was Marvel's parent at the relevant time – manifested its express or implied consent to Marvel that it would be bound by Marvel's conduct.  *See, e.g.*, *Spagnola*, 264 F.R.D. at 91 n.15 (noting that apparent agency allegations cannot be based on

representations or events that took place after relevant events).  Accordingly, all Counterclaims asserted against Disney and Marvel Entertainment must be dismissed as a matter of law.

## **CONCLUSION**

For all the foregoing reasons, defendants' Counterclaims should be dismissed in their entirety.

Dated:    May 24, 2010

By:   /s/  James W. Quinn

WEIL, GOTSHAL & MANGES LLP

James W. Quinn
R. Bruce Rich
Randi W. Singer
767 Fifth Avenue
New York, NY 10153
Tel:  (212) 310-8000
Fax: (212) 310-8007

PAUL, HASTINGS, JANOFSKY & WALKER LLP
Jodi A. Kleinick
75 East 55th Street
New York, NY 10022
Tel.: (212) 318-6000
Fax: (212) 319-4090

HAYNES AND BOONE, LLP
David Fleischer
1221 Avenue of the Americas, 26th Floor
New York, NY 10020
Tel: (212) 659-7300
Fax: (212) 884-9567

*Attorneys for Plaintiffs/Counterclaim-Defendants*