TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel:    310-246-3333
Fax:    310-246-3101
MToberoff@ipwla.com

Attorneys for Defendants Lisa R. Kirby, Barbara J.
Kirby, Neal L. Kirby and Susan M. Kirby

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------

MARVEL WORLDWIDE, INC.,
MARVEL CHARACTERS, INC. and
MVL RIGHTS, LLC,

                                        Plaintiffs,

        -against-

LISA R. KIRBY, BARBARA J. KIRBY,
NEAL L. KIRBY and SUSAN M. KIRBY,

                                        Defendants.

--------------------------------------------------------------

LISA R. KIRBY, BARBARA J. KIRBY,
NEAL L. KIRBY and SUSAN M. KIRBY,

                                        Counterclaimants,

        -against-

MARVEL ENTERTAINMENT, INC.,
MARVEL WORLDWIDE, INC.,
MARVEL CHARACTERS, INC., MVL
RIGHTS, LLC, THE WALT DISNEY
COMPANY and DOES 1 through 10,

                                        Counterclaim-Defendants.

--------------------------------------------------------------

Civil Action No.  10-141 (CM) (KF)

**MEMORANDUM OF LAW IN OPPOSITION TO COUNTERCLAIM-DEFENDANTS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS PURSUANT TO RULE 12(b)(6)**

[Hon. Colleen McMahon]

[ECF Case]

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

LEGAL STANDARD........................................................................................2

ARGUMENT ....................................................................................................3

I.  THE FIRST COUNTERCLAIM IS AN INDEPENDENT CLAIM THAT
    MUST NOT BE DISMISSED ..............................................................3

II. THE SECOND COUNTERCLAM IS NECESSARY FOR THE PARTIES
    TO DETERMINE THEIR RIGHTS AND OBLIGATIONS ...............5

    A.  The Second Counterclaim is Ripe for Declaratory Judgment .................5

    B.  This Court Should Adjudicate the Second Counterclaim .........................8

III. THE THIRD AND FOURTH COUNTERCLAIMS FOR CONVERSION
     AND BREACH OF CONTRACT ARE WELL PLED AND MUST NOT
     BE DISMISSED ...................................................................................9

    A.  Marvel's Bankruptcy Does Not Discharge Either Counterclaim .............9

    B.  The Statute of Limitations Was Tolled for Both the Conversion
        and Breach of Contract Claims ...............................................................11

    C.  Susan and Barbara Kirby Have Standing to Assert the
        Counterclaims .........................................................................................14

    D.  The Third and Fourth Counterclaims Properly State Claims..................16

IV.  THE FIFTH COUNTERCLAIM PROPERLY STATES A CAUSE OF
     ACTION FOR FALSE ADVERTISING UNDER THE LANHAM ACT ........17

V.   DISNEY AND MARVEL ENTERTAINMENT ARE NECESSARY TO
     FULLY ADJUDICATE DEFENDANTS' COUNTERCLAIMS ......................21

CONCLUSION.................................................................................................25

# TABLE OF AUTHORITIES

### Federal Cases

*Abbas v. Dixon*,
480 F.3d 636 (2d Cir. 2007)................................................................................11

*Abbott Labs v. Gardner*,
387 U.S. 136 (1967)............................................................................................8

*Acme Precision Products, Inc. v. American Alloys Corporation*,
422 F.2d 1395 (8th Cir. 1970) ..........................................................................24

*Alloy Briquetting Corp. v. Niagara Vest, Inc.*,
756 F. Supp. 713 (W.D.N.Y. 1991) ...................................................................9

*Arista Records LLC v. Usenet.com., Inc.*,
2008 U.S. Dist. LEXIS 95514 (S.D.N.Y. Nov. 24, 2008) ................................4

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (U.S. 2009)..........................................................................3, 16

*Ashton-Tate v. Ross*,
916 F.2d 516 (9th Cir. 1990) ............................................................................22

*Bangor Punta Operations, Inc. v. Bangor & Aroostook R. Co.*,
417 U.S. 703 (1974)...........................................................................................24

*Barrett v. United States*,
689 F.2d 324 (2d Cir. 1982)...............................................................................13

*Boerger v. Levin*,
812 F. Supp. 564 (E.D. Pa. 1993) ......................................................................7

*Broughel v. Battery Conservancy*,
07–CV-775 (GBD), 2010 WL 1028171 (S.D.N.Y. Mar. 16, 2010) .................20

*Carell v. Shubert Org., Inc.*,
104 F.Supp.2d 236 (S.D.N.Y. 2000)...................................................................7

*Cargill, Inc. v. Sabine Trading & Shipping Co.*,
756 F.2d 224 (2d Cir. 1985)...............................................................................15

*Cerbone v. International Ladies' Garment Workers' Union*,
768 F.2d 45 (2d Cir. 1985).................................................................................12

*City of New Rochelle v. Town of Mamaroneck*,
111 F. Supp. 2d 353 (S.D.N.Y. 2000)..............................................................5, 7

*Clauson v. Eslinger*,
455 F. Supp. 2d 256 (S.D.N.Y. 2006)...................................................... 19-21

*Classic Media, Inc. v. Mewborn*,
532 F.3d 978 (9th Cir. 2008) .................................................................... 20-21

*Dastar v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003).................................................................................. 2, 18-21

*DePippo v. Kmart Corp.*,
335 B.R. 290 (Bankr. S.D.N.Y. 2005) ...........................................................10

*Dow Jones & Co. v. Harrods Ltd.*,
346 F.3d 357 (2d Cir. 2003).............................................................................8

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004)...........................................................................17

*Excellus Health Plan, Inc. v. Tran*,
287 F. Supp. 2d 167 (W.D.N.Y. 2003) ...........................................................2

*Fernandez v. Chertoff*,
471 F.3d 45 (2d Cir. 2006)..............................................................................3

*FSP, Inc. v. Societe Generale*,
2005 WL 475986 (S.D.N.Y. 2005).................................................................2

*First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*,
462 U.S. 611 (1983).......................................................................................24

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
669 F. Supp. 2d 405 (S.D.N.Y. 2009)...........................................................17

*Grand T. W. R. Co. v. Consolidated Rail Corp.*,
746 F.2d 323 (6th Cir. 1984) ..........................................................................8

*Gregory v. Daly*,
243 F.3d 687 (2d Cir. 2001)...........................................................................16

*Grosz v. Museum of Modern Art*,
09-CV-3706 CM(THK), 2010 U.S. Dist. LEXIS 20248 (S.D.N.Y. Mar 3, 2010)............14

*Gurvey v. Cowan, Liebowitz & Latman, P.C.*,
06-CV-1202, 2009 WL 1117278 (S.D.N.Y. Apr. 24, 2009) ............................................20

*In re Agway, Inc.*,
313 B.R. 31 (Bankr. N.D.N.Y. 2004) ...............................................................................10

*In re Allou Distribs.*,
379 B.R. 5 (Bankr. E.D.N.Y. 2007)...................................................................................12

*In re Hydro Investors, Inc.*,
328 Fed. Appx. 10 (2d Cir. 2009) .....................................................................................14

*In re Kalikow*,
602 F.3d 82 (2d Cir. 2010)................................................................................................11

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010)..............................................................................................16

*In re R.H. Macy & Co.*,
283 B.R. 140 (S.D.N.Y. 2002)..........................................................................................11

*In re U. S. Home Corp.*,
223 B.R. 654 (Bankr. S.D.N.Y. 1998)................................................................................9

*In re ZiLOG, Inc.*,
450 F.3d 996 (9th Cir. 2006) ............................................................................................10

*Interested Lloyd's Underwriters v. Ross*,
04-CV-4381 (RWS), 2005 U.S. Dist. LEXIS 25471 (S.D.N.Y. October 31, 2005) .........14

*Interscope Records v. Kimmel*,
2007 U.S. Dist. LEXIS 43966 (N.D.N.Y June 18, 2007)....................................................4

*Jablon v. Dean Witter & Co.*,
614 F.2d 677 (9th Cir. 1980) ............................................................................................12

*Knaysi v. A. H. Robbins Co.*,
679 F.2d 1366 (11th Cir. 1982) ........................................................................................13

*Kubin v. Miller*,
801 F. Supp. 1101 (S.D.N.Y. 1992)..................................................................................16

*Leach v. Ross Heater & Mfg. Co.*,
104 F.2d 88 (2d Cir. 1939)..............................................................................................3-4

