UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                            :

MARVEL WORLDWIDE, INC.,          :
MARVEL CHARACTERS, INC. and   :
MVL RIGHTS, LLC,             :
                                            :
                Plaintiffs,       :
                                            :
     - against-                :
                                            :
LISA R. KIRBY, BARBARA J. KIRBY, :
NEAL L. KIRBY and SUSAN N. KIRBY, :
                                            :
               Defendants.    :
------------------------------------------------------x   Civil Action No. 10 Civ. 141 (CM) (KNF)
                                            :
LISA R. KIRBY, BARBARA J. KIRBY, :
NEAL L. KIRBY and SUSAN N. KIRBY, :
                                            :
        Counterclaim-Plaintiffs,   :
                                            :
     - against-                :
                                            :
MARVEL ENTERTAINMENT, INC.,    :
MARVEL WORLDWIDE, INC.,       :
MARVEL CHARACTERS, INC., MVL   :
RIGHTS, LLC, THE WALT DISNEY   :
COMPANY and DOES 1 through 10,   :
                                            :
        Counterclaim-Defendants.   :
------------------------------------------------------x

## PLAINTIFFS' AND COUNTERCLAIM-DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF MARK EVANIER

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

EVANIER'S PROFFERED REPORT AND TESTIMONY......................................... 2

ARGUMENT ............................................................................................................. 4

I.    EVANIER'S HEARSAY "OPINIONS" SHOULD BE EXCLUDED BECAUSE
      THEY SEEK TO INTRODUCE INADMISSIBLE FACTS INTO THE RECORD ........ 5

II.   EVANIER'S PURPORTED "EXPERT OPINIONS" ARE INADMISSIBLE, AS
      HE IS UNQUALIFIED TO TESTIFY AS AN EXPERT, HIS REPORT IS
      DEVOID OF METHODOLOGY AND HIS OPINIONS ARE IRRELEVANT
      AND IMPROPER ............................................................................................... 8

      A.    Evanier Is Not Qualified To Testify As An Expert ............................... 8

      B.    Evanier's Opinions Must Be Excluded Because They Are Wholly Devoid
            Of Methodology And Are Utterly Unreliable...................................... 11

      C.    Evanier's Opinions Are Irrelevant And Improper Subjects For Expert
            Testimony And Should Be Excluded In Their Entirety....................... 13

            1.    Evanier's Report Contains Nothing More Than Improper Factual
                  Narrative ................................................................................ 13

            2.    The Evanier Report Improperly Opines On Motivations and Intent ....... 14

            3.    Evanier's Opinions Usurp The Role Of The Factfinder By
                  Purporting To Opine On The Credibility Of Other Witnesses ............... 15

      CONCLUSION.................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 514 F. Supp. 2d 571 (S.D.N.Y. 2007)................13

*Algarin v. N.Y. City Dep't of Corr.*, 460 F. Supp. 2d 469 (S.D.N.Y. 2006)..................................12

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir. 2002) ....................................11

*Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705 (2d Cir. 1989)......................................13

*Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409 (S.D.N.Y. 2009)...........................7

*Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346 (S.D.N.Y. 2003) ........................................10

*Bazile v. City of N.Y.*, 64 Fed. Appx. 805 (2d Cir. 2003) ................................................................5

*Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334 (S.D.N.Y. 2005) ..........................12

*Bourjaily v. United States*, 483 U.S. 171 (1987) .............................................................................8

*Chacko v. DynAir Servs., Inc.*, 272 Fed. Appx. 111 (2d Cir. 2008) ..............................................16

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)................................................. *passim*

*DiBella v. Hopkins*, 403 F.3d 102 (2d Cir. 2005) ....................................................................5, 13

*In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164 (S.D.N.Y. 2009)....................................13

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ..............................................................................12

*Haimdas v. Haimdas*, No. 09-CV-02034 (ENV)(MDG), 2010 WL 652823 (E.D.N.Y. Feb. 22, 2010) .........................................................................................................................17

*Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461 (S.D.N.Y. 2005)..............14, 15

*Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173 (S.D.N.Y. 2008).........14, 15, 17

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)............................................................8

*LinkCo Inc . v. Fujitsu Ltd.*, No. 00 Civ. 7242 (SAS), 2002 WL 1585551 (S.D.N.Y. July 16, 2002) ................................................................................................................................14, 15

*Lippe v. Bairnco Corp.*, 288 B.R. 678 (S.D.N.Y. 2003)................................................................17

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 576 (S.D.N.Y. 2007)............7

*Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290 (2d Cir. 2008) ........................5

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*In re Marvel Entm't Group, Inc.*, 254 B.R. 817 (D. Del. 2000) .......................................9

*Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, No. 1995 CIV. 3901 (PKL), 1999 WL
    946354 (S.D.N.Y. Oct. 19, 1999) ...........................................................14

