# EXHIBIT J

Confidential Pursuant to Protective Order

Page 150

1                    UNITED STATES DISTRICT COURT

2                    SOUTHERN DISTRICT OF NEW YORK

3

4     MARVEL WORLDWIDE, INC.,     )
      MARVEL CHARACTERS, INC.,    )
5     and MVL RIGHTS, LLC,        )
                                  )
6           Plaintiffs,           )
                                  )
7      vs.                        )Case No. 10-141-CMKF
                                  )
8     LISA R. KIRBY, BARBARA J. )
      KIRBY, NEAL L. KIRBY and  )
9     SUSAN N. KIRBY,             )
                                  )
10          Defendants.           )
      _____)
11

12

13

14

15           CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

16                          VOLUME II

17                  DEPOSITION OF STAN LEE

18                  LOS ANGELES, CALIFORNIA

19                WEDNESDAY, DECEMBER 8, 2010

20

21

22

23

      REPORTED BY:
24    Alejandria E. Kate
      CSR NO. 11897, HI 448, RPR, CLR
25    JOB NO.:  35197

Confidential Pursuant to Protective Order

Page 151

1

2

3

4

5                     DECEMBER 8, 2010

6                       9:11 A.M.

7

8

9       Deposition of STAN LEE, held at the offices

10      of VENABLE LLP, 2049 Century Park East, Suite

11      2100, Los Angeles, California, pursuant to

12      agreement before Alejandria E. Kate, a

13      Registered Professional Reporter and

14      Certified Shorthand Reporter of the State of

15      California.

16

17

18

19

20

21

22

23

24

25

Confidential Pursuant to Protective Order

Page 152

```
1    A P P E A R A N C E S:
2
3       ATTORNEY FOR THE PLAINTIFFS:
4           WEIL, GOTSHAL & MANGES
            BY:  JAMES W. QUINN, ESQ.
5                RANDI W. SINGER, ESQ.
            767 Fifth Avenue
6           New York, New York  10153
7           -AND-
8           HAYNES AND BOONE
            BY:  DAVID FLEISCHER, ESQ.
9           1221 Avenue of the Americas
            26th Floor
10          New York, New York  10020
11
12      ATTORNEY FOR THE DEFENDANTS:
13          TOBEROFF & ASSOCIATES
            BY:  MARC TOBEROFF, ESQ.
14               NICHOLAS C. WILLIAMSON, ESQ.
                 JEFFREY R. RHOADS, ESQ. (Page 200)
15          2049 Century Park East
            Suite 2720
16          Los Angeles, California  90067
17
18      FOR THE WITNESS:
19          GANFER & SHORE
            BY:  ARTHUR LIEBERMAN, ESQ.
20               (APPEARANCE VIA VIDEO CONFERENCE)
            360 Lexington Avenue
21          14th Floor
            New York, NY  10017
22
23      ALSO PRESENT:
24          ELI BARD, Marvel Entertainment
25
```

Confidential Pursuant to Protective Order

Page 254

1          (Whereupon, Defendants' Exhibit Number

2          LEE 23 was marked for identification.)

3          MR. TOBEROFF:  Exhibit 23 is an amendment

4    dated as of May 2, 2008 to the agreement dated June 11,

5    2007, called a "Cooperation Agreement," between Marvel

6    Entertainment and Stan Lee.  Bates Numbers 16141 to 42.

7       Q.   Can you please turn to Page 2 of this

8    document, Mr. Lee.  Just turn to Page 2.

9       A.   Page 2?

10      Q.   Yes.

11      A.   That's my signature.

12      Q.   That was my -- how did you guess that was my

13   question.  Thank you.  You're a quick study.

14          Now, let's turn back to what was marked as

15   Exhibit 1 in your prior deposition.  It's your

16   June 11th, 2007, affidavit.

17          MR. QUINN:  It's in here somewhere.  I'll find

18   it.

19          THE WITNESS:  Oh.  Thanks, Jim.

20   BY MR. TOBEROFF:

21      Q.   Putting the agreement aside for a second.

22          When did you first start working for Marvel

23   years ago?

24      A.   Before it was Marvel.

25      Q.   Before it was Marvel.

Confidential Pursuant to Protective Order

Page 255

1          I know Marvel has had various names like

2    Timely and other names.

3      A.   Yeah.  When I first really started, I was

4    about 17 or 18 years old.  So -- what's 17 from -- 22

5    and 17 is, what 32?  35?

