TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 3630
Los Angeles, CA 90067
Tel:    310-246-3333
Fax:    310-246-3101
MToberoff@ipwla.com

Attorneys for Defendants Lisa R. Kirby, Barbara J.
Kirby, Neal L. Kirby and Susan M. Kirby

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------

|  |  |
|---|---|
| MARVEL WORLDWIDE, INC., MARVEL CHARACTERS, INC. and MVL RIGHTS, LLC,<br><br>Plaintiffs,<br><br>-against-<br><br>LISA R. KIRBY, BARBARA J. KIRBY, NEAL L. KIRBY and SUSAN M. KIRBY,<br><br>Defendants. | Civil Action No.  10-141 (CM) (KF)<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF JOHN MORROW**<br><br>[Hon. Colleen McMahon]<br><br>[ECF Case] |

-----------------------------------------------------------

LISA R. KIRBY, BARBARA J. KIRBY,
NEAL L. KIRBY and SUSAN M. KIRBY,

Counterclaimants,

-against-

MARVEL ENTERTAINMENT, INC.,
MARVEL WORLDWIDE, INC.,
MARVEL CHARACTERS, INC., MVL
RIGHTS, LLC, THE WALT DISNEY
COMPANY and DOES 1 through 10,

Counterclaim-Defendants.

-----------------------------------------------------------

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

RELEVANT FACTUAL BACKGROUND......................................................................1

ARGUMENT .............................................................................................................2

I.    MORROW IS WELL QUALIFIED AS AN EXPERT AND HIS
      TESTIMONY SHOULD BE ADMITTED ..........................................................2

      A.    Morrow is Well-Qualified as an Expert.....................................................2

      B.    Expert Testimony That May Assist the Trier of Fact Should Be
            Admitted ..............................................................................................4

      C.    Morrow's Testimony is Well-Supported and Will Assist the Trier
            of Fact .................................................................................................6

            1.    It Is Well-Settled That Experts Can Testify to Historical
                  Events and Industry Custom and Practice Based on
                  Interviews, and Research .............................................................6

            2.    Morrow's Testimony Properly Analyzes the Record in
                  Light of the Evidence and Does Not Improperly Relate
                  Hearsay .....................................................................................8

      D.    Marvel's Other Arguments Do Not Offer Any Basis to Exclude
            Morrow's Testimony ............................................................................10

            1.    Morrow Does Not Offer an Improper "Narrative" .....................10

            2.    Morrow Does Not Improperly Opine on "Credibility" or
                  "Motivation" ............................................................................11

            3.    Morrow Did Not Intend to Offer Legal Conclusions...................13

            4.    Most of Marvel's Arguments Go to the Weight to be
                  Accorded Morrow's Testimony, Not Its Admissibility ...............14

II.   MORROW'S EXPERTISE AND TESTIMONY ARE NOT
      INADMISSIBLY DUPLICATIVE OF EVANIER'S EXPERTISE AND
      TESTIMONY ...............................................................................................14

      A.    Expert Testimony is Not Inadmissibly Duplicative Where the
            Experts Have Different Backgrounds and Professional Perspectives......14

B. Morrow's Testimony Is Different From Evanier's ................................. 16

C. Morrow's Testimony Derives From a Different Background and
Professional Perspective Than Evanier's ................................................. 16

CONCLUSION ............................................................................................................ 17

## TABLE OF AUTHORITIES

### Federal Cases

*Arista Records LLC v. Usenet.com, Inc.*,
608 F. Supp. 2d 409 (S.D.N.Y. 2009)..................................................................................7

*Banks v. United States*,
93 Fed. Cl. 41 (2010) ........................................................................................................14

*Borawick v. Shay,*
68 F.3d 597 (2d Cir. 1995)..................................................................................................5

*Boucher v. United States Suzuki Motor Corp.*,
73 F.3d 18 (2d Cir. 1996) ...................................................................................................5

*Bunt v. Altec Indus., Inc.*,
962 F. Supp. 313 (N.D.N.Y. 1997).....................................................................................5

*Chavez v. Carranza*,
559 F.3d 486 (6th Cir. 2009) ..............................................................................................7

*Colon v. BIC USA, Inc.*,
199 F. Supp. 2d 53 (S.D.N.Y. 2001)...................................................................................5

*Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*,
217 F.3d 33 (1st Cir. 2000)...............................................................................................12

*Cortes-Irizarry v. Corporacion Insular De Seguros*,
111 F.3d 184 (1st Cir. 1997).................................................................................................6

*Cree v. Flores*,
157 F.3d 762 (9th Cir. 1998) ............................................................................................12

*Crowley v. Chait*,
322 F. Supp. 2d 530 (D.N.J. 2004) .....................................................................................4

*Daubert v. Merrell Dow Pharmaceuticals*,
509 U.S. 579 (1993)................................................................................................. 5-6, 10

*Derienzo v. Trek Bicycle Corp.*,
376 F. Supp. 2d 537 (S.D.N.Y. 2005)...............................................................................14

*Ebbert v. Nassau County*,
77 Fed. R. Evid. Serv. (Callaghan) 820,
2008 U.S. Dist. LEXIS 74213 (E.D.N.Y. Sept. 28, 2008)........................................... 13-14

*Estates of Tobin v. SmithKline Beecham Pharms.*,
2001 U.S. Dist. LEXIS 26398 (D. Wyo. May 8, 2001)....................................................15

