# EXHIBIT KKK

# The Comics Journal

4359 Cornell Road, Agoura, CA 91301
(818) 706-7606

Aug. 5, 1986

Paul Levine
1880 Century Park East, Suite 411
Los Angeles, CA   90067

Dear Mr. Levine:

    Pursuant to our conversation today, I'm sending you a copy of the transcript of my conversation with Arthur Proper, tax technician at the Instructions and Interpretations Bureau of the Sales Tax Department, New York State.

    I hope the information can be useful to you.

Sincerely yours,

*Joe J. Sacco*

Joe J. Sacco
News writer

K 01572

Transcripts of interview with
Arthur Proper, tax technician of Sales Tax Dept, New York State.
(518) 457-6949

Sacco? The question here involves Marvel Comics and some artwork being withheld from an artist. He won't sign an agreement to get back his artwork over a creatorship dispute. He acknowledges that Marvel owns the copyright to the work but he wants the physical work itself -- the physical artwork. Marvel is on record as saying they own the physical artwork itself. And a couple of years ago someone at the Comics Journal called up a Howard Glaser, he was assistant director of public relations for the New York State Tax Department, are you familiar with him?

Proper: No, not really.

S: He said, this is a quote, "If it's clear they own the art, they owe sales tax." Now, if they're claiming ownership of the art, what I'm wondering is, wouldn't they had to have paid sales tax on it when they bought it?

P: First of all, what are they doing with the artwork, and whereabouts is the artwork being delivered?

S: What are they doing with the artwork? They're just holding it. They had been returning the artwork to artists after the artists had signed a retroactive work for hire agreement. But for this specific individual, they're withholding the artwork.

P: Well, I don't know what kind of agreement they entered into, but let's give you background about artwork itself. Artwork that's being used to produce a publication that is for sale has been identified by the Taxing Authority as production equipment. What this means, let's say we're going to use the artwork to produce the comic magazine which was going to be sold. Under New York State statutes that provide for 1115 a 12 (?), they provide exemption for machinery and equipment used directly and predominantly in the production of tangible personal property for a sale by manufacturing processing, etc., etc. If the agreement is such that the person is buying artwork for use to produce a publication that is for sale, he may buy that as production equipment by furnishing his supplyer with a properly completed Exempt Use Certificate, of form ST 121. Once the supplier has received that Exempt Use Certificate, if he's in New York City the artwork would be subject to the 4 percent tax. Outside New York City it would be zero percent tax. It all depends on what type of agreement they have, you know, is the person buying artwork or is he buying reproduction rights....

S: As far as I know --

P: Assuming the normal train of events, the normal activities that the publisher is buying artwork which he is going to produce something for sale. In that case, it's probably going to be identified as production equipment. Go one step further, the vendor of the artwork, or the person who has the artwork, if the vendor doesn't receive a properly completed Exempt Use Certificate he has no alternative but to collect the sales tax on the full rate tax and effect where the artwork is being delivered. For instance, if I as a publisher didn't provide you as a vendor of the artwork with a Exempt Use Certificate and you were delivering it to me in Albany New York, it would be 7 percent. If you delivered it in New York City it would be 8 and quarter percent. Likewise, if I provided you with the Exempt Use Certificate

K 01573

then you wouldn't have to collect any sales tax from me here in New York -- in Albany, New York, because its exempt from the statewide tax, the upstate tax, but if I...took possession of it in New York City you'd have to charge me a sales tax of 4 percent.

S: I see, but in either case there would be a sales tax?

P: No. Not if you deliver it outside of New York City and I give you the proper Exempt Use Certificate. Then it would be zero percent. If I don't give you anything, then you have to assume that it's not being purchased for production purposes and that it's subject to a tax, and you collect the tax based on the point of delivery.

S: You have to understand that I'm a lay person, so it's hard for me to follow some of the things you're saying.

P: We could do it again if you want.

S: Let me set up the scenario. A fellow sent in his artwork to Marvel Comics. Apparantly there was no real contracts involved... he did sign copyright releases, in other words, Marvel owns the copyright to the work he did. However, he never signed anything that said that Marvel actually owned the artwork itself.

