# EXHIBIT 6

DONALD S. ENGEL
FRANCIS C. PIZZULLI
ENGEL & ENGEL
9665 Wilshire Boulevard
Eighth Floor
Beverly Hills, California   90212

Telephone:   (213) 550-7178

Attorneys for Defendants STAN LEE,
SELLULOID PRODUCTIONS, INC., PETER
SHANABERG, MORRIE EISEMAN and
PETER COFFRIN

RECEIVED

NOV 17 1980

Davidson & Holmes

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| STEPHEN GERBER, <br><br> Plaintiff, <br><br> vs. <br><br> CADENCE INDUSTRIES CORPORA-<br>TION, a corporation; MARVEL<br>PRODUCTIONS, INC., a<br>corporation; STAN LEE;<br>SELLULOID PRODUCTIONS, INC.,<br>an association, PETER<br>SHANABERG; MORRIE EISEMAN;<br>PETER COFFRIN, <br><br> Defendants. | Case No.:   80 3840 DVK <br><br> NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DONALD S. ENGEL <br><br> Fed. R. Civ. P. 12(b)(1) <br><br> DATE:   December 8, 1980 <br> TIME:   10:00 a.m. |

TO PLAINTIFF STEPHEN GERBER AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 8, 1980 at 10:00 a.m. or as soon thereafter as counsel may be heard, in the courtroom of the Honorable David V. Kenyon, Judge of the United States District Court, located at 312 North Spring Street, Los Angeles, California, defendants STAN LEE, SELLULOID PRODUCTIONS, INC., PETER SHANABERG, MORRIE EISEMAN and PETER COFFRIN will move this

EL & ENGEL

**ME00820**

Court to dismiss the complaint on the grounds that this Court lacks jurisdiction of the subject matter of the claim.

This motion is made on the ground that the purported claim of copyright infringement, the only basis alleged in the complaint for this Court's jurisdiction, is not a claim for copyright infringement but is a cause of action to determine contract rights and title in and to a copyright.

The motion is based upon the attached memorandum of points and authorities, the declaration of Donald S. Engel and the pleadings, records and documents filed herein.

DATED:    November 12, 1980          ENGEL & ENGEL
                                     DONALD S. ENGEL
                                     FRANCIS C. PIZZULLI


By _____
                                     Donald S. Engel
                                     A member of the firm of Engel &
                                     Engel, attorneys for Defendants
                                     Stan Lee, Selluloid Productions,
                                     Inc., Peter Shanaberg, Morrie
                                     Eiseman and Peter Coffrin

EL & ENGEL

-2-

**ME00821**

MEMORANDUM OF POINTS AND AUTHORITIES

INTRODUCTORY STATEMENT

This is a motion by some of the defendants to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure on the grounds that this Court lacks jurisdiction over the subject matter of the dispute and because the purported copyright infringement claim cannot be maintained absent the ownership by plaintiff of a registered copyright.  Although plaintiff asserts one claim for copyright infringement, the only basis of jurisdiction alleged, the complaint read as a whole in light of the undisputed background facts demonstrates that the actual dispute among the parties concerns the contractual relationship between plaintiff and the defendants who originated the character known as "Howard the Duck."  It is a dispute over title to the property and the copyrights therein rather than a copyright infringement action.  Therefore, this Court lacks jurisdiction to adjudicate the claims.

FACTUAL BACKGROUND

Plaintiff Stephen Gerber ("Gerber") commenced this action on August 29, 1980 by the filing of a complaint against defendants Cadence Industries Corporation ("Cadence"), Marvel Productions, Inc., Stan Lee ("Lee"), Selluloid Productions, Inc. ("Selluloid"), Peter Shanaberg ("Shanaberg"), Morrie Eiseman ("Eiseman") and Peter Coffrin ("Coffrin").  Service was effected

EL & ENGEL

-3-

ME00822

upon several of the defendants on or about October 2, 1980. Marvel Productions, Inc. is a corporation which had nothing to do with any of the transactions alleged in the complaint. It was Marvel Comics Group, a division of Cadence Industries Corporation, and its predecessor engaged in the business of creating, publishing and distributing comic magazines and in business activities related thereto that employed Gerber. Therefore, the designation "Marvel" in this memorandum will refer to the Marvel Comics Group.

In the complaint, Gerber alleges that he is a writer and creator of comic book stories and literary properties for television, that Cadence, Marvel and Lee (sometimes hereinafter together referred to as "the Marvel defendants") are engaged in the comic book and television industry and that Selluloid, Shana-berg, Eiseman and Coffrin (sometimes hereinafter together referred to as "the Selluloid defendants") are engaged in the business of producing television and theatrical motion pictures. The basic subject matter of the complaint is a comic book character known as "Howard the Duck" ("Howard"), which Gerber alleges he created and wrote in the latter part of 1975. Complaint, ¶8. It is further alleged that the various "Howard the Duck" comic book stories, including the character Howard, were duly copy-righted by defendant Marvel. Complaint, ¶9.

Gerber further alleges that he was a free-lance writer and independent contractor who submitted to Marvel, and allowed Marvel to publish and republish in comic book magazine form, stories

-4-

L & ENGEL

**ME00823**

depicting Howard created by him. Complaint, ¶10. He alleges that all other rights in the character Howard and the comic book stories were retained by him, that he is the holder of the "beneficial interest" in the copyrights and that Marvel, as trustee, holds "legal title" to the copyrights for his benefit. Id.

From 1975 through 1977, it is alleged that Marvel published and distributed comic book stories depicting Howard "in strict conformity with the provisions of the Copyright Laws of the United States of America." Complaint, ¶11. During 1980, it is alleged that Marvel and Lee purported to authorize the Selluloid defendants to utilize the character Howard in a full length motion picture or television show despite notice from Gerber that they had no right to do so. Complaint, ¶12. Despite appropriate notice from Gerber, it is alleged that the defendants have refused to acknowledge his rights, and have refused to cease and desist from proceeding with their plans and from holding themselves out as having the right to utilize the character Howard for motion picture or television uses. Complaint, ¶13.