*Manchester Band of Pomo Indians, Inc. v. United States*,
363 F. Supp. 1238 (N.D. Cal. 1973) ................................................................9

*Marchi v. Board of Coop. Educ. Servs.*,
173 F.3d 469 (2d Cir. 1999)...........................................................................7

*Maverick Recording Co. v. Chowdhury*,
2008 U.S. Dist. LEXIS 63783 (E.D.N.Y. Aug. 19, 2008)..................................4

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)........................................................................................3

*Mullane v. Central Hanover Bank*,
339 U.S. 306 (1950)......................................................................................10

*Museum of Modern Art v. Schoeps*,
549 F. Supp. 2d 543 (S.D.N.Y. 2008).............................................................15

*N.Y. Civil Liberties Union v. Grandeau*,
528 F.3d 122 (2d Cir. 2008)........................................................................7-8

*Oddo v. Reis*,
743 F.2d  630 (9th Cir. 1984) ........................................................................24

*Ortiz v. Cornetta*,
867 F.2d 146 (2d Cir. 1989)..........................................................................12

*P.A. Props. v. B.S. Moss' Criterion Ctr. Corp.*,
02-CV-4900 LTS, 2004 U.S. Dist. LEXIS 25623 (S.D.N.Y. Dec. 22, 2004) ..................10

*Padavan v. United States*,
82 F.3d 23 (2d Cir. 1996) ...............................................................................3

*Pateley Assocs. I, LLC v. Pitney Bowes, Inc.*,
08-CV-1607 (JBA), 2010 U.S. Dist. LEXIS 31536 (D. Conn. Mar. 31, 2010)..................9

*Perry v. A.H. Robins Co.*,
560 F. Supp. 834 (N.D.N.Y. 1983) ................................................................12

*Pot Luck, L.L.C. v. Freeman*,
06-CV-10195 (DAB), 2009 WL 693611 (S.D.N.Y. Mar. 10, 2009)................................20

*Reliable Machine Works, Inc. v. Unger*,
144 F. Supp. 726 (S.D.N.Y. 1956)..................................................................4

*Renz v. Beeman*,
589 F.2d 735 (2d Cir. 1978)..........................................................................13

*S. African Apartheid Litig. v. Daimler AG*,
617 F. Supp. 2d 228 (S.D.N.Y. 2009)..........................................................12

*Shapiro, Bernstein & Co. v. Jerry Vogel Music Co.*,
223 F.2d 252 (2d Cir. 1955)............................................................................5

*Sheppard v. Beerman*,
18 F.3d 147 (2d Cir. 1994)..............................................................................2

*Siegel v. Warner Bros. Entm't, Inc.*,
542 F. Supp. 2d 1098 (C.D. Cal. 2008) .................................................. 23-25

*Simcuski v. Saeli*,
44 N.Y.2d 442 (N.Y. 1978) ....................................................................12, 14

*Simmonds v. INS*,
326 F.3d 351 (2d Cir. 2003) ............................................................................7

*Smartix Int'l Corp. v. Mastercard Int'l LLC*,
06-CV-5174 (GBD), 2008 WL 4444554 (S.D.N.Y. Sept. 30, 2008) ..............20

*Solow Bldg. Co., L.L.C. v. ATC Assocs.*,
175 F. Supp. 2d 465 (E.D.N.Y. 2001) ...........................................................10

*Stone v. Williams*,
970 F.2d 1043 (2d Cir. 1992) .........................................................................13

*Thomas Publ'g Co., LLC v. Tech. Evaluation Ctrs., Inc.*,
06–CV-14212 (RMB), 2007 WL 2193964 (S.D.N.Y. July 27, 2007)..............20

*Tillman v. Camelot Music, Inc.*,
408 F.3d 1300 (10th Cir. 2005) ......................................................................10

*Tomas v. Gillespie*,
385 F. Supp. 2d 240 (S.D.N.Y. 2005)...............................................................7

*United States ex rel. Ellis v. Sheikh*,
583 F. Supp. 2d 434 (W.D.N.Y. 2008)............................................................17

*Vallejo v. Investronica*,
2 F. Supp. 2d 330 (W.D.N.Y. 1998) ...............................................................17

*Waldman v. Escobar*,
08-CV-6405 (FM), 2009 U.S. Dist. LEXIS 60505 (S.D.N.Y. Mar. 27, 2009)..................13

*Wellnix Life Scis., Inc. v. Iovate Health Scis. Research Inc.*,
516 F. Supp. 2d 270 (S.D.N.Y. 2007).......................................................................... 19-20

*Zerilli-Edelglass v. N.Y. City Transit Auth.*,
333 F.3d 74 (2d Cir. 2003)............................................................................................3

*Zyla v. Wadsworth*,
360 F.3d 243 (1st Cir. 2004).........................................................................................19

**<u>State Cases</u>**

*Bank of Williamsville v. Amherst Motor Sales, Inc.*,
234 A.D. 261 (N.Y. App. 1932) ....................................................................................11

*Brinckerhoff v. Bostwick*,
88 N.Y. 52 (1882) ........................................................................................................15

*Cadle Co. v. D'Addario*,
111 Conn. App. 80 (Conn. App. 2008)............................................................................7

*Close-Barzin v. Christie's, Inc.*,
51 A.D.3d 444 (N.Y. App. 2008) ..................................................................................14

*General Stencils, Inc. v. Chiappa*,
18 N.Y.2d 125 (N.Y. 1966) ..........................................................................................14

*Ladd v. Warner Bros. Entertainment Inc.*,
__ Cal. App. 4th __, 2010 Cal. App. LEXIS 733 (Cal. App. May 25, 2010)...................23

*Marine Midland Trust Co. v. Halik*,
23 N.Y.2d 789 (N.Y. 1968) ..........................................................................................11

*Mesler v. Bragg Management Co.*,
39 Cal. 3d 290 (Cal. 1985)...........................................................................................24

*Riviera Congress Assoc. v Yassky*,
18 N.Y.2d 540 (1966) ..................................................................................................15

*Sports Legends Inc. v. Carberry*,
61 A.D.3d 449, 449-50 (N.Y. App. 2009) .....................................................................14

*Velez v. Feinstein*,
87 A.D.2d 309 (N.Y. App. 1982) ..................................................................................15

**Federal Statutes, Rules and Regulations**

11 U.S.C. § 1141 ...................................................................................................9

F.R.C.P. 12 ............................................................................................... *passim*

F.R.C.P. 13 ...........................................................................................................21

F.R.C.P. 17 ...........................................................................................................15

F.R.C.P. 19 ...........................................................................................................25

**Other Authorities**

M. Nimmer & D. Nimmer,
3-8D *Nimmer on Copyright* § 8D.03 ................................................................19

3-13 *Moore's Federal Practice - Civil* § 13.112 ............................................21

4-18 *Moore's Federal Practice - Civil* § 18.02 .............................................22

10B Charles A. Wright, et al., *Federal Practice and Procedure* § 2757 (2008).................5

David Waterman,
*Viacom-CBS Merger: CBS-Viacom and the Effects of Media Mergers: An Economic Perspective,*
52 Fed. Comm. L.J. 531, 538 (May 2000).......................................................22

## <u>INTRODUCTION</u>

The counterclaims filed by Defendants and Counterclaim-Plaintiffs Lisa R. Kirby,

Barbara J. Kirby, Neal L. Kirby and Susan M. Kirby ("Kirbys" or "Counterclaimants"), the

children of legendary comic book artist Jack Kirby ("Kirby"), are proper and must not be

dismissed.  Plaintiffs/Counterclaim-Defendants Marvel Worldwide, Inc., Marvel Characters, Inc.

and MVL Rights LLC, together with Counterclaim-Defendants The Walt Disney Company

("Disney") and Marvel Entertainment, Inc. (collectively, "Marvel" or "Counterclaim-

Defendants") have filed an overheated, baseless motion to dismiss to artificially narrow this

action to the limited affirmative defense alleged in Marvel's complaint.  However, as Marvel

acknowledges, this case arises out of its course of conduct with Jack Kirby (Complaint, ¶¶ 8-11,

16) and the Kirbys' notices of termination (the "Terminations").  The dispute requiring

declaratory and other relief is broader, and, as such, the Kirbys' counterclaims are proper.