*Member Servs., Inc. v. Sec. Mut. Life Ins. Co. of N.Y.*, No. 3:06-cv-1164 (TJM/DEP),
    2010 WL 3907489 (N.D.N.Y. Sept. 30, 2010)............................................8

*Nimely v. City of N.Y.*, 414 F.3d 381 (2d Cir. 2005).......................................8, 11, 13, 16

*Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450 (S.D.N.Y. 2001) ..........................12, 15

*Raskin v. Wyatt Co.*, 125 F.3d 55 (2d Cir. 1997)................................................5

*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................................14, 15

*Royal Ins. Co. of Am. v. Joseph Daniel Constr., Inc.*, 208 F. Supp. 2d 423 (S.D.N.Y.
    2002) ..................................................................................8

*Siegel v. Warner Bros. Entm't Inc.*, 542 F. Supp. 2d 1098 (C.D. Cal. 2008)................................9

*Taylor v. Evans*, No. 94 Civ. 8425 (CSH), 1997 WL 154010 (S.D.N.Y. Apr. 1, 1997) ...............14

*United States v. Lombardozzi*, 491 F.3d 61 (2d Cir. 2007) ............................................6

*United States v. Lumpkin*, 192 F.3d 280 (2d Cir. 1999) ...............................................16

*United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008)...................................................7

*United States v. Scop*, 846 F.2d 135 (2d Cir. 1988)...................................................17

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, No. 04 Civ. 9651 (KNF),
    2010 WL 2365866 (S.D.N.Y. June 2, 2010) ..............................................6

*In re Zyprexa Prods. Liab. Litig. v. Eli Lilly & Co.*, 489 F. Supp. 2d 230 (E.D.N.Y. 2007) ........11

**FEDERAL STATUTES**

Fed. R. Evid. 702 ...........................................................................1, 4, 8, 10

Fed. R. Evid. 703 ...........................................................................6

Plaintiffs Marvel Worldwide, Inc., Marvel Characters, Inc. and MVL Rights, LLC (collectively, "Plaintiffs"), together with Counterclaim-Defendants Marvel Entertainment, LLC (successor by merger to Marvel Entertainment, Inc. and together with Plaintiffs, "Marvel") and The Walt Disney Company ("Disney"), respectfully submit this Memorandum of Law in Support of Their Motion to Exclude the Expert Report and Testimony of Mark Evanier.

## PRELIMINARY STATEMENT

Lacking any admissible evidence to defeat Marvel's claims in this case or to support their own, Defendants proffer two self-styled experts (Mark Evanier and John Morrow) in a futile attempt to transform multiple levels of hearsay into evidence offered for its truth. This is precisely what the Federal Rules of Evidence prohibit. Their reports and testimony are as inadmissible on summary judgment as they would be at trial and should be excluded.

Federal Rule of Evidence 703 is not a tool for converting hearsay into admissible evidence. It is simply a narrow exception to the requirement that witnesses testify on firsthand knowledge, and only allows a properly qualified expert to rely on, not offer, inadmissible evidence in the limited instances where the expert can show that others in his field reasonably rely on that type of inadmissible evidence. No such showing has been or could be made here, and the proffered opinions should be excluded for that reason alone.

Beyond that, however, Rule 702 requires the Court to exercise its gate-keeping function to bar unreliable, speculative and improper opinion, *see* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and it is clear here that Evanier lacks the qualifications to testify as an expert in this case, employs no recognized or accepted methodology in rendering his opinions, and clearly seeks to usurp, rather than assist, the factfinder. Indeed, what Evanier's proffered testimony seeks to do is formulate a factual-seeming narrative to try to contradict the

actual fact record that will be introduced through percipient witnesses and the documentary record, and use it to opine improperly on the motivation, intent and credibility of these actual witnesses.  Evanier's speculation as to what may have happened at Marvel "behind closed doors" 50 years ago when he was a child and obviously not present is neither expert opinion nor admissible evidence, as was soundly observed – against Evanier himself – by another court in a closely analogous case.  Evanier's opinion and testimony are thus subject to exclusion under Rule 702 as well.

As detailed more fully in the accompanying Motion to Exclude the Expert Report and Testimony of John Morrow, Morrow's duplicative report and testimony – which relies on Evanier's – should be excluded for the same reasons as herein (incorporated by reference), and additional reasons unique to him.

## **EVANIER'S PROFFERED REPORT AND TESTIMONY**

Defendants asked Evanier to opine on "the manner in which Jack Kirby created or co-created comics and comic book characters published by Marvel between 1958-1963, as well as Kirby's relationship with Marvel during this key period."  Expert Report of Mark Evanier ("Evanier Rep.") attached as Exhibit 1 to the Declaration of Sabrina A. Perelman ("Perelman Decl.") at 1; *see also* December 6, 2010 Expert Deposition of Mark Evanier ("Evanier Dep. (12/6/10)"), attached as Exhibit 2 to the Perelman Decl. at 24:21-25.  Consistent with his assignment, Evanier's report purports to trace the background of the comic book industry, Marvel's origin, and its relationship with Kirby.  *See* Evanier Rep. at 4-7.  The report describes the development of the "Marvel Method," by which Marvel's artists, including Kirby, were assigned to draw artwork after Marvel's editor, Stan Lee, gave them a plot.  *See id.* at 9-10.  It

also describes the manner in which Kirby worked from home using his own supplies and how Kirby supposedly was paid. *See id.* at 11-13.