6      Q.   39.

7      A.   39.  Somewhere around there.  1930s.

8      Q.   Does -- does 1940 ring a bell?

9      A.   Maybe, yeah.

10     Q.   And at the end of 1941, you were promoted to

11   the position of editorial director?

12     A.   Right.

13     Q.   Please turn to Paragraph 8 of the affidavit.

14          MR. QUINN:  On Page 5.

15          THE WITNESS:  Got it.  That's the easiest

16   part, finding the numbers.

17   BY MR. TOBEROFF:

18     Q.   If you go down three-quarters of the way down

19   the page, in that paragraph, you see the sentence that

20   reads, "Although I had no written agreement with

21   Timely, it was our mutual understanding and agreement

22   throughout the 23-year period."

23          Do you see that sentence?

24     A.   Yes.  That my creative contributions were made

25   as a result of my having been commissioned by Timely to

Confidential Pursuant to Protective Order

Page 256

1    create the works and that Timely would, therefore, own

2    whatever rights existed to any materials I created or

3    co-created for publication by it, including any new

4    characters that I created for publication by Timely and

5    that I had no right to claim" --

6        Q.   You don't have to read the whole sentence.

7            MR. QUINN:  Well, it's good for the record.

8            THE WITNESS:  Yeah.  That was for the record.

9            MR. TOBEROFF:  You keep saying the document

10   speaks for itself.

11       Q.   In any event, what I was getting at here is

12   it's correct that you had no written agreement with

13   Marvel for at least the first 23 years you worked

14   there; is that correct?

15       A.   You mean I had no agreement before this?

16       Q.   You had no written agreement with Marvel for

17   at least the first 23 years that you worked there?

18       A.   I don't know.  How do you know?

19       Q.   Well, we previously looked at an agreement --

20   a '72 agreement with Cadence, and no earlier agreement

21   has been produced.

22            And I asked you whether you had an earlier

23   agreement with Cadence or Marvel.

24       A.   Okay.

25       Q.   So it could have been -- actually, since you

Confidential Pursuant to Protective Order

Page 257

1   started working at Marvel in about 1940, 1972, it could

2   have been longer than 23 years, it could have been 32

3   years that you had no written agreement; is that

4   correct?

5       A.   I'm trying to remember.  I don't know if I had

6   a contract when Cadence took over.  If they gave me a

7   contract.  There was a contract because -- am I allowed

8   to say this?

9       Q.   Yes.

10          MR. QUINN:  Whatever your testimony is.

11          THE WITNESS:  There was a contract because

12  Cadence wouldn't buy the company unless Martin had me

13  under contract.

14          And I remember him saying to me, "Stan, you've

15  got to sign a contract with me or I won't be able to

16  sell the company."

17          And then he sold the company, so I assume I --

18  I know I signed something.  Now, I don't have a copy of

19  it.  I don't know where it is or what it is.  But I

20  know something was signed in order for Cadence to buy

21  the company.

22      Q.   So based on that, is it your belief that the

23  first agreement, written agreement you had with Marvel,

24  was shortly before Cadence bought the company?

25      A.   I would think so, yes.

Confidential Pursuant to Protective Order

Page 396

1     Q.   Now, when you -- when you were serving as an

2   editor at Marvel, in the period 1958 to 1963, you were

3   paid a salary as an editor?

4     A.   Yes.

5     Q.   And how were you paid for your work as a

6   writer on the comics?

7     A.   I was paid on a freelance basis, like any

8   freelance writer.

9     Q.   And does that mean you were paid by the page?

10    A.   Yes.

11    Q.   And was it your belief that because Marvel had

12  bought that work from you, that they owned all right,

13  title and interest in the work?

14    A.   Yes, I did believe that.

15         MR. TOBEROFF:  I'm done.

16         MR. QUINN:  Okay.  I have nothing further.

17         MR. LIEBERMAN:  You may leave, Mr. Lee.

18         THE COURT REPORTER:  No stipulation, then?

19  It's Code?

20         MR. TOBEROFF:  In California, we do a

21  stipulation.

22         MR. LIEBERMAN:  Mr. Lee, leave.  We're

23  finished.

24         MR. FLEISHCHER:  Why don't we go off the

25  record, Marc, and tell us what stipulation you want to