*F.H. Krear & Co. v. Nineteen Named Trustees*,
810 F.2d 1250 (2d Cir. 1987)................................................................................. 14-15

*Highland Capital Mgmt., L.P. v. Schneider*,
379 F. Supp. 2d 461 (S.D.N.Y. 2005).............................................................................11

*In re Fosamax Prods. Liab. Litig.*,
645 F. Supp. 2d 164 (S.D.N.Y. 2009).......................................................................... 10-11

*Isom v. Howmedica, Inc.*,
2002 WL 1052030 (N.D. Ill. May 22, 2002) ....................................................................4

*Jenson v. Eveleth Taconite Co.*,
130 F.3d 1287 (8th Cir. 1997) .......................................................................................10

*Johnson v. United States*,
780 F.2d 902 (11th Cir. 1986) ................................................................................. 15-16

*Katt v. City of New York*,
151 F. Supp. 2d 313 (S.D.N.Y. 2001)....................................................................... 6-7, 12

*Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*,
863 F.2d 867 (Fed. Cir. 1988)........................................................................................12

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999).........................................................................................................5

*Lippe v. Bairno Corp.*,
288 B.R. 678 (S.D.N.Y. 2003).......................................................................................13

*Liriano v. Hobart Corp.*,
949 F. Supp. 171 (S.D.N.Y. 1996)...................................................................................5

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
525 F. Supp. 2d 558 (S.D.N.Y. 2007)...............................................................................5

*Media Sport & Arts S.r.L. v. Kinney Shoe Corp.*,
1999 U.S. Dist. LEXIS 16035 (S.D.N.Y. Oct. 18, 1999) ........................................... 11-12

*Member Servs. v. Sec. Mut. Life Ins. Co.*,
2010 U.S. Dist. LEXIS 103776 (N.D.N.Y. Sept. 30, 2010) .............................................8

*Monks v. General Electric Co.*,
919 F.2d 1189 (6th Cir. 1990) ...........................................................................8

*Moore v. Ashland Chem.*,
126 F.3d 679 (5th Cir. 1997) ...........................................................................15

*New York v. Shinnecock Indian Nation*,
523 F. Supp. 2d 185 (E.D.N.Y. 2007) .............................................................6

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005).............................................................................13

*POM Wonderful LLC v. Organic Juice USA, Inc.*,
Case No. 09 Civ. 4916 (CM), 2011 U.S. Dist. LEXIS 1534 (S.D.N.Y. Jan. 3, 2011) ..5, 14

*Rochester Gas & Elec. Corp. v. GPU, Inc.*,
2008 U.S. Dist. LEXIS 111918 (W.D.N.Y. Aug. 8, 2009) ................................8

*Rodriguez v. County of Stanislaus*,
2010 U.S. Dist. LEXIS 80600 (E.D. Cal. Jul 8, 2010) .....................................15

*Roy Bahamian Ass'n v. QBE Ins. Corp.*,
2010 U.S. Dist. LEXIS 115308 (S.D. Fla. Oct. 21, 2010)...........................15-17

*Royal Ins. Co. of Am. v. Joseph Daniel Constr., Inc.*,
208 F. Supp. 2d 423 (S.D.N.Y. 2002)...............................................................14

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*,
467 F.3d 107 (2d Cir. 2006)...........................................................................6, 12

*United States v. Ayala*,
601 F.3d 256 (4th Cir. 2010) ............................................................................8

*United States v. Hankey*,
203 F.3d 1160 (9th Cir. 2003) ..........................................................................10

*United States v. Joseph*,
542 F.3d 13 (2d Cir. 2008).......................................................................*passim*

*United States v. Steed*,
548 F.3d 961 (11th Cir. 2008) ...........................................................................8

*Valentin v. New York City*,
1997 U.S. Dist. LEXIS 24059 (E.D.N.Y. Sept. 9, 1997)..........................5-6, 12

**Federal Statutes, Rules and Regulations**

17 U.S.C. § 304(c) .................................................................................................1

F.R.C.P. 26(a) .......................................................................................................2

F.R.E. 702 ................................................................................. *passim*

F.R.E. 703 ................................................................................. *passim*

F.R.E. 703, Notes of Advisory Committee on Rules.........................................9

**Other Authorities**

Jones, Rosen, Wegner, Jones, *Federal Civil Trial and Evidence* (2008)
*Federal Civil Trial and Evidence* § 8:1521 .......................................................6

## INTRODUCTION

Plaintiffs Marvel Worldwide, Inc., Marvel Characters, Inc., and MVL Rights, LLC and Counterclaim-Defendants Marvel Entertainment, LLC's ("Marvel") motion to exclude the expert report and testimony of John Morrow ("Motion" or "Mot."), like Marvel's motion to exclude the report and testimony of Mark Evanier ("Evanier"), is a vain attempt to bolster its case by excluding one of the most well respected and well known scholars of Jack Kirby and of the comic book industry.  Morrow's editorship of *The Jack Kirby Collector* and his wealth of interviews and archival data make him uniquely qualified to opine on key topics relating to the crucial "work for hire" issue before this court:  (1) the history of Marvel Comics, and specifically during the relevant 1958–1963 time period ("Period"); (2) Marvel's business relationship with Jack Kirby and other freelancers during the Period, and (3) Kirby's creation or co-creation of many of Marvel's most famous characters during the Period.  Declaration of Marc Toberoff in Opposition to Plaintiffs' Motion to Exclude the Expert Report and Testimony of John Morrow ("Tob. Dec.") Exhibit A ("Report") at 1.  Morrow's testimony and expert report are not redundant with Evanier's testimony, because Morrow addresses both different and similar issues from a different professional perspective.  Morrow's testimony is properly based on well-accepted sources, and will assist the Court in determining whether Jack Kirby's ("Kirby") works were created in the 1958-63 Period as "works made for hire."