P: Let's go back to the definition of a sale. A sale is considered --one sale, tangible part of the sale, property (?)--like if I give something to you, you give me the money. That's a sale. The license to use is a sale. In other words, I have something that I own and I allow you to use it. That's a sale. Or barter, exchange, etc., etc., they're all sales. So like i said before not having the agreement, not knowing the ticklers of the agreement, I couldn't make any decision on the agreement. I can only tell you the state's position with relation to the artwork itself, under a certain assumption. Assuming that there was some kind of agreement that created a sale, under a definition of a sale. Which means license to use, barter exchange, and so forth and so on, for compensation. Once I give it to you and give you the license to use it for a period of time or copyright or whatever it is depending on that type of agreement, then we still have a sale type thing.

S: In which case, Marvel would had to have paid sales tax --

P: Let's say you did the artwork, and I'm Marvel. Let's say that the transaction we entered into constitutdd a sale. Now you send me over the artwork. I have this artwork in my possession. You charge me X amount of dollars for the use of that artwork. And I say to you, okay, here's money, but i didn't pay you the sales tax. And I didn't give you any Exemption Certificate. At this point there, you would still have to come back to me to try to get the sales tax. Because the sales tax is due because I didn't give you any Exemption Certificate. A second scenario: You send over the artwork, I send back the priceof the artwork plus I send you an Exempt Use Certificate. Now if I'm outside of New York City there wouldn't be any sales tax to do. You would keep the Exempt Use Certificate on file as a basis for not collecting a tax. If I'm inside New York City, then you're delivereing to me in New York City and then you'd have to collect the sales tax of 4 percent.

S: Because it's New York City.

Powers transcripts, p. 3

P: Because it's New York City, right. Or, sometimes some Publishers have what they call Direct Pay Permits, then I could give you a Direct Pay Permit, and not collect a tax, but in any event in both cases I have to give you some kind of exemption certificate.

S: In order to not pay a certain amount.

P: But there again, this is under the assumption that the agreement constituted a sale. And I don't know what kind of agreement they had.

S. It's sort of unclear. They do have copyright ownership, but as far as owning the physical artwork itself -- actually owning the cartoons he drew -- that's--

P: I can give you a license to use, and say you can use this to the year 1999, but I want my original artwork back. So we have a license to use. That's under the definition of a sale. It doesn't sound like he's selling it outright, it sound like he's...(?)...the license owner. But then again, I couldn't comment on that because I don't know what the agreements say.

S. What Marvel's trying to do is argue that they bought time and not artwork --

P: No. They bought artwork. If I sent something over there, that pyhsically represented artwork, that's what we bought. It wouldn't matter if for instance I came over to their place and they put a blank piece of paper in front of me and I drew pictures on that paper, and I'm charging for my labor. At this point here, what I've done is serviced their tangible personal property. And it would be subject to tax unless it meets the criteria that we talked about before.

S: That's what they're claiming. That they sent him the utensils, they sent him paper --

P: It doesn't matter. Then I'm servicing their tangible personal property.

S: So it still counts that they purchased artwork?

P: Right. If I sent you over a blank piece of paper and said, here's my blank piece of paper, here's the pencils, here's some artists' materials, whatever it is, you draw me a picture and send it back over to me. You wouldn then thake my blank piece of paper, and you service that piece of paper. I may not have bought tangible personal property, but I bought services that were subject to the tax. Unless I could give you some kind of exemption certificate.

S: So what it comes down to is, if they bought artwork, and if they didn't provide any exemption forms for it, they would have to pay a tax.

P: They have a taxable situation, yes, sir.

S: And if they bought this art in 1966, for instance, or 1967, if they bought it 30 years ago --

P: If they bought it 1965, before 1965, the sales tax did not come into existance until Aug. 1, 1965, so prior to that wouldn't

K 01575

count.

S: I see, but anything after that would count.

P: It could have a sales tax liability. Again, I couldn't comment on it because I don't know what the agreement reads and all the other activities involved with it. I'm talking in generalities. ...(?)the sale of artwork, is the sale of tangible personal property...(?)properly completed exemption certificate.