The complaint contains claims for relief based on: (1) copyright infringement, (2) declaratory relief, (3) unfair competition, (4) conversion, (5) breach of implied contract, and (6) breach of trust and confidence. The moving defendants have submitted in connection with this motion a declaration of Donald S. Engel which contains various exhibits comprised of copies of documents demonstrating the following facts:

EL & ENGEL

-5-

ME00824

1.    Howard first appeared in the December, 1973 issue of a comic magazine published by Marvel entitled "Adventure into Fear" with "The Man-Thing" and not in 1975 in a comic magazine based primarily upon the character Howard as alleged in the complaint.  See Exhibit A.  (All references to "Exhibits" ("Ex.") are to the exhibits attached to the declaration of Donald S. Engel ("Engel Dec.") attached hereto.)

2.    The copyright notice in that comic magazine was in the name of Marvel (see Ex. A, p.3) and it was the general practice to copyright all comic magazines containing the Howard character in the name of Marvel.  See Ex. B.

3.    Marvel paid Gerber for the work performed for Marvel Comics Group with a check containing the following legend on the back:

By endorsement of this check, I, the payee, acknowledge full payment [for my] employment by Magazine Management Company, Inc. and for my assignment to it of any copyright, trademark and any other rights in or related to the material, and including my assignment of any rights to renewal copyright.

Ex. C.

4.    On or about March 18, 1977, Gerber and Marvel entered into an agreement relating to services to be performed by Gerber in connection with the production by Marvel of a comic strip for syndication use, which agreement contained a paragraph

EL & ENGEL

-6-

ME00825

giving to Marvel "all rights of every kind and nature" in and to the material to be produced by Gerber, including the right to copyright the same in the name of Marvel and to exploit the material on television, motion pictures and radio.  Ex. D.

5.   On or about October 7, 1977, Gerber and Marvel entered into an agreement in which Gerber was designated as "the Employee" pursuant to which Marvel employed Gerber to render services as a writer for magazines theretofore and thereafter published by Marvel.  That agreement was in the form of a typical employment agreement, providing for compensation, vacation time and employee benefits.  It contained several special provisions relating to the character Howard, including a provision that, in the event of a license for a film, television or motion picture adaptation of Howard, Marvel agreed to "recommend" to the producer that Gerber be used as "script and/or story consultant to preserve the integrity of the licensed character."  That agreement also contained a provision to the effect that Gerber granted to Marvel the sole and exclusive right to all of the material delivered by Gerber to Marvel, including the exclusive right to secure copyrights in the material throughout the world and all film and dramatic rights of every kind.  Ex. E.

6.   On or about March 12, 1976, Marvel granted to Gerber a license to use the character Howard solely for the distribution of "HOWARD THE DUCK BUTTONS TO BE SOLD VIA MAIL ORDER"

/////

/////

-7-

EL & ENGEL

ME00826

in the United States for a term of fifteen months. Pursuant to that licensing agreement, Gerber had to pay to Marvel for the rights granted thereunder five percent of all gross sales by Gerber of the licensed articles. Among other things, Gerber agreed that on each and every article licensed under the agreement there would appear a copyright notice, with the year of first use, in the name of Marvel. Ex. F.

7. In or about May of 1978, Marvel terminated Gerber's employment. See Ex. I.

8. A dispute arose in 1978 concerning the ownership of the rights in and to the character Howard. Exs. G, H & J. It was, apparently, Gerber's position that Marvel had those rights at the time but that, pursuant to the terms of the agreement between them, Marvel's rights terminated when Gerber's employment terminated. See Engel Dec., ¶ 11.

With respect to this motion, the resolution of the factual discrepancies and the dispute between the plaintiff and the defendants over the rights in and to the character Howard are not relevant. What is relevant is that this litigation centers about that single determinative issue.

Stated briefly, the relatively undisputed facts shown by the documents are as follows:

Gerber in 1973 or 1975 participated in some manner in

EL & ENGEL

-8-

ME00827

the creation of the character Howard which first appeared in Marvel's comic magazines. Gerber was paid by Marvel by checks containing an endorsement which purported to grant to Marvel all rights, including the copyright, in and to the character Howard and the comic strips relating to Howard and, subsequently, contractual arrangements of "employment" were entered into between Gerber and Marvel which also purported to grant to Marvel all such rights in and to Howard. At one point, Gerber took a license from Marvel in order to manufacture and sell on his own account buttons depicting Howard and agreed to pay a royalty to Marvel for all such uses of Howard and to include a copyright notice in the name of Marvel on all items created by Gerber which depicted Howard. Thereafter, Gerber's employment by Marvel was terminated and, recently, Marvel has entered into an agreement with the Selluloid defendants pursuant to which a motion picture utilizing Howard may be produced. Ex. K.

I.  THIS COURT LACKS JURISDICTION OVER THE SUBJECT MATTER OF THE DISPUTE.

Although the federal courts have exclusive jurisdiction over actions for copyright infringement, it is clear that not every action purportedly based upon rights derived from the Copyright Act is necessarily an action for copyright infringement "arising under" the Copyright Act. See 28 U.S.C. § 1338(a).

It has become increasingly clear from the cases that, where the essential dispute between the parties is one of contract

-9-

ME00828

interpretation, the federal courts have no jurisdiction over the subject matter. T.B. Harms Co. v. Eliscu, 339 F.2d 823 (2d Cir. 1964), cert. denied, 381 U.S. 915 (1964); Stepdesign, Inc. v. Research Media, Inc., 442 F. Supp. 32 (S.D.N.Y. 1977); Muse v. Mellin, 212 F. Supp. 315 (S.D.N.Y. 1962), affirmed, 339 F.2d 888 (2d Cir. 1964).