The first counterclaim is for independent declaratory relief to establish the overall

validity of the Terminations, and is <u>not</u> a mere "mirror image" of Marvel's claim.  Marvel's

complaint is limited to a single defense – that Kirby's work was purportedly "made-for-hire" –

and does not include any of its other potential defenses to the Terminations.  Complaint, ¶ 16.

As such, even if its complaint was voluntarily or involuntarily dismissed, the controversy over

the validity of the Terminations would remain.  The Kirbys' first counterclaim to establish the

validity of the Terminations is proper and necessary to address all related issues.

The second counterclaim seeks to establish the effect of the Terminations and the scope

of the parties' obligations arising out of the Terminations.  Co-owners of a copyright have a duty

to account to one another for any profits from the exploitation thereof.  Accordingly, once this

Court finds that the Terminations are valid and effective, it would naturally decide the parties'

accounting obligations so that they can govern themselves accordingly.  Such a "roadmap" will reasonably avoid burdening the courts with future litigation.

The well-pled third and fourth counterclaims properly seek relief arising out of Marvel's fraudulent misrepresentations that it has returned all of Kirby's artwork in its possession, custody and control.  Susan and Barbara Kirby are proper parties under well-established New York law. Marvel's bankruptcy does not operate as a shield against its concealment.  Marvel's ongoing concealment of its actions tolls or prevents its statute of limitations defense.

The fifth counterclaim is expressly based on the false *advertising* of Marvel's films and attendant merchandising that fail to credit Jack Kirby as a creator of the underlying property. Such claims were expressly left actionable by the United States Supreme Court in *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).

Finally, the inclusion as Counterclaim-Defendants of the closely related entities, Disney and Marvel Entertainment Inc., is proper.  Marvel has yet to establish the chain-of-title to the copyrights at issue; and, in any event, the close relationship of Plaintiffs to these entities poses a very real risk of intra-corporate "sweetheart" transactions that improperly dilute the Kirbys' profit share from Plaintiffs' exploitation of the recaptured Kirby copyrights.

## <u>LEGAL STANDARD</u>

A motion to dismiss counterclaims is guided by the same standard as any other Rule 12(b)(6) motion.  *See FSP, Inc. v. Societe Generale*, 2005 WL 475986, *7 (S.D.N.Y. 2005).  The "court must liberally construe the counterclaims," accepting the alleged facts as true, and must view the pleadings in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.  *Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167, 171 (W.D.N.Y. 2003).  *See also Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).  It is only

where the facts, even if true, do not establish liability that the complaint may be dismissed.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (U.S. 2009).  Rule 12(b)(6) does not permit a court to dismiss a complaint because it doubts the accuracy of the factual allegations.  "During the pleadings stage in litigation, '[t]he appropriate inquiry is not whether a [counterclaim] plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims.'"  *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006) (internal citations omitted).  Both the Second Circuit and this Court have adopted the standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir. 1996).  *See Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 79 (2d Cir. 2003).

## ARGUMENT

## I.   THE FIRST COUNTERCLAIM IS AN INDEPENDENT CLAIM THAT MUST NOT BE DISMISSED

It is error to dismiss a counterclaim for declaratory relief where "[t]he facts set forth in the counterclaim, if pleaded in a complaint in a suit brought independently and prior to a suit … would state a case for relief by declaratory judgment."  *Leach v. Ross Heater & Mfg. Co.*, 104 F.2d 88, 91 (2d Cir. 1939).  A claim for declaratory judgment is proper where "'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citations omitted).

The first counterclaim properly seeks a declaratory judgment that the Terminations are valid and effective.  Counterclaims, ¶¶ 29-32, 72.  Marvel and the Kirbys have a substantial controversy and adverse legal interests over the validity of the Termination Notices that is broader than Marvel's Complaint, which solely alleges a publisher's standard "work for hire"

defense, and does not address any other potential defenses.  Complaint, ¶ 16.  The First

Counterclaim, in seeking to establish the validity of the Terminations, inherently entails any

potential defenses thereto, and thus permits full declaratory relief as to the Terminations.

Counterclaims, ¶31.  The Counterclaims include specific factual allegations as to the validity of

the Terminations (Counterclaims, ¶¶ 25-28) not found in Marvel's complaint.  If Marvel's

artificially narrow complaint were voluntarily or involuntarily dismissed, the controversy as to

the validity of the Terminations would remain.  *See Leach,* 104 F.2d at 89-92 (reversing

dismissal of counterclaims to invalidate patent, because if the complaint was dismissed, "the

controversy reflected in the … counterclaims would remain"); *Reliable Machine Works, Inc. v.

Unger*, 144 F. Supp. 726, 728 (S.D.N.Y. 1956) (While "[i]t may well turn out at trial…that a

declaratory judgment will be unnecessary…. [this] does not warrant dismissal of the

counterclaims for declaratory judgment").  The Kirbys are entitled to establish the validity of the

Terminations, regardless of the narrow posture of Marvel's claim of invalidity.

     The cases cited by Counterclaim-Defendants concerning "mirror image" counterclaims

are inapposite, as they involve copyright ***infringement*** actions where the challenged

counterclaim was for declaratory relief that the defendants did not infringe.  The counterclaims

were not viable because there would be no further case or controversy if the infringement actions

were dismissed.  *See Maverick Recording Co. v. Chowdhury*, 2008 U.S. Dist. LEXIS 63783

(E.D.N.Y. Aug. 19, 2008) ("[A] counterclaim seeking a declaration of non-infringement will be

viable only when it presents an independent case or controversy that would survive a dismissal

of the plaintiff's infringement claim."); *Arista Records LLC v. Usenet.com., Inc.*, 2008 U.S. Dist.

LEXIS 95514 at *13 (S.D.N.Y. Nov. 24, 2008) (same); *Interscope Records v. Kimmel*, 2007 U.S.

Dist. LEXIS 43966 at *11 (N.D.N.Y June 18, 2007) ("[I]f Plaintiffs' infringement claim is

withdrawn, there is no continuing case or controversy.").  By contrast, if Marvel's single claim is

dismissed, the case or controversy as to the validity and scope of the Terminations remains.

## II. THE SECOND COUNTERCLAM IS NECESSARY FOR THE PARTIES TO DETERMINE THEIR RIGHTS AND OBLIGATIONS

### A.    The Second Counterclaim is Ripe for Declaratory Judgment

The second counterclaim, which seeks a declaration as to the scope and effect of the

Terminations and the parties' rights and obligations with respect thereto, is clearly as ripe for

review as Marvel's claim, and presents a real case and controversy.  As set forth by this Court:

> "A court is precluded from entertaining claims based on 'contingent future events' that may not occur as anticipated or at all.  But a plaintiff need not 'await the consummation of threatened injury to obtain preventative relief.'  If the 'perceived threat due to the putatively illegal conduct of the [defendants] is sufficiently real and immediate to constitute an existing controversy,' the claim is ripe."

*City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353, 359-61 (S.D.N.Y. 2000)

(McMahon, J.) (citations omitted) (finding ripe claims of future damage based on a new law

requiring an application process, even though no parties had made such an application).  *See also*

10B Charles A. Wright, et al., *Federal Practice and Procedure* § 2757 at 476 (2008) ("It is clear

that in some instances a declaratory judgment is proper even though there are future

contingencies that will determine whether a controversy ever actually becomes real").

Marvel improperly attempts to divorce the issue of whether the Terminations are invalid

on "work-for-hire" grounds from every other aspect of the Terminations – *i.e.*, whether the

Terminations are otherwise valid under the Copyright Act, the scope of the Terminations, and the

parties' duty to account to each other for exploitations of the co-owned copyrights recaptured

pursuant to the Terminations.  *See Shapiro, Bernstein & Co. v. Jerry Vogel Music Co.*, 223 F.2d

252, 254 (2d Cir. 1955).  Absent a declaratory judgment as to the principles to be applied in an

accounting, additional litigation would undoubtedly be required to establish the parties' rights

and obligations as co-owners of these copyrights.  Such an obvious waste of judicial resources is avoidable, as this Court is more than capable of deciding these relevant issues now.

Marvel's suggestion that the second counterclaim should be dismissed because "defendants can claim no conceivable hardship by having to wait and see whether they can establish the validity of the Termination Notices" (Motion at 10) is absurd.  By Marvel's logic, once the Kirbys defeat Marvel's single affirmative defense, they would unfairly be required to start all over again from scratch and file a new action to establish the scope and effect of the Terminations.  It is far more logical and efficient for this Court to perhaps decide the second counterclaim once the validity of the Terminations is decided.