The report reflects that Evanier "disagree[s] with the accounts [Lee] has sometimes given of the creation of [T]he Fantastic Four." *Id.* at 14; *see also id.* at 21 ("I have to disagree with any suggestion that the major Marvel characters . . . were solo Lee creations."). Evanier also opines that it is "[m]uch more logical" to conclude that certain characters were conceived at least in part by Kirby, because "it seems implausible to [him]" that, for example, *The Fantastic Four* was created in the manner Lee suggests, and he "find[s] it highly unlikely" that Kirby had no part in *The Fantastic Four*'s origin. *Id.* at 14-17.

Evanier also "disagree[s] with Stan [Lee] about some aspects of Marvel history" even though when asked at his deposition, he conceded that he was not present at Marvel or privy to any of Stan Lee's discussions with Kirby, and did not know Kirby, during the relevant time period. *See* Evanier Dep. (12/6/10) at 231:3-12; November 9, 2010 Fact Deposition of Mark Evanier ("Evanier Dep. (11/9/10)") attached as Perelman Decl. Exhibit 3 at 17:11-13, 19:7-20:10, 39:11-17, 40:21-25, 41:6-8, 41:24-25, 45:18-21, 46:15-20. Evanier testified that he was only six years old in 1958 when the relevant period began, and did not meet Kirby until some years later when, at age 17, he began working as Kirby's assistant. Evanier Dep. (11/9/10) Dep. at 17:11-13, 19:7-20:10. When asked the basis of his decision to credit Kirby's version of certain facts, Evanier conceded that "[t]here's a limit to how much [he] can know about what two men [*i.e.*, Lee and Kirby] did behind closed doors years ago." Evanier Dep. (12/6/10) at 113:14-15.

Evanier's report and testimony also reflect his opinions on the motivations or intent of Marvel and various non-parties, including Kirby and Lee. For example, Evanier opines that

some artists working under the Marvel Method "felt they were co-writing the comics without pay or credit," Evanier Rep. at 10, and that "[i]t is extremely doubtful that either Marvel or freelance artists, such as Jack Kirby, . . . had any understanding or intent that their freelance material . . . was somehow 'work made for hire,'" *id.* at 14. At his deposition, Evanier explained that in forming these opinions, he relied on "common sense," his own experience and his recollection of interviews he conducted and visits he made to Marvel over the years. Evanier Dep. (12/6/10) at 14:21-15:4, 18:7-19:10, 61:4-8. He testified he did not conduct any interviews to prepare his report, *id.* at 15:10-16, 21:21-25; did not review any documents or reference works, *id.* at 18:1-6; and did not test his theories against any other source, *id.* at 30:1-14. He also did not review the depositions of percipient witnesses who testified about Marvel's work-for-hire practices prior to the filing of Evanier's report or either of his depositions. *Id.* at 10:11-13, 51:22-53:19, 54:15-25.

During his deposition, Evanier testified that he arrived at the facts alleged in his report by "cho[osing] to believe" a certain version of the events as told by Kirby and his allies. *Id.* at 50:5-10. Evanier further explained that he determined "the most credible" version by "mak[ing] a value judgment . . . [and] believ[ing] the version [of events] that seems to be the most consistent." *Id.* at 50:14-51:21. Evanier admitted there is no way to test the reliability of his conclusions. *See id.* at 30:15-22.

In sum and substance, then, and based on no direct personal knowledge, Evanier is put forward to declaim that his opinion is that he disagrees with the facts.

## **ARGUMENT**

Under the Federal Rules of Evidence and the principles enunciated by the Supreme Court in *Daubert*, this Court is the gatekeeper for expert testimony. *See, e.g.*, *Daubert*, 509 U.S. at 597; *see also* Fed. R. Evid. 702 advisory committee's note. This applies equally on summary

judgment as at trial, as only admissible evidence may be considered in deciding such a motion. *See, e.g.*, *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309, 311 (2d Cir. 2008); *see also Bazile v. City of N.Y.*, 64 Fed. Appx. 805, 808 (2d Cir. 2003); *cf. Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[A]n expert's report is not a talisman against summary judgment."). The court has wide discretion to exclude expert testimony. *DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005). Like other inadmissible evidence, "[a]n expert's opinions that are without factual basis and are based on speculation or conjecture are similarly inappropriate material for consideration on a motion for summary judgment." *Major League Baseball*, 542 F.3d at 311.