## RELEVANT FACTUAL BACKGROUND

On September 16, 2009, Jack Kirby's children, defendants and counterclaim-plaintiffs Lisa R. Kirby, Barbara J. Kirby, Neal L. Kirby and Susan M. Kirby (the "Kirbys"), served plaintiffs and counterclaim defendants (including predecessors, "Marvel") with Notices of Termination under 17 U.S.C. § 304(c) to recapture their father's copyrights by statutory

termination of any prior grants to Marvel.  Tob. Dec. ¶ 4; Report at 1.  On January 8, 2010,

Marvel sued the Kirbys, seeking a declaratory judgment that the Termination is invalid on a

revisionist theory that the subject 1958-63 works were purportedly all "works for hire."  Pursuant

to F.R.C.P. 26(a) and the Court's April 19, 2010 scheduling order, the Kirbys named John

Morrow as an expert witness on November 4, 2010, and attached his expert report to this

disclosure.  *See* Tob. Dec. Ex. A.  Marvel did not submit any expert reports, nor did it serve any

rebuttal expert reports.  Mr. Morrow was fully deposed by Marvel on January 10, 2011.

## ARGUMENT

### I.   MORROW IS WELL QUALIFIED AS AN EXPERT AND HIS TESTIMONY SHOULD BE ADMITTED

#### A.   Morrow is Well-Qualified as an Expert

Morrow easily qualifies as an expert on the history of Marvel Comics, before, during and

after the 1958-1963 Period, as well as on Kirby's and Marvel's relationship.  Very few people

are as qualified as Morrow to opine on these subjects.  Morrow is the founder, editor and

publisher of *The Jack Kirby Collector*, a magazine devoted to the life and work of Kirby.  Report

at 1-2.  Since 1994, Morrow has published 55 issues of *The Jack Kirby Collector*, with a wide

variety of articles that cover all aspects of Kirby's life and work.  *Id.* Notably, during Marvel's

deposition of Stan Lee on May 13, 2010, Marvel used an article from *The Jack Kirby Collector*

No. 54, "Fantastic Penciling," as an exhibit to question Lee about how he wrote dialogue based

on Kirby's notes in the margins of his artwork.  Tob. Dec. Ex. B at 49:10–53:12.  As publisher of

*The Jack Kirby Collector*, Morrow has extensively researched Kirby's life, and has gathered a

wealth of archival Kirby material.  Report at 2; Tob. Dec. Ex. C at 53:20-55:10.  Over the years,

Morrow has spoken about Jack Kirby with, and formally interviewed, members of the Kirby

family, as well with many leading figures in the comic book industry from the 1950s onward.  *Id.*

Morrow also was a trustee of the nonprofit Jack Kirby Museum. *Id.* Morrow's company, TwoMorrows Publishing, also puts out the Eisner Award-winning magazine *Comic Book Artist*, and revived, and now publishes, Roy Thomas' magazine *Alter Ego*, which focuses on comic books from the 1940s to the 1960s. *Id.*

Marvel, itself, has often recognized Morrow's expertise. In 2006, Marvel asked Morrow to help re-assemble key unpublished parts of a *Fantastic Four* story by Kirby, based on an article written by Morrow for *The Jack Kirby Collector*. *Id.* at 3-4. The story was originally drawn and plotted by Kirby for *The Fantastic Four*, but parts were rejected, and went unused and unpaid. *Id.* Other parts of the story were rearranged and used in a later issue of *The Fantastic Four* after Kirby stopped selling material to Marvel in 1970. *Id.* Much of the other artwork was lost, until Morrow tracked it down for use in his article. Marvel paid Morrow to update his article, for use as an afterword in a *Fantastic Four* reprint collection, and as an introduction to the stand-alone *The Fantastic Four: The Lost Adventure No. 1* (2008) comic book , which published Kirby's rejected pages, after Marvel licensed and paid for such pages in a July 7, 2006 contract with Kirby's estate. *Id.*; *see also* Declaration of Marc Toberoff in Opposition to Plaintiffs' Motion for Summary Judgment, Ex. P.

Marvel has also commissioned Morrow to write numerous introductions to collections of *The Fantastic Four, Thor, Nick Fury*, and *Captain America* comics, and to help track down missing, alternate, and unused/rejected art for *Thor, Spider-Man, X-Men, and The Fantastic Four. Id.* at 3. DC Comics has likewise commissioned Morrow to write introductions to *Jack Kirby's Fourth World Omnibus*, Volume 4 and other books reprinting Kirby's *Challengers of the Unknown* and *Sandman* comic books. *Id.* DC also has asked Morrow to help locate missing art

for the Kirby comic books *The Forever People, The New Gods, Mister Miracle, Kamandi, OMAC* and *The Losers*.  *Id.*