S: So the certificates do come into it very importantly.

P: What the tax law tells us is that the vendor is required to collect the tax unless he is provided with a properly completed exemption certificate as described by the tax commission. And that's found in Section 1133 under Article 28 in Sales Tax Law.

S: Can I get some of this information from you? Is it possible to get some Xerxox's of some of these laws?

P. Well, that would take quite a while. (Laughter.)

S: Do you have an enforcement department. If it seems Marvel didn't provide any exemption forms and didn't pay sales tax, and now they claim ownership of the art, I'm wondering --

P: A lot of the circumstances depend. If it's prevelant, then your time period is expired if Marvel, say, is a registered vendor and has filed sales tax ...(?), unless there's something to do with fraud or something like that. If we audited them, and they'd never reported it, the time element may have expired for any type of action the governemnt could do. Yes, we do have auditors that go out and audit tax returns, but they don't study enforcemnt type things; it's a normal, everyday activity.

S: Just in general terms, if a comic book publisher buys services that rendered artwork, but gives back the artwork, never claims to own the artwork, in New York City, would he still owe --

P: ...(?) license to use, rental, barter, exchange, would fall in the is definition of a sale. In other words, you rent something to me to use that I can use for a period of time is tangible personal personal property -- we're going to give that back to you. That's under the definition of sale. If I give you a license to use, and I can use it for a certain number of times...there again, that's under the definition of a sale, even though I'm going to return it to you....(?) here's the license to usethis for a year of publications for the next five publications, and after that you have to return it to me, you know, something like that.

S: So sale tax still applies.

P: That would apply. Like I said I can't comment on the specific agreement, I can only tell you what the general position is. Not on anything specific.

S: Right. So ownership of the physical artwork itself has nothing to do withthe tax?

K 01576

P: You can own the artwork, say to me you can use it a number of times, now you have a sale, something to tax unless I provide you with some kind of exemption certificate.

S: Now who goes ahead, say between the individual and Marvel Comics, who pays the sales tax. Who arranges all that?

P: The vendor is the person required to pay the tax.

S: And that would be the artist.

P: That would be the artist. He is required to collect the tax. In the tax law, what they did, is creat a Catch 22 situation. here again, that's Section 1132, 1133, ...what they said is that the vendor, when he's collecting the price of the article, whatever he's selling, also should collect the sales tax at that point there. And he's liable for the tax. And even if he didn't collect the tax he still would be liable for that tax. And he would take any action for the collection of that tax just as if the person had paid him for the article itself (?). This guy owes me $200 and he didn't pay the tax, and (I say) I'm sorry that the guy didn't pay the tax so I can't remit it, therefore that relieve's me of my liability -- no, that's not true. That $14 that's due became part of the $200, it's still $214, it's all intermingled, became part of the purchase price. Now he has to go back after the vendor to take any action just as if the vendor hadn't paid him the $200. That's from the vendor's liability. From the purchaser's liability, what it says there, if the vendor fails to collect the tax it doesn't relieve the purchaser of the responsibility for remitting the tax. So what they have to do on their sales tax returnn is remit a use tax in that case, if it is a taxable situation. If you look at it from both sides of the fence, what they did is say, vendor, you're liable, we can go to you and eg get it. Purchaser, you're liable we can go to you to get it. They don't k care which one they get it faxm from, as long as the tax has been paid. So they'll go to both parties, they could very well assess both parties for outstanding tax.

S: I see. So ax both parties could be liable for that tax that wasn't paid.

P: ...(?) LIke I said, it's a xxx Catch 22 situation. Whereas the vendor cant say the purchaser never paid it, therefore I don't have to remit it. And the purchase can't say, well the vendor never billed us so I don't have to pay it.

S: Who would the Tax Dept. go after in those situations?

P: They'd go after both of them. Primarily, they catch them most times on the vendor's audit, but if they're auditing the vendor they'll assess the vendor for it, if they're auditing the purchaser they'll assess the purchaser for it.