The explanation for these cases, and others holding to the same effect, is that the exclusive jurisdiction of the federal courts in true copyright infringement actions does not prevent state courts from determining issues of copyright in appropriate contract actions. As explained by a leading authority:

The subject matter of a contract may relate to a work in statutory copyright or to rights derived thereunder. Nevertheless, jurisdiction lies with the state courts in an action to enforce or to invalidate such a contract, since contractual rights are a matter of state law. The fact that questions of copyright law may also have to be determined in such an action does not oust state jurisdiction.

3 Nimmer on Copyright ¶ 12.01[A], at 12-3 (1979).

In T. B. Harms Co. v. Eliscu, supra, Judge Friendly stated:

[A]n action "arises under" the Copyright Act if

ME00829

and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement . . . or asserts a claim requiring construction of the Act, . . . or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim. The general interest that copyrights, like other forms of property, should be enjoyed by their true owner is not enough to meet this last test.

339 F.2d at 828.

The foregoing passage from the Eliscu case was cited with approval in Simon & Flynn, Inc. v. Time, Inc., 513 F.2d 832, 833-34 (2d Cir. 1975) and more recently in Hall v. Inner City Records, Copyright L. Rep. ¶25,163 (S.D.N.Y. June 19, 1980).

In other recent cases which have consistently followed the rule of Eliscu, the plaintiff has alleged at least one cause of action for copyright infringement invoking the standard remedies and procedures but the federal courts have dismissed the actions for lack of jurisdiction. See, e.g., Elan Associates, Ltd. v. Quackenbush Music, Ltd., 339 F.Supp. 461 (S.D.N.Y. 1972) (also quoting Judge Friendly's Eliscu statement in part); Newman v. Thomas Y. Crowell, Patent, Trademark and Copyright Journal, February 28, 1980, No. 468 (S.D.N.Y. November 9, 1979); Stepdesign,

SL & ENGEL

-11-

ME00830

Inc. v. Research Media, Inc., supra; Hall v. Inner City Records, supra.

These recent developments were presaged by older cases which first recognized the problems involved in separating out the true copyright case from the general contract or assignment dispute which incidentally involved some copyright issues. For example, in Piantadosi v. Loew's, Inc., 137 F.2d 534, 536-37 (9th Cir. 1943), the court concluded that a publisher who had received an assignment from one of the co-authors "became at least a co-owner of the copyright;" therefore, summary judgment in favor of defendants pursuant to Rule 56(c) of the Federal Rules of Civil Procedure was affirmed since there was no copyright infringement. In a case involving a similar fact pattern, the Second Circuit dismissed the counts of plaintiffs' amended complaint for copyright infringement, surmising that since the complaint alleges that one of the co-holders of the copyright had written the allegedly infringing material he "must have licensed" the defendants to use the material. McKay v. Columbia Broadcasting System, Inc., 324 F.2d 762, 763 (2d Cir. 1963).

In Cresci v. Music Publishers Holding Corp., 210 F. Supp. 253 (S.D.N.Y. 1962), defendants moved to dismiss the amended complaint for lack of subject matter jurisdiction. The case involved a series of assignments relating to certain copyrights and plaintiff had claimed jurisdiction under 28 U.S.C. § 1338(a) & (b) on the grounds of a claim arising under the Copyright Act joined with a substantial and related claim for unfair competition. The court held that a plaintiff invoking federal jurisdiction is required to

EL & ENGEL

-12-

ME00831

allege affirmatively in his complaint facts which show that such jurisdiction exists and that a federal court has no original jurisdiction to determine a claim of title to a copyright.  Id. at 256-57.

The common pattern of all of these cases holding that there is no federal subject matter jurisdiction is the bringing of an action alleging what is essentially prospective copyright infringement by a party claiming ownership of copyright against another party who may have some interest in the same copyright by assignment, contract or otherwise.  The plaintiff generally asserts, in addition to the copyright infringement claim, causes of action for declaratory judgment and, sometimes, various contract and related unfair competition claims.  Even in those cases in which the plaintiff was the record owner of all or part of the copyright at the time of the commencement of the action, it was held that there was no federal jurisdiction.

In the instant case, Gerber admits that Marvel, not he, has been the record owner of, and has exercised all rights in, the copyrights at issue.  Complaint ¶¶9, 11.  The complaint further alleges that:

Gerber submitted and allowed Marvel, as a freelance writer and independent contractor, to publish and re-publish in comic book magazine form stories written and created by Gerber depicting the character Howard.

///

-13-

EL & ENGEL

**ME00832**

Complaint, ¶10.  Thus, the Court need not surmise whether Marvel was authorized to use the copyrighted matter which is the subject of this litigation.  Gerber alleges that he granted such authorization to Marvel and there can be no copyright infringement.  Clearly, what Gerber is seeking is a determination and judgment which would transfer ownership of the copyrights in Howard to him and this Court does not have jurisdiction to determine such issue of title.

The following analysis from Elan Associates v. Quackenbush Music, supra, is highly significant:

> The court finds that it lacks subject matter jurisdiction to determine a claim which essentially involves a dispute as to the ownership rights to copyrights. . . . [Quotation of Judge Friendly's statement from Eliscu, quoted above, omitted.] . . . Thus, the federal courts lack jurisdiction to determine questions of title dependent on general common law or equitable principles which must be resolved in the appropriate state court. . . . . . . .In short, although the action is cast in terms of infringement, in reality the suit is merely one to establish valid title by seeking to enforce a contract between an author and a publisher.  Therefore, the case is not one which arises under the copyright laws so as to invoke the jurisdiction of this court. . . .

339 F. Supp. at 462.

EL & ENGEL

-14-

ME00833

: There appears to be no doubt that the claims of the plaintiff in this case do not arise under the Copyright Act but, rather, are attempts to interpret and enforce the contract rights claimed by Gerber as the alleged creator of the character Howard. As stated in the early case of Danks v. Gordon, 272 F. 821, 827 (2d Cir. 1921):

> If the suit is one brought to enforce a right based upon a contract which relates to a copyright production, the suit is one which arises out of the contract and is not one arising under the copyright statute, and the federal courts are without jurisdiction.