 Marvel's argument that its accounting obligations are unripe because actual profits from the recaptured copyrights have yet to be reaped is unpersuasive.  The majority of Marvel's business over the last fifty years involves the Kirby copyrights, and it is indisputable that Disney recently acquired Marvel for $4 billion for the opportunity to exploit such rights.  Counterclaims, ¶ 10. In short, there is *no doubt* that such copyrights, underlying Marvel's biggest franchises, will be exploited by Marvel/Disney for the life of such copyrights.  Contrary to Plaintiffs' suggestion, it is a virtual certainty that profits will be "actually realized" by Marvel/Disney pursuant to a business model that has consistently generated profits from such copyrights.

Marvel did not hesitate to immediately seek declaratory relief regarding the Kirbys' Terminations that do not become effective for many years.  If Marvel's claim is "ripe," then surely the question of how the parties must account to each other with respect to the copyrights subject to the Terminations is also "ripe" for review.

The cases cited by Marvel concerning "contingent" claims for declaratory relief are inapposite, as they involve disputes where "actual harm" was contingent on future administrative

or political decisions, or disputes that had already been decided against the counterclaimant.  *See N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 133 (2d Cir. 2008) (free speech action unripe because the harm depended on administrative interpretation, and there was no indication of how the law would be interpreted); *Simmonds v. INS*, 326 F.3d 351, 360 (2d Cir. 2003) (unripe because dispute hinged on whether parole would be granted); *Marchi v. Board of Coop. Educ. Servs.*, 173 F.3d 469, 478 (2d Cir. 1999) ("[A] court entertaining [plaintiff's] challenge would be forced to guess at how BOCES might apply the directive."); *Tomas v. Gillespie*, 385 F. Supp. 2d 240, 246 (S.D.N.Y. 2005) (dismissing "subsidiary relief" claims as to an accounting after predicate ownership claim had been dismissed); *Carell v. Shubert Org., Inc.*, 104 F.Supp.2d 236, 252 (S.D.N.Y. 2000) (same); *Boerger v. Levin*, 812 F. Supp. 564, 565 (E.D. Pa. 1993) (legal malpractice action unripe as "underlying suit … has not yet been adjudicated, [plaintiff] cannot show that [defendant's] performance proximately caused his injury or even that he was injured at all"); *Cadle Co. v. D'Addario*, 111 Conn. App. 80, 83 (Conn. App. 2008) (misconduct claim re: probate administration unripe because it was "contingent on a determination of the priorities of the creditors of the decedent's estate, the final settlement of the estate and the absence of sufficient funds … to satisfy the plaintiff's claim").

Here, absent a declaration defining the parties' accounting obligations, the Kirbys will be unable to assess the value of their recaptured copyrights, or plan the settlement or exploitation of such rights.  This poses a "real and immediate" dilemma to both parties.  *City of New Rochelle*, 111 F. Supp. 2d at 360.  Marvel acknowledges as much in its complaint:  "[t]he issuance of the notices threatens to inhibit the ability of [Marvel] to fully exploit their rights in and to the Works," and in order for Marvel "to continue to pursue these commercial endeavors, present judicial relief is needed."  Complaint, ¶ 17.

Lastly, the second counterclaim seeks to enjoin Disney and Marvel from engaging in intra-corporate "sweetheart" licensing of the recaptured copyrights which dilutes the Kirbys' share of profits from such copyrights.  Counterclaims ¶ 35(h).  As discussed below, this issue is ripe for adjudication, as the threat of Disney/Marvel entering into such "sweetheart" deals before the effective date of the Terminations is quite real.  *See* Section V, *infra*.

### B.        This Court Should Adjudicate the Second Counterclaim

The Second Circuit has articulated simple guidelines for whether a declaratory relief action that presents a "case or controversy" is "prudentially ripe":

> "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty.  Other circuits have built upon this test, to ask also: [3] whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; [4] whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and [5] whether there is a better or more effective remedy."

*Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003).  Instead of citing this proper standard, Marvel misleadingly cites cases that address whether review of ***administrative actions*** are ripe.[1]  A declaratory judgment regarding the principles to be applied to an accounting regarding the recaptured Kirby copyrights easily satisfies the above five criteria.  It would clarify the parties' obligations and settle the legal controversy as to the scope and effect of the Terminations, thereby satisfying the first and second factors.  It is not an "attempt to have the federal courts do what the state court has already refused to do" (*Grand T. W. R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)), and by consolidating and resolving

---

[1] *See N.Y. Civil Liberties Union*, 528 F.3d at 130-31 ("A central purpose of this doctrine 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies.'"); *Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967) ("[D]eclaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to…. protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt.").

outstanding legal issues in a single action, it will *avoid* a "race to *res judicata*" and eliminate

potential friction between state and federal courts.

Lastly, there is "no better or more effective remedy":  if the Terminations are held valid,

adjudicating the scope of the parties' accounting obligations now, before the effective date of the

Terminations, is the only way to determine how the parties must account to each other before

they profit from the co-owned copyrights to the "terminated" works and incur liability.  *See, e.g.,*

*Alloy Briquetting Corp. v. Niagara Vest, Inc.*, 756 F. Supp. 713, 719 (W.D.N.Y. 1991)

(declaratory relief claim where Plaintiff "might be sued by the government for response costs at

some time in the future" is ripe); *Manchester Band of Pomo Indians, Inc. v. United States*, 363 F.

Supp. 1238, 1248 (N.D. Cal. 1973) (plaintiffs entitled to a "declaration of defendants' obligation

to account regularly … in the future" and to know the parameters of that accounting); *Pateley*

*Assocs. I, LLC v. Pitney Bowes, Inc.*, 08-CV-1607 (JBA), 2010 U.S. Dist. LEXIS 31536 (D.

Conn. Mar. 31, 2010) (declaratory relief claims as to future obligations ripe as "actual

controversies exist as to future response costs that could give rise to a 'multiplicity of actions'").

## III.   THE THIRD AND FOURTH COUNTERCLAIMS FOR CONVERSION AND BREACH OF CONTRACT ARE WELL PLED AND MUST NOT BE DISMISSED

### A.   Marvel's Bankruptcy Does Not Discharge Either Counterclaim

A bankruptcy discharge binds the debtor (Marvel) and all of its creditors pursuant to 11

U.S.C. § 1141(d) only if the fact-specific requirements of due process are met:  "[d]ischarge

under the Bankruptcy Code … presumes that all creditors bound by the plan have been given

notice sufficient to satisfy due process.  Whether a creditor received adequate notice depends on

the facts and circumstances of each case." *In re U. S. Home Corp.*, 223 B.R. 654, 658 (Bankr.

S.D.N.Y. 1998).  Such "[d]ue process is met if notice is 'reasonably calculated to reach all

interested parties, reasonably conveys all of the required information, and permits a reasonable

amount of time for response.'"  *Id.* at 658 (quoting *Mullane v. Central Hanover Bank*, 339 U.S. 306, 314 (1950)).  *See DePippo v. Kmart Corp.*, 335 B.R. 290, 295 (Bankr. S.D.N.Y. 2005) ("[A]ctual notice is required if the creditor is a 'known' creditor….").

Neither the pleadings nor any of the documents attached by Marvel reflect notice to the Counterclaimants, the Kirby Trust, or their predecessors-in-interest.  Thus, whether the claims were discharged in bankruptcy is an affirmative defense that presents material factual issues as to requisite notice, which cannot properly be resolved on a motion to dismiss.  *See Solow Bldg. Co., L.L.C. v. ATC Assocs.*, 175 F. Supp. 2d 465, 472 (E.D.N.Y. 2001) (denying motion to dismiss on basis of bankruptcy discharge where plaintiffs claimed they "were not given the required notice and thus were not discharged in bankruptcy"); *P.A. Props. v. B.S. Moss' Criterion Ctr. Corp.*, 02-CV-4900 LTS, 2004 U.S. Dist. LEXIS 25623 at *36-39 (S.D.N.Y. Dec. 22, 2004) (denying motion to dismiss based on bankruptcy discharge due to insufficient record of  proper notice).