**I.    EVANIER'S HEARSAY "OPINIONS" SHOULD BE EXCLUDED BECAUSE THEY SEEK TO INTRODUCE INADMISSIBLE FACTS INTO THE RECORD**

Evanier's report and testimony should be excluded before even reaching the formal *Daubert* analysis because they seek to introduce statements made in interviews and secondary sources for their truth. Indeed, Evanier, who was no more than eleven years old at the relevant time, has repeatedly admitted that he has no firsthand knowledge of any of Marvel's work-for-hire practices at the time the works at issue were created or of the circumstances of their creation. Evanier Dep. (12/6/10) at 231:10-12; Evanier Dep. (11/9/10) Dep. at 17:11-13, 19:7-20:10, 39:11-17, 40:21-25, 41:6-8, 41:24-25, 45:18-21, 46:15-20. He has also conceded that all the purported facts in his report came from Defendants' counsel and others. *See, e.g.*, Evanier Dep. (12/6/10) 14:21-15:4, 15:23-17:2, 33:18-35:13, 35:16-22, 36:15-18, 45:12-19, 47:21-48:2, 60:6-20, 111:8-25, 129:23-132:10, 174:1-175:4, 187:4-188:19, 189:3-18, 190:23-191:4; Evanier Rep. at 11, 12.

Rule 703 of the Federal Rules of Evidence is not an exception to the hearsay rule. It provides only that "[i]f of a type reasonably relied upon by experts in the particular field in

forming opinions or inferences upon the subject, the facts or data [upon which an expert bases an opinion or inference] need not be admissible in evidence in order for the opinion or inference to be admitted."  Fed. R. Evid. 703; *cf. Daubert*, 509 U.S. at 592 ("[The] relaxation of the usual requirement of firsthand knowledge . . . is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.").  Thus, "[w]hile an expert witness can testify to his or her opinions, arrived at by applying the witness'[s] expertise to otherwise inadmissible evidence, the witness'[s] opinion testimony, informed by inadmissible evidence, is permitted, 'in that limited instance, because the evidence is not being presented for the truth of the matter asserted.'"  *See Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, No. 04 Civ. 9651 (KNF), 2010 WL 2365866, at *2 (S.D.N.Y. June 2, 2010) (quoting *United States v. Lombardozzi*, 491 F.3d 61, 72 (2d Cir. 2007)).

Here, Defendants have not met any of Rule 703's requirements.  Evanier has not (a) identified any "particular field" that is an appropriate subject of expert testimony in which he is an expert (the exposition of purported historical facts based on hearsay and speculation is not a "particular field," *see infra* at p. 8), (b) demonstrated that he is qualified to opine in that particular field (*see infra*), or (c) shown that it is reasonable for any expert in that particular field to rely solely on hearsay statements in forming opinions.  Accordingly, there is no reliable basis that would allow him to opine based on hearsay.

Moreover, his report itself makes clear that he is not truly offering an independent opinion that relies on otherwise inadmissible hearsay as permitted by Rule 703; rather, he seeks only to introduce the very hearsay statements upon which he exclusively relies for their truth. The court of appeals for this Circuit squarely rejected this approach when it held that:

> [an] expert may not, however, simply transmit that hearsay . . . . Instead, the expert must form his own opinions by applying his

> extensive experience and a reliable methodology to the inadmissible materials. Otherwise, the expert is simply repeating hearsay evidence without applying any expertise whatsoever, a practice that allows [a party] to circumvent the rules prohibiting hearsay.

*United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008). In other words, "a party cannot call an expert simply as a conduit for introducing hearsay under the guise that a testifying expert used the hearsay as the basis of his testimony." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 576, 666 (S.D.N.Y. 2007); *cf. Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 424-25, 429 (S.D.N.Y. 2009) (expert who "simply repeats . . . hearsay . . . without any independent investigation or analysis, does not assist the trier of fact").

The rule against hearsay evidence cannot be circumvented by calling it expert testimony, as Evanier has tried before. In fact, the court in a closely analogous work-for-hire dispute between Marvel Entertainment Group, Inc. and comic book writer Marv Wolfman excluded Evanier's hearsay testimony – which, like his supposed opinions here, were based on conversations with Kirby – for precisely this reason:

> THE COURT: . . . I don't think [Evanier] is in a position to testify about what third parties told him for the purposes of me taking it as being the truth. . . .

> THE COURT: . . . I don't think that I can rely on [Evanier] for the purpose of finding as a matter of fact that the events he testified to in fact happened, in part because the other side has no real ability to cross-examine the principal actors in the incident. And, so I don't think it's consistent with . . . Rule 11 as to allow him or try to use him to establish certain facts I would end up finding. . . .