Morrow has been a panelist and moderator at many comic book industry events, including Comic-Con International in San Diego, the New York Comicon, and others.  *Id.* at 4.  Morrow discussed Kirby's history in the documentary *Jack Kirby: Storyteller*, featured on the DVD release of Marvel's 2005 *Fantastic Four* theatrical film, and provided research materials and audio and video footage of Kirby for that film.  *Id.*

Morrow's expert testimony about the history of Marvel, and its relationship with Kirby, is derived from years of studying, writing and interviewing, and from editing and publishing *The Jack Kirby Collector*.  The depth of Morrow's report and his experience, his numerous professional accomplishments and Marvel's own use of Morrows' expertise refute Marvel's bald accusations that he is not qualified.[1]

## B.  Expert Testimony That May Assist the Trier of Fact Should Be Admitted

Federal Rule of Evidence 702 broadly provides that if specialized knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue," a qualified expert witness may testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  F.R.E. 702.  The trial court acts as a "gatekeeper"

---

[1] Plaintiffs also attack Morrow on the grounds that he did not prepare the first draft of his expert report.  Mot. at 2.  Plaintiffs, however, neglect to mention that the draft was specifically based on extensive discussions between Defendants' counsel and Morrow, that the draft was provided because Morrow was unfamiliar with the format of such reports, and that Morrow afterward significantly changed the draft.  Tob. Dec. Ex. C at 71:15–72:6.  *See Crowley v. Chait*, 322 F. Supp. 2d 530, 544-45 (D.N.J. 2004) (admitting expert report drafted by counsel based on "interview" with expert); *Isom v. Howmedica, Inc.*, 2002 WL 1052030, at *1 (N.D. Ill. May 22, 2002) (admitting expert report where the plaintiff's attorney prepared draft based on discussions with expert).

in deciding whether expert testimony satisfies Rule 702. *See Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 582 (1993).

Trial courts have wide discretion in admitting expert testimony. As the Supreme Court held, "the trial judge must have considerable leeway in deciding … whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). "[T]he Federal Rules of Evidence favor the admissibility of expert testimony, and [the court's] role as gatekeeper is not intended to serve as a replacement for the adversary system." *POM Wonderful LLC v. Organic Juice USA, Inc.*, Case No. 09 Civ. 4916 (CM), 2011 U.S. Dist. LEXIS 1534, at *19 (S.D.N.Y. Jan. 3, 2011) (citing *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 561 (S.D.N.Y. 2007)) (McMahon, J.). As such, "the district court's role as a gatekeeper in screening out unreliable testimony is tempered by the liberal thrust of the Federal Rules of Evidence and the presumption of admissibility." *Colon v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 75 (S.D.N.Y. 2001) (internal citation omitted). *See also Borawick v. Shay,* 68 F.3d 597, 610 (2d Cir. 1995); *Bunt v. Altec Indus., Inc.*, 962 F. Supp. 313, 317 (N.D.N.Y. 1997); *Liriano v. Hobart Corp.*, 949 F. Supp. 171, 176 (S.D.N.Y. 1996).

"A review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." *Colon,* 199 F. Supp. 2d at 75. Notably, "the Second Circuit espouses a particularly broad standard for the admissibility of expert testimony." *Id.* (citing *Boucher v. United States Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (holding that expert testimony is admissible unless purely conjectural or based on wholly unfounded assumptions)). "[D]oubts about whether an expert's testimony will be useful should be resolved in favor of admissibility." *Valentin v. New York City*, 1997 U.S. Dist. LEXIS 24059, at *53 (E.D.N.Y. Sept. 9, 1997) (citations omitted). The best remedy for attacking expert testimony is the "traditional

and appropriate means" of "[v]igorous cross-examination" and the "presentation of contrary evidence." *Daubert*, 509 U.S. at 596. Other Circuits have similarly noted that, while *Daubert* applies on summary judgment, it must be used cautiously. *See, e.g., Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 188 (1st Cir. 1997).

    **C.**    **Morrow's Testimony is Well-Supported and Will Assist the Trier of Fact**

As with Evanier, Marvel attacks Morrow's expert report and testimony on the grounds that Morrow's methodology, grounded in his years of study of the comic book industry and interviews with participants, is not a proper basis for expert testimony. However, Morrow's testimony as to historical events, based on sources commonly relied on by experts on history and the social sciences, is admissible as it will assist the trier of fact.

    **1.**    **It Is Well-Settled That Experts Can Testify to Historical Events and Industry Custom and Practice Based on Interviews, and Research**

Information from interviews, industry experience and reviewing documentary evidence are exactly the types reasonably relied upon by experts addressing industry custom and practice and/or historical matters. *See* Jones, Rosen, Wegner, Jones, *Federal Civil Trial and Evidence* (2008) § 8:1521 ("[I]n certain fields experience is the predominant, if not sole, basis for a great deal of reliable expert testimony"); *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 133-134 (2d Cir. 2006) (approving testimony of "an expert on custom and practice in the property insurance industry" as to meaning of contract, based on expert's "31 years of experience" in the industry); *New York v. Shinnecock Indian Nation*, 523 F. Supp. 2d 185, 261-62 (E.D.N.Y. 2007) (permitting expert testimony as to "the pertinent historical documents … in the context of the contemporary historical understanding"); *Katt v. City of New York*, 151 F. Supp. 2d 313, 356 (S.D.N.Y. 2001) (approving testimony based on "personal experience," "interviews with police officers" and research).