The later cases have made it clear that this is so even if, should the plaintiff win the action, there could occur subsequent or prospective copyright infringements. Particularly relevant is the holding in Stepdesign, supra. In Stepdesign the plaintiff claimed to have prepared the two publications at issue, both of which were copyrighted by defendant pursuant to assignments of the copyrights and publishing rights contained in two separate agreements between the parties. Plaintiff commenced action in the federal courts alleging that the copyrights had reverted to it and sought an injunction against any future infringement. The court, after quoting from the Eliscu case, stated:

> Thus the fundamental controversy involves interpretation of the two agreements to determine whether the right of reversion exists, and if so whether in fact there has been a breach of either agreement which

L & ENGEL

-15-

ME00834

would warrant reversion of the copyrights to the plaintiff. The primary and controlling purpose of the complaint is to reestablish plaintiff, under its claimed right of reversion for an alleged breach, as owner of the copyrights in the First and Second Works. As such, the complaint clearly does not fall within the areas described by Judge Friendly [in Eliscu] as affording federal jurisdiction.

442 F. Supp. at 34.

The instant case is virtually on all fours with Stepdesign and this Court has no jurisdiction over the controversy. The plaintiff in each case seeks merely an interpretation by the Court of agreements. In Stepdesign plaintiff claimed a reversion of the copyrights because of an alleged breach of the agreements. In this case, Gerber claims that the copyright belongs to him under his interpretation of his contractual relationship with Marvel.

Although the extrinsic facts have some relevance in casting a true light upon the transactions between the parties in this action, it is reasonably clear from a reading of the complaint itself that Gerber is seeking in this action merely to enforce his interpretation of the contracts and of the relationship between the parties. He admits that the copyright with respect to the character Howard was secured by Marvel. He further alleges, in order to make colorable copyright infringement claims, that Marvel

ME00835

has appropriately protected that copyright to the date of the action.  The only allegation of actual copyright infringement revolves around an agreement entered into "sometime during 1980" pursuant to which the copyrights now held in the name of Marvel would be used to create a derivative work "in a visual media" at some time in the future.  Complaint, ¶¶16, 18.

The second claim for relief is for a declaratory judgment to the effect that Gerber owns the title in the copyright and that "Marvel must immediately assign and convey over to Gerber" the copyright and all other interests Marvel has in the character Howard.  Complaint, ¶27 (g).  The third claim is for "unfair competition" based upon the previous allegations and the fourth claim, for "conversion," alleges that the defendants "exercised unlawful dominion and control over the copyright."  Complaint, ¶37. The last two claims are for breach of implied contract and breach of trust based upon Marvel's use of the character Howard "without obtaining the consent of Gerber or compensating him and granting him public credit."  Complaint, ¶¶44, 52.  These claims make it clear that the instant action is not for copyright infringement but is an action to enforce Gerber's view of the contractual and business relationships between him and Marvel.

Since there is no diversity jurisdiction in this action, jurisdiction over all of these claims must be asserted, if at all, upon the theory of copyright infringement and pendent jurisidiction. As demonstrated clearly by the foregoing cases, Gerber cannot prevail on this theory and the  complaint should be dismissed

ME00836

forthwith for lack of subject matter jurisdiction.

II.    THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFF HOLDS NO REGISTERED COPYRIGHT.

Ownership of a <u>registered copyright</u> is an absolute condition precedent to the filing in the federal court of an infringement action.    <u>Vacheron & Constantin-Le Coultre Watches, Inc. v. Benris Watch Co.</u>, 260 F.2d 637, 639-41 (2d Cir. 1958); <u>G.P.Putnam's Sons v. Lancer Books, Inc.</u>, 251 F.Supp. 210 (S.D.N.Y. 1966); <u>Grove Press, Inc., v. Greenleaf Publishing Co.</u>, 247 F.Supp. 518 (S.D.N.Y. 1965); <u>Algonquin Music, Inc. v. Mills Music, Inc.</u>, 93 F.Supp. 268 (S.D.N.Y. 1950).    The new Copyright Act contains the same requirement.

The requirement of a registered copyright is not merely a procedural prerequisite in the instant case because, in fact, plaintiff Gerber admits that Marvel acquired the copyrights originally and has used them ever since.    Moreover, although not pleaded in the complaint, it is absolutely clear that the contractual documents between the parties expressly state, over and over again, that Marvel owns all rights in and to the copyrights in question.    See Exs. C, D & E.

CONCLUSION

For the foregoing reasons, the complaint should be dismissed
///
///

L & ENGEL

-18-

ME00837

for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure.

DATED:   November 12, 1980          Respectfully submitted,

ENGEL & ENGEL

By_____
          DONALD S. ENGEL
A member of the firm of Engel &
Engel, attorneys for Defendants
Stan Lee, Selluloid Productions,
Inc., Peter Shanaberg, Morrie
Eiseman and Peter Coffrin

EL & ENGEL                                    -19-

ME00838

DECLARATION OF DONALD S. ENGEL

Donald S. Engel declares and says:

1.    I am a member of the firm of Engel & Engel, attorneys for the moving defendants in this action.  This declaration is made for the purpose of introducing certain documents supplied for purposes of this litigation by representatives of the Marvel Comics Group, a division of defendant Cadence Industries Corporation.  All of the attached items were provided from the files of Marvel Comics Group ("Marvel") from their East Coast offices.

2.    Records of Cadence indicate that Magazine Management Co., Inc. was, and is, a Delaware corporation and a subsidiary of Cadence.  Until the early 1970's, Magazine Management Co., Inc. owned and controlled certain assets related to its business of publishing comic magazines, including the comic magazines which are the subject of this action; at that time, it transferred its comic magazine assets to its parent corporation, Cadence.  Thenceforth, the Marvel division of Cadence published the comic magazines. Both prior and subsequent to such transfer, Magazine Management Co., Inc., Marvel and Cadence all operated out of the same premises, had the same executives, the same bookkeepers and the same accounting department.  For all purposes of this action, said three entities operated as, and should be considered, one entity.