Marvel's bankruptcy also does not bar the third and fourth counterclaims because such counterclaims allege and rest fundamentally on Marvel's ***fraudulent concealment***.  Counterclaims, ¶¶ 42-44.  Concealed claims cannot be discharged without actual notice, as "[d]ue process does not allow a debtor who has actively concealed facts … to notify by publication those persons adversely affected."  *Tillman v. Camelot Music, Inc.*, 408 F.3d 1300, 1308 (10th Cir. 2005).  *See also In re ZiLOG, Inc.*, 450 F.3d 996 (9th Cir. 2006) (reversing summary judgment on grounds that claims not discharged where facts concealed until or after discharge).  As such, a claim fraudulently concealed from a creditor by a debtor is not discharged, because the claim could not be "fairly contemplated" by the creditor.  *See In re Agway, Inc.*, 313 B.R. 31, 42-43 (Bankr. N.D.N.Y. 2004); *Solow Bldg. Co.,* 175 F. Supp. 2d at 471 ("The inquiry is whether, at the time of bankruptcy, plaintiffs could have ascertained … that

they had a claim against debtor."); *Bank of Williamsville v. Amherst Motor Sales, Inc.*, 234 A.D. 261, 263 (N.Y. App. 1932) (refusing bankruptcy discharge of conversion claim where fraud was alleged).

Moreover whether these counterclaims were "fairly contemplated" or fraudulently concealed raises questions of fact that should not be resolved on a Rule 12(b)(6) motion. *See Marine Midland Trust Co. v. Halik*, 23 N.Y.2d 789 (N.Y. 1968) (whether alleged fraud precludes bankruptcy discharge is a question of fact); *Bank of Williamsville,* 234 A.D. at 263 (refusing to discharge conversion claim where fraud alleged).

The inapposite cases cited by Counterclaim-Defendants concern creditors that had actual notice of the bankruptcy proceedings and appeared therein, not claims unknown and concealed by the debtor, as pled. *See In re Kalikow*, 602 F.3d 82, 94 (2d Cir. 2010) (creditors discharged where they "appeared at two hearings and made written submissions" in bankruptcy case); *In re R.H. Macy & Co.*, 283 B.R. 140, 144 (S.D.N.Y. 2002) (creditor appeared in bankruptcy action).

### B.   <u>The Statute of Limitations Was Tolled for Both the Conversion and Breach of Contract Claims</u>

New York law provides that the doctrines of equitable estoppel and equitable tolling overcome a statute of limitations defense if the "plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007). Equitable tolling would apply to both the conversion and breach of contract claims, as Marvel made affirmative misrepresentations that it had returned all Kirby artwork in its possession, which misled the Kirbys (Counterclaims, ¶ 43):

> "The essence of the [equitable tolling] doctrine 'is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action.' Since the nature of a fraud or subsequent actions taken by the defendant to conceal the fraud may have made it impossible for a plaintiff to discover the facts underlying his cause of action until after the limitations period had expired, the courts fashioned the

doctrine of equitable tolling to relieve the plaintiff of the rigor of the statutory bar." *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985).

"While a statute of limitations defense may be raised in a motion to dismiss … such a motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) (internal quotations omitted). *See also S. African Apartheid Litig. v. Daimler AG*, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009) ("[A] court must deny a motion to dismiss based on the statute of limitations 'unless all assertions of the complaint, as read with required liberality, would not … prove that this statute was tolled.'") (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)); *In re Allou Distribs.*, 379 B.R. 5, 37 (Bankr. E.D.N.Y. 2007) ("The application of the doctrine of equitable tolling generally turns on questions of fact that are difficult to resolve on a motion to dismiss."); *Perry v. A.H. Robins Co.*, 560 F. Supp. 834, 835 (N.D.N.Y. 1983) (allegations of defendant's "fraudulent statements to [Plaintiff], and that she justifiably relied upon them" were sufficient to defeat a motion to dismiss).  The New York Court of Appeals likewise restricts the statute of limitations defense on motions to dismiss: "It is not possible or appropriate, however, on the present motion addressed to the pleading, presenting us as it must with only a skeletal record, to determine whether this plaintiff met her obligation of due diligence." *Simcuski v. Saeli*, 44 N.Y.2d 442, 451 (N.Y. 1978).

Marvel's straw-man that the statute has run because Kirby "knew who possessed" his artwork, demanded its return in 1982, and that Marvel's "alleged refusal to return the artwork" would have triggered Kirby's … claim" is misleading and unpersuasive.  Motion at 12. Counterclaimants do <u>not</u> allege that Marvel refused to return the artwork.  On the contrary, the third and fourth counterclaims allege that Marvel concealed its conversion of the Kirby Artwork,

and made false representations, relied on by the Kirbys, that Marvel had returned all of the artwork in its possession.  Counterclaims, ¶ 43.  Moreover, Marvel controlled and continues to control the pertinent information as to the disposition of the Kirby Artwork.  *Id.*, ¶ 45.  For example, Marvel only provided Kirby with information on artwork returned to *him,* not artwork duly returned to his collaborators.  *Id.*, ¶¶ 42-45.  Thus, Kirby and his family could not know whether publicly sold Kirby artwork was artwork returned by Marvel to Kirby collaborators, or artwork improperly converted and sold by Marvel, its employees or agents.  *Id.*, ¶ 46.

"The law is clear that fraudulent concealment of the existence of a cause of action tolls the running of the statute of limitations."  *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992) (citing *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir. 1982)).  Where, as here, a plaintiff alleges that a defendant has made affirmative misrepresentations and concealed key facts that were in defendants' control, equitable tolling can apply.  *Barrett*, 689 F.2d at 329 (equitable tolling applied where "critical facts about causation and … injury were in the control of the [defendant] and very difficult … to obtain"); *Knaysi v. A. H. Robbins Co.*, 679 F.2d 1366, 1369 (11th Cir. 1982) (allegations that plaintiffs "rel[ied] on [defendants] for accurate information and assurances" sufficient to invoke equitable tolling); *Waldman v. Escobar*, 08-CV-6405 (FM), 2009 U.S. Dist. LEXIS 60505, at *8-9 (S.D.N.Y. Mar. 27, 2009) (allegations that defendant concealed breach, and controlled the pertinent information, were sufficient for "breach of contract claim to survive under doctrine of equitable tolling").

Similarly, "[e]quitable estoppel may also arise when affirmative fraudulent statements are made which conceal from the plaintiff facts essential to make out the cause of action."  *Renz v. Beeman*, 589 F.2d 735, 750 (2d Cir. 1978).  Here, Counterclaimants' allegations that Marvel made affirmative misrepresentations are sufficient to invoke equitable estoppel.  *See*

Counterclaims, ¶ 43; *Simcuski*, 44 N.Y.2d at 448-49 ("[A] defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action."); *General Stencils, Inc. v. Chiappa*, 18 N.Y.2d 125, 128 (N.Y. 1966) (where defendant concealed theft, equitable estoppel could apply "to bar the assertion of the affirmative defense of the Statute of Limitations where it is the defendant's affirmative wrongdoing … which produced the long delay").

The cases cited by Marvel are inapposite "demand and refusal" cases that decline to apply equitable tolling where the plaintiffs had *full knowledge* of their claims.  *See Close-Barzin v. Christie's, Inc.*, 51 A.D.3d 444, 444-45 (N.Y. App. 2008) (slip opinion) (refusing to apply equitable tolling where plaintiff "had all the information necessary to commence an action for conversion well within the limitations period"); *Sports Legends Inc. v. Carberry*, 61 A.D.3d 449, 449-50 (no equitable tolling where suit was filed eight years after a "demand letter was deemed rejected by the letter's own terms"); *In re Hydro Investors, Inc.*, 328 Fed. Appx. 10, 12 (2d Cir. 2009) (no equitable tolling where plaintiff "failed to allege any fraud … that resulted in [their] inability to discover the alleged misappropriations"); *Grosz v. Museum of Modern Art,* 09-CV-3706 CM(THK), 2010 U.S. Dist. LEXIS 20248 at *2-*7 (S.D.N.Y. Mar 3, 2010) (declining to apply equitable tolling where plaintiff aggressively corresponded with the defendant, and defendant made its position clear); *Interested Lloyd's Underwriters v. Ross*, 04-CV-4381 (RWS), 2005 U.S. Dist. LEXIS 25471 at *16-17 (S.D.N.Y. October 31, 2005) (no equitable tolling as plaintiff had full knowledge of the property's whereabouts).