> THE COURT: Again, I don't think I'm going to be able to, if I have to make findings of fact, I don't think I would be able to cite [Evanier's] testimony for the purpose of making this finding. That is, it doesn't have, it's just not consistent with the Rules of Evidence that I can rely on what he is saying what happened in particular instances for the purpose of determining that it in fact did happen.

Transcript of Trial Proceedings in *In re Marvel Entertainment Group, Inc.* No. 97-638-RMM (D.

Del.), November 16, 1999, attached as Perelman Decl. Ex. 4, at B-211:5-15; *id.* at B-213:1-

214:2; *id.* at B-240:12-19.  For all the same reasons, Evanier's testimony should be similarly

excluded in this case.

## II.    EVANIER'S PURPORTED "EXPERT OPINIONS" ARE INADMISSIBLE, AS HE IS UNQUALIFIED TO TESTIFY AS AN EXPERT, HIS REPORT IS DEVOID OF METHODOLOGY AND HIS OPINIONS ARE IRRELEVANT AND IMPROPER

Under *Daubert* and Rule 702, the court first looks to whether the witness is qualified to

testify as an expert, then conducts a two-part inquiry:  (1) whether the expert used a reliable

methodology; and (2) whether the testimony will assist the trier of fact to understand the

evidence or to determine a fact in issue.  *Daubert*, 509 U.S. at 592-93; *Nimely v. City of N.Y.*,

414 F.3d 381, 396-97 (2d Cir. 2005); *Royal Ins. Co. of Am. v. Joseph Daniel Constr., Inc.*, 208 F.

Supp. 2d 423, 424-25 (S.D.N.Y. 2002) (McMahon, J.).  The party offering the expert testimony

must establish its admissibility by a preponderance of the evidence.  *E.g.*, *Bourjaily v. United*

*States*, 483 U.S. 171, 175 (1987).  These strictures apply to scientific and non-scientific

testimony alike.  *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting

Fed. R. Evid. 702).  Evanier fails the threshold qualification test and both prongs of the two-part

inquiry.

### A.    Evanier Is Not Qualified To Testify As An Expert

Evanier's opinions should be excluded because Defendants cannot show that he is

qualified to testify as an expert.  The exposition of purported historical facts does not qualify as

an expertise inhering in "technical or specialized knowledge."  *See Member Servs., Inc. v. Sec.*

*Mut. Life Ins. Co. of N.Y.*, No. 3:06-cv-1164 (TJM/DEP), 2010 WL 3907489, at *26 (N.D.N.Y.

Sept. 30, 2010) (expert's testimony of "parties' history is inadmissible because it is not scientific

or technical in nature").  In any event, there are no possible credentials that qualify a person to

testify as to purely factual matters based on hearsay and speculation, as Evanier attempts to do.

Moreover, while Evanier is proffered as an expert in the comic book industry solely

based on his purported experience, he actually lacks any underlined relevant experience.  To be clear,

Evanier has no experience with, or personal knowledge of, Marvel's relationship with Kirby or

its work-for-hire practices during the years 1958 through 1963, the only time period relevant to

this action.  Evanier Dep. (12/6/10) at 231:10-12.  In sworn testimony in another case, Evanier

expressly conceded that he does not know the pre-1978 work-for-hire policy of Marvel or any

other major comic book publisher and therefore lacks the expertise to opine on them.  *See*

Deposition Testimony of Mark Evanier in *In re Marvel Entertainment Group, Inc.* No. 97-638-

RMM (D. Del.), October 12, 1999, attached as Perelman Decl. Ex. 5, at 182:13-183:2.  Thus, it

is hardly surprising that his proffered testimony of the comic book industry's custom and

practice regarding works made for hire was simply ignored in that case and so soundly

discredited in another work-for-hire case.  *See In re Marvel Entm't Group, Inc.*, 254 B.R. 817,

823, 833 (D. Del. 2000) (crediting Marvel's evidence of work-for-hire policies and practices

over Evanier's proffered opinion that comic book publishers lacked a common practice with

regard to copyright ownership); *see also Siegel v. Warner Bros. Entm't Inc.*, 542 F. Supp. 2d

1098, 1122-23 (C.D. Cal. 2008) (finding Evanier's opinion "void of any specific evidence or

opinion" on works in question and "not at all probative").

Here, Evanier has already acknowledged the shortcomings of his own purported expertise

in admitting "[t]here's a limit to how much we can know about what two men [*i.e.*, Lee and

Kirby] did behind closed doors years ago."  Evanier Dep. (12/6/10) at 113:14-15.  Certainly,

there is a limit to how much *Evanier* can know since he was not there, unlike Stan Lee and Larry

Lieber, who were and who testified from personal knowledge.  *See* Declaration of Randi Singer

Exs. 1, 4.  Unlike Lee's and Lieber's, Evanier's opinions are not grounded in any experience or

knowledge, and so should be excluded.  *See Daubert*, 509 U.S. at 590 ("[T]he word 'knowledge'

[in Rule 702] connotes more than subjective belief or unsupported speculation."); *Baker v.

Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 353-54 (S.D.N.Y. 2003) (excluding expert who

lacked sufficient "knowledge, skill, experience, training or education" in the relevant field).

Finally, although Evanier bases his entire qualification to opine in this case on his

supposed experience in researching and interviewing others involved in the comic book industry,

he has failed to explain how this general experience qualifies him to offer a specific factual

narrative of events from fifty years ago that attempts to contradict the sworn testimony of

witnesses who were actually present, or how such experience is reliably applied to the facts in

this case.  *See* Fed. R. Evid. 702 advisory committee's note (expert must "explain how [his]

experience leads to the conclusion reached, why that experience is a sufficient basis for the

opinion, and how that experience is reliably applied to the facts").  The Court cannot be expected

"simply [to] tak[e] the expert's word for it."  *Id.* (quotation omitted).  Indeed, it is likely that

Evanier's inability to provide such an explanation derives from the fact that his experience is

colored by his close personal relationship with Kirby, whom he considered "like family," and

that Evanier earns a substantial portion of his income from writing and speaking about Kirby.

*See* Evanier Rep. at 23; Evanier Dep. (11/9/10) Dep. at 27:1-28:4, 38:2-17; Evanier Dep.

(12/6/10) at 66:9-67:20.  Accordingly, Evanier is not qualified to testify as an expert in this case,

and his opinions and testimony should be excluded.

**B.    Evanier's Opinions Must Be Excluded Because They Are Wholly Devoid Of Methodology And Are Utterly Unreliable**

The reliability prong of the *Daubert* analysis, in and of itself, provides another basis for excluding Evanier's opinions:  they are based on no methodology at all, let alone one sufficiently reliable to withstand scrutiny under *Daubert* principles.  To be sufficiently reliable under Rule 702, expert testimony "must be supported by appropriate validation."  *Daubert*, 509 U.S. at 590.  To determine that, courts consider factors such as whether a theory or technique can be or has been tested or subjected to peer review, whether there are standards controlling its operation, the known and potential error rate of the theory or technique, and whether it has attracted widespread acceptance in the relevant community.  *See id.* at 593-94.  The expert must demonstrate that his "conclusions [are] supported by good grounds for each step in the analysis . . . any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible."  *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).  Thus, "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."  *Nimely*, 414 F.3d at 396-97.

Here, Evanier has not utilized any discernible methodology.  Indeed, Evanier conceded that he formulated his opinions using "common sense" and by "mak[ing] a value judgment . . . [and] believ[ing] the version [of events] that seems to be the most consistent."  Evanier Dep. (12/6/10) at 51:9-21, 61:4-8.  In so doing, Evanier admitted that his only "methodology" was to draw on his own past irrelevant experience.  *See id.* at 14:21-15:4, 18:7-19:10.  He did not conduct any original or independent analysis in the preparation of his report, nor did he review any of the relevant documents or deposition testimony in the case.  *Id.* at 10:11-13, 15:10-16, 18:1-10, 21:21-25, 30:1-14, 51:22-53:19, 54:15-25; *see also In re Zyprexa Prods. Liab. Litig. v.*

*Eli Lilly & Co.*, 489 F. Supp. 2d 230, 288 (E.D.N.Y. 2007) (excluding testimony of expert who had not reviewed any data nor conducted any independent analysis of the issues). Choosing to reject the testimony of percipient witnesses without review cannot be the basis for an expert's opinion.

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Evanier's opinions, based entirely on his experience in collecting hearsay statements, are the ultimate *ipse dixit*. "An anecdotal account of one expert's experience . . . does not by itself equate to a methodology, let alone one generally accepted by the relevant professional community." *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 354 (S.D.N.Y. 2005); *see also, e.g.*, *Algarin v. N.Y. City Dep't of Corr.*, 460 F. Supp. 2d 469, 477 (S.D.N.Y. 2006) (expert excluded on summary judgment because his "conclusion is not the product of the application of any analytic method, aside from [the expert's] personal experience, and [the expert] cites no support for it, other than his occasional allusions to 'common sense'"); *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 530 (S.D.N.Y. 2001) (finding expert "must do more than aver conclusorily that his experience led to his opinion"). Here, Evanier's "methodology," based solely on his own experience, is purely subjective, speculative and precludes all possibility of testing or analysis for reliability. Evanier himself conceded as much:

> Q.    Is there any way that you can think of to test the reliability of the opinions that you reached or what you say is your understanding of what occurred back in 58 through 63? Any way to test that?
>
> A.    . . . I don't know of any way to test this kind of thing.

Evanier Dep. (12/6/10) at 30:15-22.  Consequently, Evanier's unreliable testimony must be

excluded because it is "inherently subjective and speculative" and "cannot be tested, . . . has no

known rate of error, and . . . is not subject to any particular standards or controls."  *See, e.g.*, *24/7*

*Records, Inc. v. Sony Music Entm't, Inc.*, 514 F. Supp. 2d 571, 574-77 (S.D.N.Y. 2007).