Morrow's extensive study into Kirby's life and work based on in-depth research and interviews with Kirbys' contemporaries, other industry figures and members of Kirby's family are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject" and therefore qualify under Rule 703. *See Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 424 (S.D.N.Y. 2009) ("In forming their opinions, experts, of course, often rely on interviews of people with knowledge of relevant facts."); *Katt,* 151 F. Supp. 2d at 356 (social science expert permitted to testify based on "personal experience," "interviews," "reports, research articles, scholarly journals, books and newspaper reports" as "[s]uch data is of a type reasonably relied upon by experts in various disciplines of social science"); *Chavez v. Carranza*, 559 F.3d 486, 497 (6th Cir. 2009) (social science expert permitted to testify based upon "interviews, commission reports …, documentary research, and field research" about events during the preceding decades).

Numerous other authorities construing Rule 703 equally make clear that such sources are exactly the kind reasonably relied upon by experts addressing matters of custom and practice and/or historical matters. For example, in *United States v. Joseph*, 542 F.3d 13, 21-22 (2d Cir. 2008), the Second Circuit held that expert testimony, based solely on interviews and studying chat-room conversations, about Internet "role-playing" was admissible under Rule 703 when the testimony was used to analyze the parties' motivations and place their conduct in context. *Joseph* noted that the expert could properly testify to "the distinct culture of the Internet" and "the distinct realities and motivations" of participants in that culture. *Id.* at 16, 22. Notably, even though the expert's testimony relied upon out-of-court statements, "that would not be a

valid objection" because expert witnesses "commonly base their opinions on interviews." *Id.* at 22 (citing F.R.E. 703).[2]

Similarly, *Rochester Gas & Elec. Corp. v. GPU, Inc.*, 2008 U.S. Dist. LEXIS 111918 (W.D.N.Y. Aug. 8, 2009) admitted Rule 703 expert testimony based on statements in historical sources about a company's "evolving corporate governance relationship" decades earlier with another company. *Id.* at *15–16, *16 n.7. "The fact that records [the expert] relied on may have contained hearsay is of no consequence." *Id.* at *28 n.10 (citing Rule 703).

The authority relied on by Marvel on this issue, *Member Servs. v. Sec. Mut. Life Ins. Co.*, 2010 U.S. Dist. LEXIS 103776, at *71, 78 (N.D.N.Y. Sept. 30, 2010), is instructive. There, a party sought to exclude the testimony of an expert on the origin and development of computer source code, arguing that the expert relied upon "hearsay" representations by others about the pre-2003 functionality of its program based on the source code. The court rejected that argument, holding that the expert properly applied his expertise and judgment to such representations in determining when the source code was developed. *Id.* at *78–79. "The fact that someone may have directed the expert to a specific code, or may have even represented the functionality of a code, does not mean that the expert will be precluded from testifying." *Id.*

### 2. Morrow's Testimony Properly Analyzes the Record in Light of the Evidence and Does Not Improperly Relate Hearsay

Marvel attempts to exclude Morrow's report and testimony by arguing the straw man that Morrow, who is not being presented as a percipient witness, relies on data and facts provided by

---

[2] Other circuits have reached similar conclusions. *See United States v. Ayala*, 601 F.3d 256, 275 (4th Cir. 2010) (approving expert testimony about gang history and practices that relied on out-of-court interviews with unnamed interviewees, study and observation); *United States v. Steed*, 548 F.3d 961, 975–76 (11th Cir. 2008) (admitting expert testimony about drug trafficking based on experience, conversations, and review of literature); *Monks v. General Electric Co.*, 919 F.2d 1189, 1192 (6th Cir. 1990) (holding trial court erred in excluding expert testimony based on depositions, government documents, official Army reports and historical data).

others and not *percipient* knowledge.  The Federal Rules of Evidence make clear that such testimony is admissible if it will aid the trier of fact.  *See* F.R.E. 702 (permitting expert testimony based on "specialized knowledge"); F.R.E. 703, Notes of Advisory Committee on Rules ("The [specialized knowledge] contemplated by the rule consists of *presentation of data to the expert outside of court and other than by his own perception*.") (emphasis added).  Morrow's expert report and testimony demonstrate that Morrow's opinion is well grounded in interviews and study of Marvel and Kirby.

For example, for his knowledge of the plotting conferences between Kirby and Stan Lee, alleged by Marvel, Morrow not only drew upon interviews, but also studied the photostats sent to Kirby by Marvel when Kirby was asked to take over comic books, and Kirby's actual artwork in which Kirby would plot a story, draw it and in the margins would write explanatory notes and suggest dialogue to be placed in the balloons by Stan Lee.  Tob. Dec. Ex. C at 57:22–58:25. Morrow also was able to compare this process against the historically accepted accounts of Kirby's partnership with Joe Simon in the 1940s, where Simon and Kirby would write their own scripts even when writers were commissioned to write scripts for them.  *Id.* at 59:14–60:4.

Morrow also independently compared Kirby's Marvel-era artwork with his pre-Marvel *Challengers of the Unknown* artwork and noted that Marvel-era artwork continued Kirby's practice of using chapter breaks with "splash" pages for each chapter.  *Id.* at 63:2–21.  Based on his comparisons, Morrow also noted the striking similarities between Kirby's four-man team of superheroes in *Challengers of the Unknown* (1958) and Marvel's *The Fantastic Four* (1961), for which Stan Lee now dubiously takes full creative credit.  Report at 11; Tob. Dec. Ex. B at 59:16-60:16, 61:10-62:15; Ex. F.