3.    Exhibit A appended hereto consists of copies of the cove

/////

ENGEL & ENGEL

-20-

ME00839

and nine representative pages of the December 9, 1973 issue of a magazine entitled "Adventure into Fear" with "The Man-Thing." As noted on page 1 at the bottom, "FEAR is published by MARVEL COMICS GROUP." There is also the following copyright notice:

Copyright C 1973 by Marvel Comics Group, A Division of Cadence Industries Corporation. All rights reserved. 575 Madison Avenue, New York, N.Y. 10022. Vol. 1, No. 19, December, 1973 issue.

4. According to the best information of Marvel, the first depictions of "Howard the Duck" ("Howard") appear on pages 18 and 26 and the following pages of Exhibit A, where he is introduced as a minor character in this particular comic magazine. Plaintiff Stephen Gerber is listed on page 1 as the "writer," Val Mayerik is listed on page 1 as the "artist," Sal Trapani is listed on page 1 as the "inker," Art Semak is listed on page 1 as the "letterer," Stan G. is listed on page 1 as the "colorist" and Roy Thomas is listed as the "editor."

5. Howard appeared in subsequent issues of this particular magazine, other comic magazines entitled "Giant Size Man-Thing" and later in magazines entitled "Howard the Duck" and in special publications featuring many Marvel characters, such as "Marvel Team Up." Some representative copyright certificates in the name of Marvel Comics Group for these various magazines are appended hereto as Exhibit B.

/////

EL & ENGEL

-21-

ME00840

6.   Exhibit C appended hereto consists of copies of the front and back of a check dated June 1, 1973 drawn against the account of "Marvel Comics Group Division of Cadence Industries Corp." and payable to Gerber in the amount of $285.00 representing payment to Gerber for his work performed as the "writer" of the first comic magazine containing the character Howard, which is Exhibit A hereto.  The following legend on the back is typical of checks endorsed by Gerber which he received on payment for his work:

By endorsement of this check, I, the payee, acknowl-edge full payment [for my] employment by Magazine Management Company, Inc. and for my assignment to it of any copy-right, trademark and any other rights in or related to the material, and including my assignment of any rights to renewal copyright.

7.   During his employment as a free-lance writer for Marvel, Gerber entered into an agreement dated March 18, 1977 with Marvel, a copy of which is appended hereto as Exhibit D.  The following selected clauses contained in that agreement are particularly pertinent to the instant motion:

7.   You agree that Marvel shall have all rights of every kind and nature, in and to the Material, including but not by way of limitation, the right to copyright the same in the name of Marvel, the exclusive right to deal with, publish, and use the Material in any way whatsoever,

L & ENGEL

-22-

ME00841

the right to reprint, rewrite, alter and change the Material, all anthology rights, the right to exploit the Material throughout the world in all languages, the right to use the Material in sales promotions, and for publicity purposes and the right to exploit the Material on television, motion pictures, and radio.

8.   Thereafter, Gerber ("the Employee") and Marvel entered into an agreement dated October 7, 1977, a copy of which is appended hereto as Exhibit E.   That agreement contained, among other things, the following clauses:

1.   Employment.   Marvel hereby employs Employee and Employee hereby agrees to render services to Marvel, as a writer for magazines heretofore and hereinafter published by Marvel.

3.   Compensation.

(a) Basic Compensation.   For the full and faithful performance of Employee's duties and for all services to be provided Marvel hereunder, Marvel shall pay Employee, on a biweekly basis, a salary based on $26.50 per page for each color comic page of script written, and $50.00 for each issue of each standard 32-page comic magazine edited for Marvel and accepted by the Publisher of Marvel (hereinafter the "Material"). . . . .

(e)   Vacation.   Employee shall be entitled to two

EL & ENGEL

-23-

ME00842

(2) weeks of paid vacation each year. . . .

(g)  Employee Benefits.  Employee shall be eligible for all coverage or benefits under any plan or plans of health, hospitalization, life or other insurance available to other employees of Marvel who are paid a similar salary and who have a similar position.

4.(c) ...  Marvel agrees that Employee shall have first option to accept or refuse any additional writing and/or editorial duties connected with the HOWARD THE DUCK feature for any Marvel publication for the term of this Agreement, and that Employee shall be consulted as to the choice of other writers and/or editors who may work on the feature in the event of Employee's refusal. In the event of a license for a film, television or motion picture adaptation of HOWARD THE DUCK, Marvel agrees to recommend to such producer that Employee and Employee only be used by such producer as script and/or story consultant to preserve the integrity of the licensed character.  Employee may accept payment for such services from producer.  . . .

5.  Publisher.  In performing all services required hereunder, Employee shall act under the direction and supervision of the Publisher of Marvel. . . .

-24-

ME00843

7.  Rights to Material.  Employee grants to Marvel the sole and exclusive right to all Material delivered to Marvel hereunder, including but not limited to, (a) the exclusive right to secure copyrights in the Material in the United States, Canada, and throughout the world, (b) the magazine rights therein of every kind, (c) all film and dramatic rights of every kind, (d) all anthology, advertising, and promotion rights therein, and (e) all reprint rights with repayment to Employee for same at Marvel's then-applicable reprint rates. . . .

10.  Series and Ideas.  If any Material delivered hereunder is part of a series, the idea and characters used therein shall constitute Marvel's exclusive property for all times.  Employee shall not be required to submit ideas for new series under the terms of this agreement.

9.  Exhibit F appended hereto is a "Licensing Agreement" entered into on March 12, 1976 between Marvel and Gerber pursuant to which Marvel licensed to Gerber the right to utilize the character Howard solely for the manufacture, sale and distribution of "HOWARD THE DUCK BUTTONS TO BE SOLD VIA MAIL ORDER."  Those rights were limited to the United States and he was required to pay to Marvel as a royalty for the license and rights granted five percent of his gross receipts from sales of the licensed articles.