### C.   <u>Susan and Barbara Kirby Have Standing to Assert the Counterclaims</u>

Susan and Barbara Kirby, as beneficiaries of the Rosalind Kirby Trust (the "Trust"), are proper plaintiffs for the Breach of Contract and Conversion claims.  Counterclaims, ¶¶ 37-53.  In

federal courts, "[c]apacity to sue or be sued … for an individual who is not acting in a representative capacity, [is determined] by the law of the individual's domicile." F.R.C.P. 17(b)(1).  *See Museum of Modern Art v. Schoeps*, 549 F. Supp. 2d 543, 547 (S.D.N.Y. 2008) (applying German law to determine whether German resident had standing to sue on behalf of an estate).  Susan and Barbara Kirby are both residents of New York; as such, Counterclaim-Defendants' citations to California law are inapposite.

Under New York law, "[i]t is fundamental to the law of trusts that [beneficiaries] have the right, 'upon the general principles of equity' and 'independently of [statutory] provisions,' to sue for the benefit of the trust on a cause of action which belongs to the trust if 'the trustees refuse to perform their duty in that respect.'"  *Velez v. Feinstein*, 87 A.D.2d 309, 314-15 (N.Y. App. 1982) (citing *Brinckerhoff v. Bostwick*, 88 N.Y. 52, 59 (1882); *Riviera Congress Assoc. v Yassky*, 18 N.Y.2d 540, 547 (1966)).  As such, a beneficiary may bring suit upon "a showing that suit should be brought and that because of the trustees' conflict of interest, or some other reason, it is futile to make such a demand."  *Id.* at 315.  Lisa Kirby, as trustee of the Trust, did not bring the third and fourth permissive counterclaims, as this could potentially subject her to a claim by Marvel that she thereby waived her objections to personal jurisdiction.  As it would have been futile for Susan and Barbara Kirby to have demanded that Lisa Kirby bring such suit, Susan and Barbara Kirby properly brought suit as beneficiaries of the Trust.  *See Cargill, Inc. v. Sabine Trading & Shipping Co.*, 756 F.2d 224, 229 (2d Cir. 1985).

Finally, in the unlikely event this Court were to determine that Susan and Barbara Kirby lacked standing, "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest" to join the action.  F.R.C.P. 17(a)(3).

15

### D.    The Third and Fourth Counterclaims Properly State Claims

"The level of specificity necessary to state a claim for Rule 12(b)(6) purposes is governed by the Federal Rules of Civil Procedure's notice pleading principles that call for no more than 'a short and plain statement' of a plaintiff's claim." *Gregory v. Daly*, 243 F.3d 687, 692 (2d Cir. 2001). "[N]otice pleading supported by facially plausible factual allegations is all that is required – nothing more, nothing less." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 129 S. Ct. at 1949-50).

Contrary to Marvel's assertions, the factual allegations in the third counterclaim are sufficient. They identify the converted Kirby Artwork as that Kirby Artwork not returned to Kirby or his collaborators despite Marvel's misrepresentations to the contrary (Counterclaims, ¶¶ 38, 43-46); and state that Jack Kirby was the original lawful owner of the Kirby Artwork (*id.*, ¶ 39); that the Rosalind Kirby Trust, of which Susan and Barbara Kirby are beneficiaries, is the current owner of such artwork (*id.*); that Marvel misrepresented that it had returned all of the Kirby Artwork in its possession or control in October 1986 (*id.*, ¶¶ 42-43); that Marvel in fact had retained possession of certain such artwork and allowed it to be converted by its employees and/or agents (*id.*, ¶ 43); and that Counterclaimants are unaware of the disposition of the Kirby Artwork, as Marvel only provided a list of the Kirby Artwork returned to Kirby, and not the Kirby Artwork released to others or retained (*id.*, ¶¶ 45-46).

Marvel argues that the third Counterclaim fails to state a claim for conversion because it fails to specify a "particular piece of art supposedly withheld." Motion at 15. Firstly, New York law requires only that a plaintiff allege conversion of "tangible personal property" as opposed to an "indefinite, intangible, and incorporeal species of property," as Counterclaimants have done. *Kubin v. Miller*, 801 F. Supp. 1101, 1118 (S.D.N.Y. 1992). Secondly, as Marvel knows,

information as to individual pieces of Kirby Artwork withheld or converted by Marvel, its employees or agents, is within Marvel's exclusive knowledge and control.  *See id.*, ¶¶ 40, 42-45 *United States ex rel. Ellis v. Sheikh*, 583 F. Supp. 2d 434, 438 (W.D.N.Y. 2008) (Courts have relaxed the "specificity requirement … when the necessary evidence of the essential elements of the claim is within the exclusive control of the defendant … courts have allowed plaintiffs to plead 'on information and belief.'"); *Vallejo v. Investronica*, 2 F. Supp. 2d 330, 336 (W.D.N.Y. 1998) (the specificity "requirement is relaxed somewhat when the relevant facts are peculiarly within the opposing party's knowledge").

Marvel also erroneously argues through citation that the fourth counterclaim for breach of contract fails to allege the "essential terms" of the parties' contract.  Under New York law, a plaintiff must show:  "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). Further, a "plaintiff must [further] allege the specific provisions of the contract upon which the breach of contract claim is based," as opposed to "a conclusory statement that the accused breached a contract."  *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412-13 (S.D.N.Y. 2009).  The fourth counterclaim is sufficient, as it alleges:  the existence of an agreement and the relevant parties (Counterclaim, ¶ 50); that Jack Kirby performed his obligations under the contract (*id.*, ¶ 51); the specific provision breached by Marvel, namely Marvel's promise to return "any and all of the Kirby Artwork in their possession, custody or control" (*id.*, ¶¶ 50, 53); and damages.  *Id.*, ¶ 54.

## IV.   THE FIFTH COUNTERCLAIM PROPERLY STATES A CAUSE OF ACTION FOR FALSE ADVERTISING UNDER THE LANHAM ACT

Marvel's attempt to dismiss Counterclaimants' Lanham Act claim also misses the mark.

Marvel contends that the Counterclaimants' "false advertising" claim is precluded by the holding in *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).  However, *Dastar* precluded false attribution claims only under the "false designation of origin" prong of § 43(a)(1)(A) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).  Marvel misleadingly glosses over the fact that *Dastar* expressly left open the possibility that false attribution claims could be vindicated under § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  *Dastar*, 539 U.S. at 38.  Section 43(a) of the Lanham Act provides:

> "(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

In *Dastar*, the defendant used public domain footage from the television series *Crusade* in a set of videos called *Campaigns* that were released under defendant's name.  Plaintiffs sued under § 43(a)(1)(A) for "false designation of origin" because the *Campaigns* videos failed to acknowledge its "wholesale reliance" on plaintiffs' *Crusade* footage.  *Dastar*, 539 U.S. at 31.  *Dastar* found that "origin of goods" under § 43(a)(1)(A) "refers to the producer of tangible goods offered for sale, and not to the author of any ideas, concept, or communication embodied in those goods."  *Dastar*, 539 U.S. at 37.  However, *Dastar* plainly stated that the inability to bring a false authorship claim under § 43(a)(1)(A) did not foreclose the possibility of bringing such a claim under § 43(a)(1)(B):

> "If, moreover, the producer of a video that substantially copied the Crusade series were, in advertising or promotion, to give purchasers the impression that the video was quite different from that series, then one or more of the respondents might have a cause of action--not for reverse passing off under the 'confusion … as to the origin' provision of § 43(a)(1)(A), but for misrepresentation under the 'misrepresents the nature, characteristics [or] qualities' provision of § 43(a)(1)(B)."

*Dastar*, 539 U.S. at 38.

Courts have subsequently recognized that *Dastar* expressly left open a false authorship claim under § 43(a)(1)(B), as Counterclaimants have brought. *See Zyla v. Wadsworth*, 360 F.3d 243, 252 n.8 (1st Cir. 2004) ("The Court in *Dastar* left open the possibility that some false authorship claims could be vindicated under the auspices of § 43(a)(1)(B)'s prohibition on false advertising."); *Clauson v. Eslinger*, 455 F. Supp. 2d 256, 261 (S.D.N.Y. 2006) (same); 3-8D *Nimmer on Copyright* § 8D.03 ("Finally, the Court's opinion [in *Dastar*] construed only the 'origin' clause contained in the first paragraph of Section 43(a); it therefore remains possible for a party to fall afoul of the second paragraph of that provision by engaging in false advertising.").