### C. Evanier's Opinions Are Irrelevant And Improper Subjects For Expert Testimony And Should Be Excluded In Their Entirety

The final prong of the *Daubert* analysis provides yet another independent basis for

excluding Evanier's report and testimony: his testimony would not assist the factfinder to

determine the ultimate issues in the case.  *See, e.g.*, *Nimely*, 414 F.3d at 397; *DiBella*, 403 F.3d at

121 ("Expert testimony must be helpful to the [trier of fact] in comprehending and deciding

issues beyond the understanding of a layperson.").  Instead of assisting the factfinder, he

attempts to usurp its role.

#### 1. Evanier's Report Contains Nothing More Than Improper Factual Narrative

Evanier's report is essentially an inadmissible second- or third-hand reconstruction of

facts and events that allegedly took place in the comic book industry over decades.  *In re*

*Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (precluding narrative

because experts "will not be permitted merely to . . . regurgitate the evidence" and "to the extent

such evidence is admissible, it should be presented to the [factfinder] directly").  Rule 702 does

not permit a party to circumvent the rules prohibiting hearsay and speculative testimony by using

an expert as a glorified storyteller, particularly when the testimony addresses "lay matters which

[the trier of fact] is capable of understanding and deciding without the expert's help."  *Andrews*

*v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989).

While an expert may "rely on facts or data in formulating an expert opinion, an expert

cannot be presented . . . solely for the purpose of constructing a factual narrative based upon

record evidence." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468-69 (S.D.N.Y. 2005), *aff'd*, 551 F. Supp. 2d 173, 180 (S.D.N.Y. 2008); *see also Taylor v. Evans*, No. 94 Civ. 8425 (CSH), 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997) (rejecting portions of expert report consisting solely of narrative). This prohibition is particularly apt here, as Evanier crafted his factual narrative with <u>no</u> regard for the record evidence of documents and witnesses with personal knowledge. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 549, 551 (S.D.N.Y. 2004) (rejecting expert "narrative reciting selected regulatory events" because "[s]uch material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence"); *see also LinkCo Inc . v. Fujitsu Ltd.*, No. 00 Civ. 7242 (SAS), 2002 WL 1585551, at *1-2 (S.D.N.Y. July 16, 2002) (expert's "secondhand knowledge unnecessary" where "testimony by fact witnesses familiar with those documents would be far more appropriate"); *Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, No. 1995 CIV. 3901 (PKL), 1999 WL 946354, at *3 (S.D.N.Y. Oct. 19, 1999) (expert without personal knowledge "may not take the place of . . . the individuals who actually negotiated the deal"). The principle precluding experts from constructing factual narratives applies equally to historians, who make "simple inferences drawn from uncomplicated facts that serve only to buttress [a party's] theory of the case" and "do[] no more than counsel . . . will do in argument." *In re Rezulin*, 309 F. Supp. 2d at 551. Evanier's proposed testimony, merely a narrative of imagined facts and proffered inferences from not only the record evidence but also hearsay outside the record, is a clear attempt to usurp the Court's role.

### 2. The Evanier Report Improperly Opines On Motivations and Intent

Evanier also offers improper and irrelevant opinions on the intent or motivations of Marvel and various non-parties. For example, Evanier proffers opinions that:

- some artists working under the Marvel Method "*felt that they were co-writing the comics* without pay or credit" (Evanier Rep. at 10) (emphasis added);

- "[i]n the mid-60s, *to placate some artists' complaints*, Marvel altered the standard form of its credits" (*id.*) (emphasis added);

- "Kirby *became disenchanted* with Marvel" (*id.* at 11) (emphasis added);

- in requiring work-for-hire releases, "Cadence *was trying to 'clean up,' if not revise, Marvel's past* to protect what had become valuable intellectual property (*id.* at 13) (emphasis added); and

- "[i]t is extremely doubtful that either Marvel or freelance artists, such as Jack Kirby, . . . *had any understanding or intent* that their freelance material . . . was somehow 'work made for hire'" (*id.* at 14) (emphasis added).

An expert may not "supplant the role of counsel in making argument at trial, and the role of the [factfinder] [in] interpreting the evidence." *Primavera*, 130 F. Supp. 2d at 529. Thus, "[i]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony." *In re Rezulin*, 309 F. Supp. 2d at 547; *see Highland Capital*, 551 F. Supp. 2d at 182-83 (expert's "belief about a party's state of mind is an improper subject for expert testimony and cannot be saved by couching his opinion as 'industry custom and practice'"); *Highland Capital*, 379 F. Supp. 2d at 469 (excluding portions of expert report that "interject[ed] his opinion as to the state of mind and knowledge possessed by defendants and non-parties to [the] action"); *LinkCo*, 2002 WL 158551, at *2 (rejecting expert's report that "does no more than counsel . . . will do in argument, i.e., propound a particular interpretation of [defendant's] conduct").