Based on further comparisons of the actual comic books, Morrow also notes Kirby's lifetime fascination with Norse mythology and the similarities between Kirby's pre-Marvel *Thor* character, replete with a magic hammer, in *Tales of the Unexpected* (1957) and Marvel's *The Mighty Thor*, which Lee also now claims that *he* created.  Report at 11; Tob. Dec. Ex. B at 87:11-89:8, 89:13-90:19, 91:2-3.  Such testimony makes clear that Morrow does not "simply repeat[] hearsay evidence without applying any expertise" (Mot. at 7), but applies his expertise to evaluate the true facts and relationship between Kirby and Marvel.

Marvel's argument that Morrow's testimony lacks "any way to be tested," an "error rate," or "controls," alluding to the technical *Daubert* factors, is nonsense.  Mot. at 8.  By definition, expert testimony such as Morrow's, grounded in the social sciences "cannot have the exactness of hard science methodologies."  *Joseph*, 542 F.3d at 21 (quoting *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287 (8th Cir. 1997)).  "[P]eer review, publication, potential error rate, etc. … are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology of theory behind it."  *Id.* at 21–22 (quoting *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2003)).

### D.   Marvel's Other Arguments Do Not Offer Any Basis to Exclude Morrow's Testimony

#### 1.   Morrow Does Not Offer an Improper "Narrative"

As with Evanier, Marvel's argument that Morrow simply "offers a factual narrative" is unpersuasive.  The cases cited by Marvel stand for the proposition that it is improper for an expert to simply provide a "narrative" of the record evidence.  However, as set forth above, an expert can properly testify as to the historical context in which to place such evidence and can draw inferences from such evidence based on expertise.

An example is *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y.

2009), which prohibited an expert from offering a "summary or selective quotation from internal [] documents, regulatory filings, and the deposition testimony" that "should be presented to the jury directly," while permitting the expert to "explain[] the regulatory context …, defin[e] any complex or specialized terminology, or draw[] inferences that would not be apparent without the benefit of experience or specialized knowledge."  *See also Media Sport & Arts S.r.L. v. Kinney Shoe Corp.*, 1999 U.S. Dist. LEXIS 16035, at *8-12 (S.D.N.Y. Oct. 18, 1999) (excluding expert testimony where it was a narrative based on a "review of documents and depositions produced by the parties," but permitting testimony as to "the customs and practices of the sports industry, an analysis of whether the conduct of the parties in this action conformed to those customs, and whether such behavior evidences the parties' intent ….").

The cases cited by Marvel simply exclude portions of expert reports that offer only a "narrative" of the record evidence or improper legal conclusions, which Morrow does not do. *See e.g., Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468 (S.D.N.Y. 2005) (testimony excluded to the extent that the expert "is simply rehashing otherwise admissible evidence").  Morrow's testimony and report properly analyze the record evidence in light of his specialized knowledge of the comic book industry, notably with respect to Kirby's working practices and creation of material.

### 2.    Morrow Does Not Improperly Opine on "Credibility" or "Motivation"

As with Evanier, Marvel argues that Morrow's testimony should be excluded because it touches on the motivations or intent of Marvel and of freelance artists, or because it sometimes contradicts that of Stan Lee.  Mot. at 7-9.  These are not grounds for exclusion.  Rule 702 allows for expert testimony as to the intent and motivation of parties and non-parties alike.  *See Joseph*, 542 F.3d at 22 (urging the district court to allow expert testimony on "the distinct realities and

11

motivations" of participants in online cultures); *SR Int'l Bus. Ins. Co.,* 467 F.3d at 132; (approving expert testimony on contractual intent); *Travelers Indem. Co. v. Scor Reinsurance Co.*, 62 F.3d 74, 78 (2d Cir. 1995) (same); *Katt*, 151 F. Supp. 2d at 359 (permitting expert testimony "to assist the jury to understand why … [plaintiff] might reasonably have chosen not to take advantage of established [] procedures"); *Valentin*, 1997 U.S. Dist. LEXIS 24059, at *72-73 (E.D.N.Y. Sept. 9, 1997) (permitting expert testimony as to the potential motivations of persons within defendant organization who retaliated against plaintiff); *Media Sport & Arts S.r.L.*, 1999 U.S. Dist. LEXIS 16035, at *8-12 (permitting testimony about whether the parties' "behavior evidences the parties' intent"); *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988) (experts permitted to testify that there was "no evidence of deceptive intent" in a patent application).

Testimony as to "motivation" and "intent" is also admissible where it concerns historic or "decades-old" matters, like Morrow's testimony regarding the relationship between Marvel and freelancers in the late 1950's/early 1960's. *See Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 38-39 (1st Cir. 2000) (permitting expert testimony on intent "because the policy was several decades old," and the experts "could testify to what the terms in the policy must have meant in light of industry practice" at that time); *Cree v. Flores*, 157 F.3d 762, 767-768 (9th Cir. 1998) (considering historical testimony as to meaning and intent of an old treaty).