10.  There are also appended hereto as Exhibits the following

EL & ENGEL

-25-

ME00844

items taken from the correspondence files of Marvel:

(a)   Exhibit G: a letter dated March 24, 1978 from Joseph D. Peckerman, acting as attorney for Gerber, to Marvel, with appended copy of a telegram dated March 21, 1978.

(b)   Exhibit H: a letter dated April 5, 1978 from Steve Gerber to James E. Galton, president of Marvel.

(c)   Exhibit I: a letter dated May 2, 1978 from Stan Lee, publisher of Marvel, to Gerber.

(d)   Exhibit J: a letter dated June 30, 1980 from Henry W. Holmes, Jr., acting as attorney for Gerber, to Marvel Productions.

11.   The foregoing exhibits indicate the dispute which arose between Gerber and Marvel concerning the ownership of the character Howard.  In the telegram dated March 21, 1978 (see Exhibit G), Gerber's then attorney purported to advise Marvel that:

[U]nder the terms of said agreement [dated March 18, 1977], upon the effective date of any such termination, all of your [Marvel's] rights in and to the characters contained in said comic strip shall terminate . . . .

Gerber wrote on April 5, 1978 (Exhibit H):

L & ENGEL

-26-

ME00845

Please be advised that under the terms of our said March 18, 1977 agreement, as of April 27, 1978 . . . Marvel Comics Group's . . . rights to the characters contained in the comic strip "Howard the Duck" shall terminate and Marvel shall have no further rights therein or with respect thereto.

Similarly, Gerber's present attorney by letter dated June 30, 1980 claimed that Gerber, not Marvel, owned all rights to portray the character Howard "in any media or manner" and demanded that Marvel cease and desist from any efforts to license the use of the character and return to Gerber "all materials and proofs and publications" in Marvel's possession which depict the character Howard or its name.

12.   It is apparent from this correspondence that the dispute between Marvel and Gerber can be stated in one sentence:

Who owns the rights to the character Howard?

13.   Exhibit K appended hereto is a copy of an agreement entered into as of September 1, 1980 between Marvel and Selluloid pursuant to which Selluloid is granted an option to utilize the character Howard in a live-action theatrical motion picture and the right, during the option period, to produce and distribute episodic radio programs using the character Howard.   The option period for the motion picture use terminates at midnight September 1, 1981 and the agreement contemplates that if the option is

ME00846

exercised, at some point in the future Selluloid would produce and release a motion picture utilizing the character Howard.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of November, 1980 at Beverly Hills, California.

_____
DONALD S. ENGEL

L & ENGEL

-28-

ME00847



EXHIBIT C                    ME00867

Stephen Gerber
631 Nineth Avenue
New York, New York   10036

This letter will set forth the understanding between you and Marvel Comics Group (Marvel) concerning the services you will perform in connection with the production by Marvel of a daily and Sunday comic strip featuring "Howard the Duck", (The "Feature"), for the Register and Tribune Syndicate, Inc., ("Syndicator").

1. You agree to provide all the ~~artwork~~ *script material* (The Material) required to produce the Feature in accordance with the schedule set up by the Syndicator.  To this end Marvel will advise you of the scheduling as reasonably practicable after it receives such from the Syndicator.

2. You will supply the Material as long as required by Marvel or until the Feature is no longer produced by Marvel.

3. The Material shall be similar in character, design and format to that you have heretofore prepared and written for Marvel's comic magazine featuring said character.

4. It is understood that you will supply said Material to Marvel at your own cost and expense utilizing your own tools, furnishing your own place of work and utilizing your own assistance.

5. Marvel agrees to pay to you 1/3 of the net receipts it receives from the Syndicator 30 days after it receives such.  Net receipts for purposes of this arrangement shall be Marvel's share

of payments received by it from the Syndicator for the Feature less Marvel's out-of-pocket expenses (lettering and coloring) incurred in connection with the production of the Feature. Marvel agrees to furnish copies of monthly statements of net receipts from Syndicator and an accounting of Marvel's expenses for lettering and coloring.

6. You acknowledge that the Syndicator has the sole and absolute authority to sell and/or license the Feature as it sees fit and determine all selling and licensing costs.

7. You agree that Marvel shall have all rights of every kind and nature, in and to the Material, including but not by way of limitation, the right to copyright the same in the name of Marvel, the exclusive right to deal with, publish, and use the Material in any way whatsoever, the right to reprint, rewrite, alter and change the Material, all anthology rights, the right to exploit the Material throughout the world in all languages, the right to use the Material in sales promotions, and for publicity purposes and the right to exploit the Material on television, motion pictures, and radio.

In the event Marvel sells or licenses the Material for uses other than the daily and Sunday comic strip, then Marvel shall pay to you one third of the net receipts (less any applicable commissions or expenses) it receives from such sale and/or license.

8. You warrant and represent to Marvel that:

(a) that you are the sole artist of the Material;

(b) that the Material is original and does not infringe

-50-

ME00869

upon any existing common law or statutory copyright or upon any common law right, proprietary right, civil right, or any other right whatsoever;

(c) that the Material contains no matter that is scandalous, obscene, libelous or otherwise contrary to law; and

(d) that the rights herein conveyed to Marvel have not heretofore been assigned, pledged, or otherwise encumbered.

9. Writer shall be given proper credit notice in all advertising and promotion used by the Syndicate.

10. This letter represents the entire understanding between you and Marvel and may not be changed orally. The agreement shall be governed by the laws of the State of New York and may be terminated by Marvel upon thirty (30) days prior written notice and by Stephen Gerber upon ninety (90) days written notice.

Very truly yours,

MARVEL COMICS GROUP

By _____
James E. Galton, President

Accepted and Agreed to this
18th day of March, 1977.