In *Clauson*, the producer of a film sued under § 43(a)(1)(B) because the film's "credits and promotional materials wrongly credited defendant as being [the film's] producer." *Clauson*, 455 F. Supp. 2d at 262. *Dastar* was held not to preclude a misattribution in advertising claim:

> The Court's holding in *Dastar* addressed only the applicability of section 43(a)(1)(A) to reverse passing off claims; Fox did not assert a claim under section 43(a)(1)(B). *See id.* at 36, 38. The Court grounded its holding in what it ruled was the "natural understanding" of section 43(a)(1)(A)'s phrase "origin of goods.' *See id.* at 32, 37. It concluded, in short, that although this phrase does not extend to the originator of the idea that the goods embody, it does reach beyond geographic origin to origin of production of the physical goods at issue. *See id.* at 32, 37. In contrast, Congress did not incorporate any such reference into section 43(a)(1)(B), the false advertising prong of the Lanham Act. Instead, in section 43(a)(1)(B), it mandated liability for misrepresentation of "the nature, characteristics, [or] qualities" of goods in commercial advertising or promotion. The *Dastar* Court explicitly left open the possibility that some false authorship claims could be vindicated under the auspices of this section's prohibition on false advertising." *Id.*

*Id.* (citations omitted). *Clauson* denied the defendants' motion to dismiss and allowed the § 43(a)(1)(B) claim to proceed.

Marvel does not cite this clear published authority to the Court, and relies instead on random unpublished cases. Their one published authority, *Wellnix Life Scis., Inc. v. Iovate Health Scis. Research Inc.*, 516 F. Supp. 2d 270, 286 (S.D.N.Y. 2007) is readily distinguishable. There, a false advertising claim was brought against a party permitted by agreement to write editorial content in periodicals and to falsely attribute such writing to the periodical's editors. The § 43(a)(1)(B) claim failed because the amended complaint contained *no* factual allegations

in support of the claim: "While it is certainly conceivable that [defendant] would use its power under the agreement to publish content constituting false advertising under the Lanham Act, the amended complaint fail[ed]" to allege any such facts.  *Id.* at 285.  Moreover, the Court did not view the plaintiffs' claim as a false advertising claim, but rather as a "reverse passing off" claim precluded by *Dastar*.  *Wellnix* thereby ignored the distinction between § 43(a)(1)(A) and §43(a)(1)(B), acknowledged by *Dastar* and adhered to in *Clauson*.

Marvel's remaining, unpublished authorities also improperly ignore or muddle the division expressly recognized by *Dastar*.  They vaguely find that because the authorship of a book or an idea goes to its creative "origin," and a creative "origin" analysis has been rejected by *Dastar* as to § 43(a)(1)(A), then any misattribution claim under the Lanham Act must somehow also be precluded.  *See Thomas Publ'g Co., LLC v. Tech. Evaluation Ctrs., Inc.*, 06–CV-14212 (RMB), 2007 WL 2193964 (S.D.N.Y. July 27, 2007); *see also Gurvey v. Cowan, Liebowitz & Latman*, *P.C.*, 06-CV-1202, 2009 WL 1117278 (S.D.N.Y. Apr. 24, 2009) (citing *Thomas*); *Broughel v. Battery Conservancy*, 07–CV-775 (GBD), 2010 WL 1028171 (S.D.N.Y. Mar. 16, 2010) (same).  These unpublished cases are inconsistent with *Dastar's* express distinction between § 43(a)(1)(A) and § 43(a)(1)(B), recognized in *Clauson*, and should be disregarded.[2]

Plaintiffs also cite the unpublished decision in *Classic Media, Inc. v. Mewborn*, No. 05-452 (C.D. Cal. Sept. 29, 2005).  The case involved the recapture under 17 U.S.C § 304(c) of the *Lassie* copyright by Ms. Mewborn, the daughter of its author Eric Knight.  Marvel points out that the Kirbys' counsel represented Ms. Mewborn and attaches the decision, seemingly to discredit Kirbys' counsel.  Marvel fails to fully inform this Court about *Mewborn*, where on summary judgment the same trial court improperly ruled that the *Lassie* termination was invalid, and was

---

[2] Defendants' remaining cases are inapposite.  *Pot Luck, L.L.C. v. Freeman*, 06-CV 10195 (DAB), 2009 WL 693611 (S.D.N.Y. Mar. 10, 2009) only addressed a false designation of origin claim under § 43(a)(1)(A), and in *Smartix Int'l Corp. v. Mastercard Int'l LLC*, 06–CV-5174 (GBD), 2008 WL 4444554 (S.D.N.Y. Sept. 30, 2008), the Lanham Act claims were similarly dismissed because they were pled under § 43(a)(1)(A).  *Id.* at *17-18.

reversed by the Ninth Circuit, which upheld the termination.  *Classic Media, Inc. v. Mewborn*, 532 F.3d 978 (9th Cir. 2008).  Moreover, a review of the attached trial court decision actually supports Couterclaimants' position.  The trial court acknowledged that a § 43(a)(1)(B) claim may have stood if the counterclaim had contained allegations about tangible goods, not the "intangible" *Lassie* stories ("Lassie Works") of Mewborn's father:

> "However … the Lassie Works do not appear to involve tangible products in which the [*Lassie*] story and novel are fixed…Nowhere in the Counterclaim does Mewborn allege that Classic misrepresents its exclusive ownership of any physical copies of the story or film, which according to [plaintiff] has yet to be completed."

Here, Counterclaimants have plainly set forth such allegations under § 43(a)(1)(B). Counterclaimants allege that the commercial advertising and promotions for the released motion pictures *X-Men Origins: Wolverine* and *The Incredible Hulk* did not properly identify Jack Kirby as the author or co-author of the underlying works, and thus misrepresented the nature, characteristics, and/or qualities of same.  *See* Counterclaims ¶ 59.[3]  Counterclaimants also alleged that the commercial advertising and promotion for merchandise related to these films failed to properly identify Kirby as a creator.  *Id*. ¶ 60.  In light of the "door left open" by *Dastar*, and recognized by *Clauson*, the Lanham Act claims under § 43(a)(1)(B) are proper.

## V.   DISNEY AND MARVEL ENTERTAINMENT ARE NECESSARY TO FULLY ADJUDICATE DEFENDANTS' COUNTERCLAIMS

A counterclaimant may join parties required for the granting of complete relief in the determination of a counterclaim, if jurisdiction of the parties can be obtained and their joinder will not deprive the court of jurisdiction over the action.  *See* 3-13 *Moore's Federal Practice - Civil* § 13.112.  Disney and Marvel Entertainment, Inc.'s ("MEI") accounting to Defendants for profits from the recaptured Kirby copyrights certainly "arises out of the transaction or occurrence

---

[3] Exhibit A to the Declaration of Eli Bard (purportedly *The Incredible Hulk* credits) is extrinsic evidence and should be disregarded as improper on a Rule 12(b)(6) motion.  *See* Defendants' Objection to the Declaration of Eli Bard. This exhibit also misses the mark as the fifth counterclaim plainly extends to the films' *advertising and promotion*, not simply screen credits.

that is the subject matter of the opposing party's claim," namely, the Terminations.  And the Court plainly has personal jurisdiction over Disney and MEI.

Marvel's argument that Disney and MEI were not properly joined is incorrect.  The first and second counterclaims are compulsory, as they plainly "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim;" *i.e.*, the Kirby Terminations, "and do[] not require adding another party over whom the court cannot acquire jurisdiction." F.R.C.P. 13.  The third through fifth counterclaims are permissive; however, once a "defendant has a transactionally related claim …asserted as a compulsory counterclaim…the defendant c[an] then join unrelated claims." 4-18 *Moore's Federal Practice - Civil* § 18.02 [2][d].