Evanier should be precluded from stepping into the shoes of counsel and opining on the understanding, intent or motivation of Marvel, Kirby or any other person, or to argue for a particular interpretation of the record facts.

### 3. *Evanier's Opinions Usurp The Role Of The Factfinder By Purporting To Opine On The Credibility Of Other Witnesses*

Evanier's perhaps most egregious overstepping is his attempt to opine on the credibility of other witnesses. For example: "I have great respect and personal affection for Stan Lee, *but I*

*disagree with the accounts he has sometimes given of the creation of [T]he Fantastic Four* in which he solely created the concept and characters and Kirby's role was limited to simply drawing up Lee's creation." Evanier Rep. at 14 (emphasis added); *see also id.* at 21. Evanier also states that it is "[m]uch more logical" to imagine a different account because, for example, "it seems implausible to [him]" that a comic book such as *The Fantastic Four* was created in the manner in which Lee suggests, and he "find[s] it highly unlikely" that Kirby had no part in the original conception of *The Fantastic Four. Id.* at 14-15.

In short, Evanier invents his own version of the facts: he determined "the version that [he] take[s] to be the most credible" by "mak[ing] a value judgment . . . [and] believ[ing] the version [of events] that seems to be the most consistent." Evanier Dep. (12/6/10) at 50:14-51:21. In this way, he "[chose] to believe" certain facts "because of [Kirby's] modus operandi, and the way he always worked," *id.* at 114:7-14, including, among others, choosing to "believe that part of [Kirby's] version" of how Spider-Man was conceived, *id* at 234:11-235:5. Evanier further admits that he simply "disagree[s] with Stan about some aspects about Marvel history." *Id.* at 231:3-5.

The gravamen of Evanier's testimony is his opinion of which version of historical events is more believable, and that is the core function of the factfinder. It is "a well-recognized principle of our trial system that determining the weight and credibility of a witness's testimony belongs to the" factfinder. *Nimely*, 414 F.3d at 397; *Chacko v. DynAir Servs., Inc.*, 272 Fed. Appx. 111, 112 (2d Cir. 2008) ("The decisions as to whose testimony to credit and which of permissible inferences to draw are solely within the province of the trier of fact."). Thus, "expert opinions that constitute evaluations of witness credibility . . . are inadmissible under Rule 702." *Nimely*, 414 F.3d at 398; *see United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999)

(rejecting expert's opinion on credibility because "fundamental to the role of . . . the trier of fact

is the task of assessing witness credibility"); *United States v. Scop*, 846 F.2d 135, 142 (2d Cir.

1988) ("[W]itnesses may not opine as to the credibility of the testimony of other witnesses. . . .").

The rationale for this exclusion is plain: expert testimony "is not relevant if the expert is

offering a personal evaluation of the testimony and credibility of others." *Lippe v. Bairnco

Corp.*, 288 B.R. 678, 687 (S.D.N.Y. 2003) (collecting cases); *see also Haimdas v. Haimdas*, No.

09-CV-02034 (ENV)(MDG), 2010 WL 652823, at *3 (E.D.N.Y. Feb. 22, 2010) ("The credibility

and weight of testimony are questions to be decided exclusively by the finder of fact . . . and thus

it is well established that [expert] witnesses may not opine as to the credibility of the testimony

of other witnesses[.]").   Without "personal knowledge of the underlying facts," an expert's

opinion on credibility is nothing more a "subjective review of the evidence [and] is improper."

*Highland Capital*, 551 F. Supp. 2d at 180.

Evanier's report is an egregious example of the impermissible usurpation of the role of

the factfinder.  Accordingly, Evanier should be precluded from testifying about the credibility of

any other witness or third-party, or otherwise usurping the role of the factfinder.

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs and Counterclaim-Defendants respectfully

request that the Court exclude the expert report and testimony of Mark Evanier in their entirety.

Dated:    February 25, 2011           By:   _____/s/ James W. Quinn_____

WEIL, GOTSHAL & MANGES LLP
James W. Quinn
R. Bruce Rich
Randi W. Singer
Sabrina A. Perelman
767 Fifth Avenue
New York, NY 10153
Tel:  (212) 310-8000
Fax: (212) 310-8007

17

PAUL, HASTINGS, JANOFSKY & WALKER LLP
Jodi A. Kleinick
75 East 55th Street
New York, NY 10022
Tel: (212) 318-6000
Fax: (212) 230-7691

HAYNES AND BOONE, LLP
David Fleischer
30 Rockefeller Plaza, 26th floor
New York, NY 10112
Tel: (212) 659-7300
Fax: (212) 884-9567

*Attorneys for Plaintiffs/Counterclaim-Defendants*