As with Evanier, Marvel attacks Morrow on the grounds that Morrow's testimony contradicts statements by Stan Lee and attacks Lee's credibility, but fails to cite an example of Morrow opining on Lee's statements or credibility. Mot. at 9. Morrow merely testified about Marvel's treatment of freelance artists, and how Kirby created or co-created comic books and comic book characters that were published by Marvel. Such testimony is not rendered

inadmissible merely because it potentially conflicts with statements by a Marvel witness for

Marvel.  Expert testimony is not excluded merely because it pertains to a witness' credibility.

*Joseph*, 542 F.3d at 22 n.11 ("[W]hen the Government implores a jury to find the defendant and

his explanation not credible, we think the presentation of that explanation from a qualified expert

would be significant, especially where the explanation is not one with which jurors are likely to

have familiarity.").  Marvel's authorities do not support this erroneous proposition.  *See Nimely*

*v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (expert testimony rejected because the

expert assumed that certain witness statements were accurate and based his entirely analysis on

that determinative assumption, not because the expert's testimony would have clashed with

statements by witnesses); *Lippe v. Bairno Corp.*, 288 B.R. 678, 687 (S.D.N.Y. 2003) (expert

excluded because testimony summarized legal argument and expert testified he saw his role as

counsel to the attorneys).

### 3.     Morrow Did Not Intend to Offer Legal Conclusions

Marvel's argument that Morrow should be barred from this case because he offers legal

conclusions also overreaches.  Morrow's expert report and testimony do not offer a legal

conclusion, with the exception of one stray statement as to "work for hire" at the end of his

report reflecting Morrow's personal belief.  Report at 14.  As Marvel itself emphasizes in its

motion (Mot. at 9-10), Morrow was the first to admit that he is not a legal expert, and had

therefore deleted a reference to "work for hire" from an earlier draft of his report.  Tob. Dec. Ex.

C at 88:13–89:5.  Even if Morrow has offered an improper legal conclusion, this court need only

ignore the legal conclusion and admit the remainder of Morrow's report and testimony.  *See*

*Ebbert v. Nassau County*, 77 Fed. R. Evid. Serv. (Callaghan) 820, 2008 U.S. Dist. LEXIS 74213,

at *38–39 (E.D.N.Y. Sept. 28, 2008).

4.     **Most of Marvel's Arguments Go to the Weight to be Accorded Morrow's Testimony, Not Its Admissibility**

Marvel's arguments, at best, go to the weight to be accorded Morrow's testimony, not its admissibility.  *See POM Wonderful LLC*, 2011 U.S. Dist. LEXIS 1534, at *31-32 (admitting expert report as the "flaws alleged in [the expert] report go to the weight to be given to the surveys, not their admissibility") (McMahon, J.); *Derienzo v. Trek Bicycle Corp.*, 376 F. Supp. 2d 537, 557 (S.D.N.Y. 2005) (criticisms went to the "weight of [the expert] testimony, not its admissibility") (McMahon, J.); *Royal Ins. Co. of Am. v. Joseph Daniel Constr., Inc.*, 208 F. Supp. 2d 423, 426 (S.D.N.Y. 2002) ("Once the thresholds of reliability and relevance are met … any purported weakness in an expert's methodology or conclusion goes to the degree of credibility to be accorded to the evidence, not to … its admissibility.") (McMahon, J.). Moreover, if any part of an expert witness's report or testimony is inadmissible, the appropriate remedy is for the court to exclude from evidence only that portion that is inadmissible and to admit the rest.  *Ebbert*, 77 Fed. R. Evid. Serv. (Callaghan) 820, 2008 U.S. Dist. LEXIS 74213, at *38–39 ("It is not unusual for district courts within the Second Circuit to strike parts of an expert's report and testimony and to retain others.").

II.     **MORROW'S EXPERTISE AND TESTIMONY ARE NOT INADMISSIBLY DUPLICATIVE OF EVANIER'S EXPERTISE AND TESTIMONY**

A.     **Expert Testimony is Not Inadmissibly Duplicative Where the Experts Have Different Backgrounds and Professional Perspectives**

F.R.E. 403 permits a Court to exclude relevant evidence only if "its probative value is *substantially* outweighed … by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  F.R.E. 403 (emphasis added).  Courts will thus sometimes exclude expert testimony that has been rendered redundant.  *See, e.g., F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1257–58 (2d Cir. 1987) (excluding expert testimony

in light of the testimony of four other witnesses on the same issue).  "Testimony on the same

topic by different experts, however, is not needlessly cumulative where the experts will testify

from different professional perspectives."  *Roy Bahamian Ass'n v. QBE Ins. Corp.*, 2010 U.S.

Dist. LEXIS 115308, at *5 (S.D. Fla. Oct. 21, 2010).

      Notably, "[t]he mere presence of overlap, reference to another expert's report or a similar

conclusion[] does not render an expert report unnecessarily 'cumulative' pursuant to FRE 403."

*Banks v. United States*, 93 Fed. Cl. 41, 51 (2010) (allowing three expert witnesses to testify

about shoreline composition when they had different backgrounds).  *See Moore v. Ashland

Chem.*, 126 F.3d 679, 705–06 (5th Cir. 1997), *vacated on other grounds*, 151 F.3d 269 (5th Cir.