By _____
Stephen Gerber

-51-

**ME00870**

-1-

ГЕ/ц

AGREEMENT dated October 7th, 1977 between MARVEL COMICS GROUP (hereinafter called "Marvel") and STEPHEN R. GERBER (hereinafter called "the Employee").

WHEREAS Marvel is desirous of retaining employee as a writer, for its magazines and Employee is willing to render such services on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and of the mutual promises and undertakings herein contained, and for other good and valuable considerations, the parties agree as follows:

1. Employment. Marvel hereby employs Employee and Employee hereby agrees to render services to Marvel, as a writer for magazines heretofore and hereinafter published by Marvel.

2. Term.

(a) Initial Term. The term of this Agreement shall be for one year commencing November 1, 1977 and ending October 31, 1978 (sometimes referred to as the employment years and each 12-month period shall be referred to as an "employment year").

(b) Renewal Terms. In the absence of notice to the contrary given by either party to the other not less than sixty (60) days prior to the expiration of the Initial Term hereof, this Agreement shall be automatically renewed for one year on the

EXHIBIT F

ME00871

same terms and conditions as those herein set forth except to the extent provided below. There shall be like renewals from year to year thereafter, in the absence of like notice given no less than sixty (60) days prior to the expiration of the then current term.

3. Compensation.

(a) Basic Compensation. For the full and faithful performance of Employee's duties and for all services to be provided Marvel hereunder, Marvel shall pay Employee, on a biweekly basis, a salary based on $26.50 per page for each color comic page of script written, and $50.00 for each issue of each standard 32-page comic magazine edited for Marvel and accepted by the Publisher of Marvel (hereinafter the "Material"). For purposes of this Agreement, Employee shall deliver to Marvel during each employment year (Nov. 1 thru Oct. 31) 612 pages at the rate of approximately 51 pages per month, and shall perform editorial duties on twelve (12) standard 32-page comic magazines at the rate of one magazine per month, according to the reasonable schedules and deadlines set by the Publisher of Marvel. In this respect Employee will make all changes and rework all Material as reasonably required by the Publisher of Marvel without charge (that is, reworks and changes shall not constitute pages for the purposes of computing compensation hereunder).

ME00872

(b) Additional Compensation. Employee shall be paid additional compensation for the following services, but only if and to the extent requested from time to time by Marvel:

(i) All pages written for Marvel in excess of the minimum amounts set forth in paragraph 3(a) above in any employment year at the rates set forth in paragraph 3(a) above.

(ii) All pages written or editorial duties performed for publications in any format other than that of the standard four-color or black-and-white Marvel comics magazines. Rates for such material shall be determined separately from this Agreement, and agreed upon in writing by Marvel and the Employee.

Additional compensation shall be paid to Employee within thirty (30) days after submission and acceptance of such material by Marvel.

(c) Notwithstanding anything contained herein, Marvel shall, upon 60 days prior written notice, have the right in the event of a general reduction of production or of work force, or in the event of a partial closing as a result of economic conditions, to reduce the amount(s) of work product required of Employee with a proportionate reduction in pay and other benefits provided for herein. Such reduction shall be only in proportion to the actual reduction of comic books required by Marvel and shall be applied only after the

-54-

ME00873

(d) In the event such reduction as provided for in paragraph 3(c) results in the Employee's no longer earning what he deems to be a reasonable living wage, the Employee shall have the right, upon sixty (60) days prior written notice, to terminate the Agreement.

(e) <u>Vacation</u>.   Employee shall be entitled to two (2) weeks of paid vacation each year.  At the option of Marvel such vacation may take the form of Employee being required to deliver, in any given employment year, not more than fifty (50) weeks of weekly work product and being paid for fifty-two (52) weeks of weekly work product, or may take the form of Employee delivering fifty-two (52) weeks of work product with Marvel paying an additional two (2) weeks salary. Marvel shall have the sole option to divide such vacation rights between time off and payments consistent with the terms of this sub-paragraph.  Should vacation take the form of time off, such vacation time shall be at the discretion of Employee provided however, that such vacation time does not conflict with Marvel's production schedule.  Weekly work product shall be one fifty-second of total annual work product.

(f) <u>Payment Dates</u>.  Marvel will pay Employee's salary on a bi-weekly basis or at such other intervals consistent with payroll policies then in effect relating to salaried

ME00874

employees doing similar functions as Employee. Marvel shall have the right to withhold salary in the event that Employee falls behind in meeting his work requirement by one month's work product. Reimbursement of authorized (in writing and in advance of the expenditure) business expenses shall be paid in accordance with Marvel's policies relating thereto. Marvel agrees that salary checks shall be mailed to Employee via Special Delivery on the day of issue.

(g) Employee Benefits. Employee shall be eligible for all coverage or benefits under any plan or plans of health, hospitalization, life or other insurance available to other employees of Marvel who are paid a similar salary and who have a similar position.

4. (a) Conflict. During the period of this Agreement, Employee will attend to his duties with due diligence, and not engage directly or indirectly in the production of any other color or black-and-white comics magazines/ which are periodicals or books competitive with Marvel, or in any activity which could be detrimental to Marvel or which may conflict with Employee's duties hereunder.

(b) Editorial Stipulations. Selection as to the magazines or features written by Employee for Marvel, as well as of artists, letterers, and colorists thereof shall be determined by Marvel, except as provided for below.

-56-

ME00875

--6--

(c) The sole exception to paragraph 4(b) shall be the feature entitled HOWARD THE DUCK, for which Marvel engages Employee's services as writer and editor for the term of this Agreement, except in the event of said feature's discontinuation. Marvel agrees that Employee shall have first option to accept or refuse any additional writing and/or editorial duties connected with the HOWARD THE DUCK feature for any Marvel publication for the term of this Agreement, and that Emplyee shall be consulted as to the choice of other writers and/or editors who may work on the feature in the event of Employee's refusal. In the event of a license for a film, television or motion picture adaptation of HOWARD THE DUCK, Marvel agrees to recommend suggest to such producer that Employee and Employee only be used by such producer as script and/or story consultant to preserve the integrity of the licensed character. Employee may accept payment for such services from producer.