As noted above, the second counterclaim regarding the principles governing an accounting named Disney and MEI as parties in part over the concern that these vertically integrated entities and their subsidiaries could easily engage in intra-corporate licensing of the recaptured copyrights that would substantially dilute the Kirbys' profit share.  *See* Counterclaim ¶ 35(h).  Media conglomerates are vertically integrated to maximize profits from their content. *See* David Waterman, *Viacom-CBS Merger: CBS-Viacom and the Effects of Media Mergers: An Economic Perspective*, 52 Fed. Comm. L.J. 531, 538 (May 2000).  A co-owner of copyright is generally not entitled to the profits of a mere third-party licensee of the other co-owner.  *See Ashton-Tate v. Ross*, 916 F.2d 516, 522-23 (9th Cir. 1990).  The combination of these factors creates the troubling possibility that Marvel may "license" key rights in the recaptured Kirby copyrights (*e.g.*, film and television rights) to Disney, MEI or a subsidiary of either at below-market terms, thereby diluting the profits to be shared with the Kirbys as copyright co-owners. A host of high-profile cases have been filed against the studios in recent years by profit

participants that have had their share of profits diluted by such intra-corporate licensing deals.[4]

The prohibition of copyright co-owners reaching licensees' profits makes sense when the third party is truly an independent entity bargaining on the open market. However, that is not the case with a vertically integrated transaction. Any one of the Counterclaim-Defendants could easily make a "less-than-arm's-length" licensing deal with its parent, subsidiary or affiliate and thereby dilute the Kirbys' profits. As such, the Kirbys are seeking as a prophylactic measure to enjoin Counterclaim-Defendants from entering into below-market licensing transactions amongst themselves as to the Kirby copyrights at issue. Counterclaim ¶ 35(h). *See Volvo Trademark Holding Aktiebolaget v. AIS Const. Equipment*, 162 F. Supp. 2d 465, 475 (W.D.N.C. 2001) (ruling that plaintiffs were entitled to seek declaratory relief "even before the defendant has acted to dilute or infringe" plaintiffs' trademarks, because "[b]y its very nature, declaratory relief is prophylactic – it seeks to prevent the injury by curtailing the harm").

Counterclaim-Defendants do not confront this problem addressed by the counterclaims, but instead argue that defendants have not alleged facts sufficient to implicate Disney or MEI under an "alter-ego" or "agency" theory of liability. However, this precise straw-man has been rejected by other courts in ruling on how accounting principles should apply to a § 304(c) termination. *See Siegel v. Warner Bros. Entm't, Inc.*, 542 F. Supp. 2d 1098, 1143 (C.D. Cal. 2008). In *Siegel*, defendants moved for summary judgment that neither Warner Bros. nor Time Warner was the "alter ego" of DC Comics ("DC"), the putative co-owner with the Siegels of recaptured Superman copyrights. DC had licensed Superman film and television rights to Warner Bros. prior to the effective date of the Siegels' statutory terminations. Under the

---

[4] *See, e.g., Ladd v. Warner Bros. Entertainment Inc.*, __ Cal. App. 4th __, 2010 Cal. App. LEXIS 733 (Cal. App. May 25, 2010) (held Warner Bros. liable for diluting profits through artificial accounting practices); *Steven Bochco v. Twentieth Century Fox Film Corp.*, L.A. Super. Ct., Case No. BC 216801 (Sept. 1999).

"licensee rule," the Siegels would not be entitled to any of Warner Bros.' Superman profits.

The Siegels asserted that an accounting between copyright co-owners is an *equitable* remedy and that, as such, the court must not view corporate formalities in a vacuum, but instead weigh their "real world" ramifications to arrive at a fair result. *See Oddo v. Reis*, 743 F.2d 630, 633 (9th Cir. 1984) (A "co-owner of a copyright must account to other co-owners for any profits he earns from licensing or use of the copyright … [based on] equitable doctrines relating to unjust enrichment and general principles of law governing the rights of co-owners.") (quotations / citations omitted). In pursuit of equity, the corporate veil can be pierced. *See First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 629-33 (1983) ("[O]ur cases have long recognized 'the broader equitable principle that the doctrine of corporate entity, recognized generally … will not be regarded when to do so would work … injustice.'") (citations omitted). The *Siegel* Court agreed, denying defendants' motion for summary judgment:

> "[T]he Court's analysis does not occur in vacuum; rather, it must take into account the relevant facts of this case, particularly given that the accounting sought by plaintiffs in this action is an equitable remedy, and the Court must conduct its inquiry accordingly. Here, the relatedness of the transferor and the transferee entities cannot be ignored. The evidence before the Court reveals that the relevant entities are all closely related entities - parent corporations, wholly and partially-owned subsidiaries, partners, sibling business entities (owned directly or indirectly by the same parent) …. This fact alone raises a specter of a 'sweetheart deal' entered into by related entities in order to pay a less than market value fee for licensing valuable copyrights. If such were the case, the related entity might be able to exploit the copyrights without the responsibility of answering to the co-owner of a joint work, and the licensor co-owner would thereby be relieved of the responsibility of accounting for any profits (other than a greatly reduced licensing fee) to the non-licensor co-owner. This result would be inequitable."

*Siegel*, 542 F. Supp. 2d at 1144. [5]

---

[5] *See also Bangor Punta Operations, Inc. v. Bangor & Aroostook R. Co*., 417 U.S. 703, 713 (1974) ("[T]he corporate form may be disregarded in the interests of justice."); *Acme Precision Products, Inc. v. American Alloys Corporation*, 422 F.2d 1395 (8th Cir. 1970) (treating a subsidiary and its parent as a single entity to prevent an injustice); *Mesler v. Bragg Management Co*., 39 Cal. 3d 290, 300-01 (1985) ("The essence of the alter ego doctrine is that justice be done. 'What the formula comes down to, once shorn of verbiage about control, instrumentality, agency, and corporate entity, is that liability is imposed to reach an equitable result.'").

The threat of such intra-corporate dilution is precisely what Defendants seek to enjoin in their second counterclaim, and Marvel cannot hide behind corporate formalities to avoid it. Disney purchased Marvel on December 31, 2009, and, as such, is in the position to dictate the licensing of the recaptured copyrights co-owned by the Kirbys.  As in *Siegel*, this can have a direct adverse effect on the profits payable to the Kirbys.  The threat is as current as the Terminations, and properly the subject of declaratory relief.[6]

Under Rule 19(a) a party is "necessary" if, in its "absence, the court cannot accord complete relief among existing parties."  *Id*.  As Disney and MEI are the parties in the best position to dictate how and when such intra-corporate transactions occur, they are plainly necessary to this action.

Lastly, MEI is also a proper defendant in the third, fourth and fifth counterclaims.[7]  MEI was the corporate successor to the Marvel Predecessors, and the "Marvel" company listed on the NYSE, until it was acquired by Disney on December 31, 2009.  Firstly, MEI was formed by the consolidation/merger of Marvel Predecessors, and when you have such "a consolidation or merger," the successor corporation can be liable for the acts of its predecessors.  *New York v. Nat'l Serv. Indus.*, 460 F.3d 201, 209 (2d Cir. 2006); Counterclaim, ¶¶ 10, 14. Secondly, the third through fifth counterclaims also allege *ongoing* conduct by the Marvel Predecessors and then MEI prior to 2010, for which MEI can also be held liable.  Counterclaim, ¶¶ 43, 53, 56-67.

## CONCLUSION

For the foregoing reasons, Defendants/Counterclaim-Plaintiffs respectfully request that this Court deny Defendants' motion to dismiss in its entirety.

---

[6]  Disney has been actively engaged in this case since the Termination Notices were served. Initial settlement discussions were handled by Disney's general counsel, Alan Braverman, as stated in his March 26, 2010 declaration (Docket No. 18).  Moreover, Disney's longtime corporate counsel, Weil Gotshal & Manges LLP, is lead counsel in this case for Marvel.

[7] Counterclaimants concede that Disney should be removed as a counterclaim-defendant to the third, fourth and fifth counterclaims and seek leave to amend their counterclaims accordingly.

Dated: New York, New York     TOBEROFF & ASSOCIATES, P.C.
        June 10, 2010

By:   s/Marc Toberoff
      _____
      Marc Toberoff (MT 4862)

2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: 310-246-3333

Attorneys for Defendants Lisa R. Kirby, Barbara J.
Kirby, Neal L. Kirby and Susan M. Kirby

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was served electronically by the Court's ECF system and by first class mail on those parties not registered for ECF pursuant to the rules of this court.

Dated: June 10, 2010

TOBEROFF & ASSOCIATES, P.C.

By: _____
    s/Marc Toberoff
    Marc Toberoff (MT 4862)

2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: 310-246-3333

Attorneys for Defendants Lisa R. Kirby, Barbara J. Kirby, Neal L. Kirby and Susan M. Kirby