1998) (holding that it was an abuse of discretion to exclude a second expert witness when the

second witness would have been more credible and less vulnerable on cross-examination, and

that this error was sufficiently prejudicial to merit a retrial); *Rodriguez v. County of Stanislaus*,

2010 U.S. Dist. LEXIS 80600, at *3–8 (E.D. Cal. Jul 8, 2010) (allowing eleven experts to testify

despite some overlap and refusing to limit testimony to one expert on each issue when the

experts had different credentials, backgrounds and experience); *Estates of Tobin v. SmithKline

Beecham Pharms.*, 2001 U.S. Dist. LEXIS 26398, at *6 (D. Wyo. May 8, 2001) (permitting three

experts to testify where "they will each be offering unique testimony based on the varying

qualifications and their individual analysis of the evidence").  This is especially the case where,

as here, the experts rely on different evidence.  *See Johnson v. United States*, 780 F.2d 902, 906

(11th Cir. 1986) (holding that it was an abuse of discretion to exclude a third expert's testimony

as cumulative when the third expert had different qualifications, and  relied on evidence not used

by the other experts).

15

### B.     Morrow's Testimony Is Different From Evanier's

Even a cursory examination of the Evanier and Morrow reports demonstrates that they have little in common.  Evanier's testimony is focused more on the manner in which Kirby created comic books and characters between 1958 to 1963, while Morrow's report focuses more on the history of Marvel/Kirby relationship before, during and after the 1958-1963 Period. Report at 1; Tob. Dec. Ex. C at 53:6–7.  Marvel can point to only five isolated instances where the Morrow and Evanier reports overlap. Mot. at 4–5.  Two of those instances concern Kirby's pre-Marvel history in fleshing out the historical background of this case.  The remaining three instances (the Lee-Kirby working relationship, the legends on the backs of Marvel's checks, and how Kirby was paid) are central to the "work for hire" issue, and are properly discussed by Evanier and Morrow from their different professional perspectives.

Marvel also makes much ado over the fact that these five instances supposedly have similar wording, which naturally result from the limited number of ways to present basic facts.[3] Such commonalities reasonably result from the topics in this case.

### C.     Morrow's Testimony Derives From a Different Background and Professional Perspective Than Evanier's

Morrow's testimony is not redundant of Evanier's because it comes from a different professional perspective.  *See Johnson,* 780 F.2d at 906; *Roy Bahamian Ass'n*, 2010 U.S. Dist.

---

[3] For example, both Morrow's and Evanier's summaries of Kirby's work at the beginning of his career used similar words and names – "1935," "1940," "worked," "Max Fleischer," "Lincoln Features Syndicate," "Universal Phoenix Syndicate," "Fox Comics," "freelance," "income" and "comic books," or using synonyms like "additional"/"supplement" and "companies"/ "publishers."  Similarly, both use the words "Kirby," "dialogue," "notes, "margin," or "character" to describe Kirby's work; and both use the words "Marvel," "legend," "legal," "checks," "freelancers" or "cash" to discuss the legends on the backs of Marvel's checks.  Both use the words "Kirby," "Marvel," "office," "home," "paid," "expenses," "salary," or "by the page" in describing how Kirby worked and was paid.  And, in the context of "Thor," both use the words "1942," "Kirby," "Thor," "Villain from Valhalla," "Adventure Comics," "Tales of the Unexpected," "helmet" or "hammer" to describe the antecedents of *Thor* in Kirby's prior work.

LEXIS 115308, at *5; *see also* section II A., *supra*.  Morrow's background is very different than

Evanier's.  Evanier is a practicing comic book creator, and a published Kirby historian, who

worked for Kirby commencing in 1969; Morrow is a publisher, who obtained scholarly expertise

in the course of publishing *The Jack Kirby Collector*, and did not meet Kirby until 1991.  Report

at 1–2; Tob. Dec. Ex. D (Evanier Report) at 1–2; Ex. E.  Evanier entered the creative side of the

comic book industry by working for Kirby; Morrow worked in advertising and graphic design.

Evanier Report at 1–2; Report at 1.  Morrow entered the comic book field only after Kirby's

death in 1994, when he began to publish and edit *The Jack Kirby Collector*, and undertook an

extensive study of Kirby's life and work as part of that project.  Report at 1–2.  Furthermore,

under Morrow' aegis, TwoMorrows Publishing, has published a wide array of books and

magazines that cover virtually every aspect of the comic book industry.  Report at 2–3.

As Morrow's expert report and testimony and Evanier's expert report and testimony

substantially diverge, and Morrow and Evanier, with decidedly different backgrounds, offer

different professional perspectives on Kirby, their expert reports and testimony are not

needlessly cumulative, and neither should be excluded on this basis.  Both will substantially

assist the trier of fact.

## CONCLUSION

For the foregoing reasons, Defendants/Counterclaim-Plaintiffs respectfully request that

Plaintiffs' motion to exclude the expert report and testimony of John Morrow be denied.

Dated: March 25, 2011                     Respectfully submitted,
                                          TOBEROFF & ASSOCIATES, P.C.

                                          /s/ Marc Toberoff
                                          _____
                                          Marc Toberoff (MT 4862)

                                          Attorneys for defendants
                                          Lisa R. Kirby, Barbara J. Kirby, Neal L.
                                          Kirby and Susan M. Kirby

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served electronically by e-mail and by first class mail on those parties not registered for ECF pursuant to the rules of this court.

Dated: March 25, 2011            TOBEROFF & ASSOCIATES, P.C.

/s/ Marc Toberoff
_____
Marc Toberoff (MT 4862)

Attorneys for defendants
Lisa R. Kirby, Barbara J. Kirby, Neal L.
Kirby and Susan M. Kirby

18