Marvel further agrees that any change in Marvel's policy regarding the rights of artists and writers to income derived from the licensing of their creations for purposes of commercial exploitation shall be applicable also to the Employee and to HOWARD THE DUCK from that day forward.

(d) Extent of Service. Employee agrees not to draw, write, or edit any comic book or comic magazine material for anyone other than Marvel during the term of this Agreement without the prior written approval of Marvel.

-57-

**ME00876**

(e) Credits. Employee shall be given credit as writer and/or editor in all comics in which he is the sole writer and/or editor, and in any reprint of same.

5. Publisher. In performing all services required hereunder, Employee shall act under the direction and supervision of the Publisher of Marvel. Employee shall consult with him on all matters dealing with editorial policies, in order to assure the efficiency and harmonious operation of Marvel and to meet with the Publisher of Marvel at regular intervals at Marvel's offices in New York, N.Y. Employee shall accept assignments from the Publisher of Marvel to write and/or edit all magazines presently published or hereafter published by Marvel and further agrees that he will make no commitments whatsoever (whether financial or otherwise) on behalf of Marvel without the prior written consent of the Publisher of Marvel.

6. Termination. Nothing in this Agreement shall be construed to prevent Marvel from terminating Employee's employment hereunder at any time (a) because of his fraud, misappropriation, embezzlement, or the like, or (b) if he has become so disabled as to preclude him from rendering satisfactory services, or (c) if he shall have violated any provision of this Agreement, or (d) in the event Employee falls behind in submitting material to the extent of two (2) months' work requirement for whatever cause, or (e) Employee's work has not met the performance

ME00877

-58-

standards stated herein or required by Marvel from other employees performing similar services as Employee. In any such event, except as provided in (b) above, all obligations of Marvel hereunder shall cease and Employee shall be liable to Marvel for breach of this Agreement.

It is likewise understood that no provision of this Agreement shall be construed to prevent the Employee from terminating his employment hereunder at any time because of (a) willful fraud or misrepresentation on the part of Marvel, (b) Marvel's inability to provide work assignments in sufficient quantity as specified in paragraph 3(d), or (c) Marvel's violation of any provision of this Agreement. In any such events, all obligations of Employee shall cease.

~~and Marvel shall be liable to Employee for breach of this Agreement.~~

7. <u>Rights to Material.</u>  Employee grants to Marvel the sole and exclusive right to all Material delivered to Marvel hereunder, including but not limited to, (a) the exclusive right to secure copyrights in the Material in the United States, Canada, and throughout the world, (b) the magazine rights therein of every kind, (c) all film and dramatic rights of every kind, (d) all anthology, advertizing, and promotion rights therein, and (e) all reprint rights with repayment to Employee for same at Marvel's then-applicable reprint rates. The exclusive rights herein granted shall pertain to all languages

**ME00878**

-59-

8. Originality of Material. Employee represents that the Material submitted by him will be original and not heretofore published and that it will not infringe upon any statutory copyright, common law copyright, or any other proprietary right.

9. Use of Name. Marvel shall at all times have the right to use Employee's name and likeness in connection with the sale, promotion, and distribution of any magazines which include Material delivered to Marvel by Employee.

10. Series and Ideas. If any Material delivered hereunder is part of a series, the idea and characters used therein shall constitute Marvel's exclusive property for all times. Employee shall not be required to submit ideas for new series under the terms of this agreement.

11. Additional Documents. Employee shall, at Marvel's expense, take such steps and execute and deliver such further documents from time to time as Marvel may request for the purpose of confirming the rights herein granted to Marvel.

12. Notices. Any notices required or permitted to be given under this Agreement shall be sufficient if in writing and if

ME00879

sent by registered mail to his residence in the case of the Employee, or to Publisher, Marvel Comics Group at its principal office in the case of Marvel (with a copy to Secretary and Counsel, Cadence Industries Corporation, 21 Henderson Drive, West Caldwell, New Jersey 07006).

13. <u>Waiver of Breach</u>. The waiver by Marvel of a breach of any provision of this Agreement by the Employee shall not operate or be construed as a waiver of any subsequent breach by the Employee. The waiver by the Employee of a breach of any provision of this Agreement by Marvel shall not operate or be construed as a waiver of any subsequent breach by Marvel.

14. <u>Covenants</u>. Employee agrees that he shall not make and/or sign any other contract or agreement, written or oral, which shall be in conflict with the terms of this Agreement or prevent or hinder his performance hereunder for the length of this Agreement or any extension or renewal thereof, and further agrees that he has the full and unrestricted right to enter into this Agreement and deliver the material hereunder.

15. <u>Assignment</u>. The rights and obligations of Marvel under this Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of Marvel.

-61-

ME00880

16.  Entire Agreement.  This instrument contains the entire Agreement of the parties.  It may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.

17.  Extraneous Agreements.  It is understood that this Agreement in no way alters, supercedes, or nullifies any separate and/or previous agreement between Marvel and the Employee except in regard to working arrangements on the standard four-color or black-and-white comic magazines published by Marvel.


18.  Arbitration.  Any claim, dispute or controversy arising out of or in connection with this Agreement or the breach thereof will be submitted by either party to arbitration in New York City before three arbitrators appointed by the American Arbitration Association.  The arbitration will proceed under the rules of the Association then obtaining.  The award of the arbitrators will be binding and conclusive on both parties, and will be rendered in such form that a judgment may be entered thereon in the highest court of any forum having jurisdiction.

-62-

ME00881

IN WITNESS WHEREOF the parties have executed this

Agreement on

ATTEST

*Janine Shand*

MARVEL COMICS GROUP

By *[signature]*

WITNESS

*[signature]*

*Stephen R. Gerber*
Employee          10/26/77

OFFICIAL SEAL
SUE W. JOHNSON
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My comm. expires FEB 27, 1979

ME00882