TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 3630
Los Angeles, CA 90067
Tel:   310-246-3333
Fax:   310-246-3101
MToberoff@ipwla.com

Attorneys for Defendants Lisa R. Kirby, Barbara J. Kirby, Neal L. Kirby and Susan M. Kirby

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARVEL WORLDWIDE, INC.,
MARVEL CHARACTERS, INC. and
MVL RIGHTS, LLC,

                         Plaintiffs,

   -against-

LISA R. KIRBY, BARBARA J. KIRBY,
NEAL L. KIRBY and SUSAN M. KIRBY,

                         Defendants.

---

LISA R. KIRBY, BARBARA J. KIRBY,
NEAL L. KIRBY and SUSAN M. KIRBY,

                         Counterclaimants,

   -against-

MARVEL ENTERTAINMENT, INC.,
MARVEL WORLDWIDE, INC.,
MARVEL CHARACTERS, INC., MVL
RIGHTS, LLC, THE WALT DISNEY
COMPANY and DOES 1 through 10,

                         Counterclaim-Defendants.

Civil Action No.  10-141 (CM) (KF)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE DECLARATIONS AND CERTAIN EXHIBITS**

[Hon. Colleen McMahon]
[ECF Case]

# TABLE OF CONTENTS

INTRODUCTION ..............................................................................................................1

ARGUMENT......................................................................................................................1

I.      The Declarations of Joe Sinnott and James Steranko Are Proper ..........................1

II.     The Kirbys' Supporting Exhibits Were Properly Disclosed During
Discovery .................................................................................................................6

CONCLUSION.................................................................................................................11

# TABLE OF AUTHORITIES

**Federal Cases**

*Coleman v. Keebler Co.*,
997 F. Supp. 1102 (N.D. IN. 1998) ..................................................................................4

*Gayle Martz, Inc. v. Sherpa Pet Group, LLC*,
2009 U.S. Dist. LEXIS 80929 (S.D.N.Y. Sep. 2, 2009).................................................. 7-8

*Highland Capital Mgmt., L.P. v. Schneider*,
551 F. Supp. 2d 173 (S.D.N.Y. 2008)................................................................................4

*Sealy v. Gruntal & Co.*,
1998 U.S. Dist. LEXIS 15654 (S.D.N.Y. Oct. 7, 1998) .....................................................4

**Federal Statutes, Rules and Regulations**

F.R.C.P. 26(e)(1)(A) ................................................................................................ *passim*

F.R.C.P. 26, Notes of Advisory Committee on 1993 Amendments ............................... 3-4

**Other Authorities**

Schwarzer, Tashima, Wagstaffe,
*Federal Civil Procedure Before Trial*, § 11:1245 (Rutter Group 2010)..............................3

8A Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 2049.1 (2010).............................................................4

6-26 *Moore's Federal Practice – Civil* § 26.132[4] ..........................................................4

## INTRODUCTION

Defendants/counterclaimants Lisa R. Kirby, Barbara J. Kirby, Neal L. Kirby and Susan M. Kirby ("Kirbys"), the children of renowned comic book artist Jack Kirby ("Kirby"), hereby oppose plaintiffs/counterclaim-defendants Marvel Worldwide, Inc., Marvel Characters, Inc. and MVL Rights LLC, together with counterclaim-defendants The Walt Disney Company and Marvel Entertainment, Inc.'s (collectively, and including predecessors, "Marvel") motion to strike the (1) the declarations of Joe Sinnott and James Steranko and (2) certain documents Marvel erroneously claims were never produced in this action. Both witnesses were disclosed *by Marvel* during Marvel's deposition of the Kirbys' expert witnesses, John Morrow and Mark Evanier. Marvel's claims that certain documents cited by the Kirbys were not "produced" also misrepresents the record, as such documents were properly disclosed during discovery. These declarations and exhibits are all properly before this Court and Marvel's motion to strike should be denied in its entirety.

## ARGUMENT

**I.     The Declarations of Joe Sinnott and James Steranko Are Proper**

Marvel's objection to the declarations of Joe Sinnott and James Steranko, on the basis that the Kirbys did not list them as witnesses in their Rule 26 initial disclosures ("Initial Disclosures") and/or did not amend such disclosures to include the witnesses, is unfounded. These individuals were brought up *by Marvel* as potential witnesses during the depositions of the Kirbys' experts, John Morrow and Mark Evanier. For example, Marvel specifically questioned Mr. Morrow at his January 10, 2011 deposition about a December 18, 1995 interview he conducted of Mr. Sinnott, who worked extensively with Marvel during the operative 1958-1963 period in question ("Time Period"). Declaration of Marc Toberoff ("Tob. Dec.") Ex. A at

1

262:10-263:4.  The interview was Exhibit 25 to the deposition. Tob. Dec., Ex. B ("Joe Sinnott Interview").  Mr. Morrow's interview was published in his magazine, *The Jack Kirby Collector,* No. 9.  *Id*., Ex. A at 262:22-23.

In response to Marvel's questioning, Mr. Sinnott was also discussed by the Kirbys' expert Mark Evanier in his December 6, 2010 deposition:

> Q: Who else have you talked to?
> A: About?
> Q: About Marvel history.
> A: Marvel History? Every year I go to the Comic Convention in San Diego and talk to dozen, if not hundreds, of people about Marvel history …. I talked to a pretty large percentage of people who worked for Marvel or worked freelance for Marvel …. People I have talked to about Marvel: Steve Ditko, Don Heck, Wally Wood, Gene Colan, John Buscema, Saul Buscema, Marie Severin, Did I say Roy Thomas, Gary Friedrich, Alan Brodsky, Sol Brodsky, Janice Cohen, John Verpooten, Tony Mortellano, Herb Trimpe, Chick Stone, *Joe Sinnott*, Frank Giacoia, Mike Esposito, Barry Smith…"

Tob. Dec. Ex. C at 20:12-21:16 (emphasis added).  Marvel followed up by asking Mr. Evanier:

> Q: Do you know who the people were who worked at Marvel between '58 and '63 that you talked to?
> A: Are you talking about people in the office or talking about freelancers?
> Q: Either.
> ∗∗∗
> A: …People who did freelance work for Marvel during '58 and '63 would include Jack Kirby, Steve Ditko, Don Heck, Dick Ayers, Gene Colan, Vince Colletta, Russ Heath, Stan Goldberg…*Joe Sinnott*, Larry Lieber, Don Rico. I think George Roussos…"

*Id*., Ex. C at 22:17-22; 22:23-23:25 (emphasis added).

Mr. Morrow was similarly questioned *by Marvel* at his deposition about an article he had written involving James Steranko.  *Id*., Ex. A at 256:8-259:6.  The article was an introduction to a collection of Nick Fury Agent of S.H.I.E.L.D. comics published by Marvel and was marked by Marvel as an exhibit at Mr. Morrow's deposition. Tob. Dec. Ex. A at 256:8-16, Ex. D.  "Nick Fury" is one of the characters at issue in this case.  *See* Complaint at ¶ 14. Marvel questioned Mr. Morrow about the article's contents, focusing on Jack Kirby allegedly "filling in" for Mr.

2

Steranko on a comic book when Mr. Steranko was "running late" on a publishing deadline.  *Id*., Ex. A at 256:8-259:6.  Marvel then asked several questions directed at bolstering their theory that Marvel bore the financial risk of creation because it had deadlines.  For instance:

> Q: And [Kirby's pages] were intended as an assurance against Jim Steranko not turning in his pages on time?
> A: Not assurance exactly, they thought Mr. Steranko wasn't going to turn in his pages in time and had to get the issue out on time, so they turned to Jack Kirby, knowing he could turn a story around in a weekend.

*Id*., Ex. A at 257:6-12.

In fact, Marvel's specific questioning of the Kirbys' experts as to Mssrs. Sinnott and Steranko, and reliance on exhibits concerning these individuals, *caused* the Kirbys to do research as to them.

In light of the above, Marvel cannot complain that the Kirbys did not supplement their Initial Disclosures to include Mssrs. Sinnott and Steranko as persons "likely to have discoverable information."  F.R.C.P. 26(a)(1)(A)(i).  Marvel was clearly more aware than the Kirbys that these witnesses had relevant information regarding this case and could have readily taken their depositions if it so desired.  Notably, "the duty to supplement does not apply if the additional or corrective information has otherwise 'been made known to the other parties during the discovery process or in writing.'" Schwarzer, Tashima, Wagstaffe, *Federal Civil Procedure Before Trial*, § 11:1245 (Rutter Group 2010), *quoting* F.R.C.P. 26(e)(1)(A).  If, as here, "the identity of a new witness who had not been disclosed in the early disclosure…may have 'been made known' through deposition testimony … no duty to supplement is required." *Id*.  *See also* F.R.C.P. 26, Notes of Advisory Committee on 1993 Amendments ("There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, *as when a witness not previously disclosed is*

3

*identified during the taking of a deposition* or when an expert during a deposition corrects information contained in an earlier report.") (emphasis added).

This is consistent with numerous other cases decided in this district. *See Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 202 (S.D.N.Y. 2008) (denying a motion *in limine* to exclude a witness who was not disclosed pursuant to Rule 26 in part because the witness became known to the opposing party during discovery through the production of documents); *Sealy v. Gruntal & Co.*, 1998 U.S. Dist. LEXIS 15654, at *4–5 (S.D.N.Y. Oct. 7, 1998) (failure to supplement an interrogatory answer to list witnesses did not merit their preclusion because all but one of the witnesses were identified in pretrial deposition testimony). *See also* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2049.1 (2010) ("As to material omissions [from initial disclosures], further disclosures are only necessary when the omitted or after-acquired information 'has not otherwise been made known to the other parties during the discovery process.' ") (quoting F.R.C.P. 26(e)(1)(A)); 6-26 *Moore's Federal Practice – Civil* § 26.132[4] ("If a party or party's attorney believes that the adverse party already knows the information to be updated by supplementation or correction, the court may well determine, in its sound discretion, that there is no violation of Rule 26(e)."); *Coleman v. Keebler Co.*, 997 F. Supp. 1102, 1107 (N.D. IN. 1998) ("The duty to supplement does not require an application of form over substance.").

Both Messrs. Steranko and Sinnott were plainly "made known to the other parties during the discovery process or in writing.'" F.R.C.P. 26(e)(1)(A). Accordingly, the Kirbys were not required to gratuitously supplement their Initial Disclosures, and Steranko and Sinnott's testimony cannot be stricken on this basis. It was only after *Marvel* brought up these witnesses' names and produced interviews and other documents relating to them that the Kirbys, after

4

further investigation, elected to call Mssrs. Sinnott and Steranko to rebut Marvel's claims.

Marvel also weakly argues that Mssrs. Steranko and Sinnott's testimony is "cumulative." This argument is strange, as Marvel, itself, has proffered at least four witnesses that worked for Marvel both during the Time Period and outside it: Stan Lee, Larry Lieber, Roy Thomas and John Romita. It is entirely proper for the Kirbys to offer testimony from other freelancers from the Time Period (Sinnott) and just after it (Steranko). These witnesses can properly testify to their personal knowledge of how Marvel treated them and other freelancers during the 1960s and into the 1970s. *See* Declaration of Joe Sinnott (Docket No. 92) at ¶¶ 3-15; Declaration of James Steranko (Docket No. 94) at ¶¶ 4-16.

Lastly, Marvel's hyperbolic claims of "sandbagging" or prejudice are not credible in light of the fact that Marvel had more advance knowledge than the Kirbys of these witnesses but did not bother to depose them; nor did it bother to depose several witnesses the Kirbys *did list* in their Initial Disclosures, including Mssrs. Colan and Ayers – freelance artists who indisputably worked with Marvel during the Time Period and knew Jack Kirby. *See* Declaration of Jodi Kleinick, Ex. 1 at 1-2; F.R.C.P. 26(a)(1)(A)(i). In fact, Marvel, which, at the time of the Initial Disclosures, had far greater knowledge of potential witnesses and control over relevant information, should arguably have included in their Initial Disclosures Mssrs. Sinnott and Steranko, plus freelance artists such as Stan Goldberg, Gene Colan, and Dick Ayers, who worked with Marvel in the Time Period. Marvel listed ***none*** of these witnesses, even though it knew them to be persons "likely to have discoverable information" relevant to this important case. Tob. Dec., Ex. E at 1-2. F.R.C.P. 26(a)(1)(A)(i).

Hypocritically, Marvel seeks to bar the testimony of Mssrs. Steranko and Sinnott, even though Marvel relied on the testimony of Larry Lieber in support of its summary judgment

5

motion and listed Lieber as a witness in the Joint Pretrial Order (at 92), but *did not list* Mr. Lieber in its Initial Disclosures nor supplement such disclosures to include Mr. Lieber. Tob. Dec. Ex. E at 1-2. Even in response to the Kirbys' explicit interrogatory requesting the identity of all witnesses on which Marvel intended to rely, Marvel did not disclose Mr. Lieber nor ever amend its interrogatory response pursuant to F.R.C.P. 26 (e)(1)(A) to include Mr. Lieber. Tob. Dec. Ex. F at 2. Of course, the Kirbys did not and would not seek to preclude Mr. Lieber on the grounds advanced here by Marvel, because he had "been made known" to them "during the discovery process or in writing." F.R.C.P. 26(e)(1)(A).

## II. The Kirbys' Supporting Exhibits Were Properly Disclosed During Discovery

<u>Morrow Decl., Ex. B</u>: *The Fantastic Four: The Lost Adventure* comic book, Exhibit B to the Declaration of John Morrow (Docket No. 89), is also properly before this Court. Marvel seeks to exclude the comic book on the basis that the Kirbys' expert John Morrow did not formally produce it. However, Mr. Morrow discussed his considerable involvement with this particular comic book in detail in his expert report:

> In 2006, Marvel Comics requested my assistance in re-assembling an entire unpublished *Fantastic Four* story by Jack Kirby. The genesis of this project was an article I wrote about this unused story in my publication, *The Jack Kirby Collector,* in 1996. Prior to my 1996 article, the unused *Fantastic Four* story was unknown to the public at large, and to the then-current Marvel Comics editorial department. The story was originally drawn and plotted by Kirby as his next-to-last issue of *Fantastic Four*, but it was rejected and went unused and unpaid. Sections of the story were eventually cut up, rearranged, and used as part of a later issue of *Fantastic Four* after Kirby was no longer working with the company, and much of the remaining art was lost over time until I was able to track it down in private collections, for use in my 1996 article. Marvel paid me to update my *Jack Kirby Collector* article, which was used as both as an Afterword in a *Fantastic Four* reprint collection in 2006, and an introduction to the stand-alone *Fantastic Four: The Lost Adventure* #1 comic book in 2008, wherein Marvel commissioned Stan Lee to finally add dialogue to Kirby's plotted/penciled pages, over 35 years after Kirby drew them. In the course of this project, Marvel paid Jack Kirby's estate $325 per page for the use of that unused story Kirby drew in 1970.

Declaration of John Morrow ("Mor. Dec."), Ex. A at 3-4.

Not surprisingly, Marvel asked Mr. Morrow about this particular passage during its deposition of him:

> Q: Let me direct your attention to page three of your report…and specifically to the sentence [that] appears to be the third sentence in the second full paragraph which I'll read for the record, "Prior to my 1996 article, the unused Fantastic Four story was unknown to the public at large and to the then current Marvel Comics editorial department." What is the factual basis—well, first of all, let me ask you, is it intended by you to be a statement of fact that the current Marvel editorial board was unaware of the unused story?
> A: Yes.
> Q: And that's a statement of fact?
> A: Yes.
> Q: And how—what is the basis for that statement of fact?
> A: The main basis for that is Tom Brevoort, who is an editor, or still is an editor up at Marvel, when he contacted me about reassembling that story, the sense I got from our discussion was that prior to my doing an article in 1996, they didn't even know about the story. As for the public at large, same thing, all of those letters of comment that we got to our publication, after we published that article…[they] said wow, we had no idea there was an unused Fantastic Four story out there. The fact that Marvel bills this publication as this lost Fantastic Four story further leads me to conclude that no one knew about this thing.

Tob Dec., Ex. A at 137:20-139:4. *See also*, Ex. A at 91:13-92:5. This comic book was recently manufactured and sold by *Marvel* and already in its possession. Mor. Dec., Ex. B. Accordingly, Marvel's own comic book did not need to be produced back to it as it had already "been made known to [Marvel] during the discovery process or in writing." FRCP 26(e)(1)(A).[1] *See Gayle Martz, Inc. v. Sherpa Pet Group, LLC*, 2009 U.S. Dist. LEXIS 80929, at *21–22 (S.D.N.Y. Sep. 2, 2009) (Evidence not excluded when "any corrective information that [Plaintiff] might have provided in supplements to its discovery responses was at all times known to Defendants..."). In

---

[1] Moreover, in response to Marvel's requests for expert documents the Kirbys objected: "Defendants object to the Document Request to the extent it seeks the production of…documents or information already in Plaintiffs' possession…" Tob. Dec., Ex. G at ¶ 7. Marvel never moved in response to this objection.

7

light of these factors, the comic book is properly before this Court.

  Toberoff Decl., Exhibits Y, GG, JJ and OO:  Exhibits Y, GG, JJ, and OO are all excerpts from *The Collected Jack Kirby Collector*, Volume 5 and Volume 6.  These documents were disclosed and specifically made available to Marvel by Mr. Morrow pursuant to its subpoena of his records.  Tob. Dec., Ex. A at 249:3-18; 250:5-9, Ex. J.  *The Collected Jack Kirby Collector* is edited and published by Morrow, a fact well known to Marvel as it has relied on Mr. Morrow for expert advice and forwards to Marvel's publications over the years.  Mor. Dec., Ex. A at 2-4.  Mr. Morrow nonetheless disclosed in his expert report that he has produced 55 issues of *The Jack Kirby Collector*, many of which he has "collated" into seven volumes called *The Collected Jack Kirby Collector.* Mor. Dec. Ex. A at 1-2.  *The Collected Jack Kirby Collector* Vol. 5 contains issues 20-22 of *The Jack Kirby Collector*, while *The Collected Jack Kirby Collector* Vol. 6 contains issues 23-26 thereof. Tob. Dec. Exs. H; I.

  In response to Marvel's subpoena, Mr. Morrow produced a very detailed list to Marvel on December 21, 2010 entitled "List of Research Materials in Possession of John Morrow" that relate to Jack Kirby, and stated therein that he had "complete runs" of *The Jack Kirby Collector*.  Tob. Dec. Ex. J at Bates no. JM282-285.  Due to the voluminous nature of material relating to Jack Kirby, the parties had established a practice with respect to other witnesses, like Roy Thomas and Mark Evanier, whereby in response to a subpoena, witnesses would supply lists of such periodicals or books relating to Jack Kirby so the subpoenaing party could chose which to inspect and/or have copied.  Tob. Dec. Ex. K;[2] Ex. L.

  Although Marvel received Mr. Morrow's detailed list, which included all issues of *The Jack Kirby Collector* and all volumes of *The Collected Jack Kirby Collector*, it did not ask for or

---

[2] The Kirbys' expert Mark Evanier also disclosed and made available for copying issue nos. 1-54 of *The Jack Kirby Collector*, which, again, Marvel chose not to copy.  *Id.*

8

arrange that these be copied, but did ask for three documents set forth on the list. Tob. Dec. Ex. A at 249:3-250:15.

Marvel questioned Mr. Morrow about the list at his deposition:

> Q: I place before you Exhibit 19, which bears production numbers JM282 through 285. Is this a document you prepared?
> A: Yes.
> Q: And it's headed list of research materials in possession of John Morrow. What was the purpose of your preparation of this document?
> A: You had sent a request for documentation from…people doing the expert reports, which Mr. Toberoff's office forwarded to me, and if I'm remembering correct, I believe part of that request was you guys were asking for this.
> Q: Where are the documents that are identified in Exhibit 19?
> A: The items listed are all in my home about 20 miles from here.

Tob. Dec. Ex. A at 249:3-22.

Marvel then requested *other* documents from Mr. Morrow's list, but did not request any volumes of *The Collected Jack Kirby Collector*:

> Mr. Fleischer: Let me make a request for the record for copies of the Birnbaum interview identified under item five … So the other ones on this document that I'd like to see are the documents under—identified in number seven on Exhibit 19, number 10 and 11.

*Id.*, Ex. A at 249:23-250:15. Marvel cannot selectively request documents, and then complain about documents that it was aware of, but did not simply ask for.

Marvel's own witness Roy Thomas listed having issues nos. 1-54 of *The Jack Kirby Collector*, as well as the first five volumes of *The Collected Jack Kirby Collector*, in his own disclosure. *Id.*, Ex. L. Marvel has itself cited to *The Jack Kirby Collector*, No. 54 in support of its motion for summary judgment. *See* Declaration of Randi Singer, Ex. 42. Accordingly, it is indisputable that Marvel was aware of these documents, that such were made available to them for inspection and copying and that it chose not to review them.

To all of these exhibits, Marvel also offered a boilerplate "inadmissible hearsay"

9

objection, which is too general to be meaningful. The interviews of Jack Kirby (Exs. JJ and OO) are properly before the Court as they are not offered for the proof of the matter asserted - that Kirby did write or script the material he submitted to Marvel - but to show Kirby's state of mind at the time regarding his relationship with Marvel. FRE 803. As Kirby is dead, it is no surprise that Marvel itself extensively relied on alleged "hearsay" statements made by Kirby in interviews in support of its motion. *See* Singer Decl. Ex. 39 at MARVEL0018273, Exs. 41, 43 (Interviews with Jack Kirby). Marvel's hearsay objection to Exhibit GG is strange. The Kirbys offered this exhibit to show how Kirby's famous margin notes were replicated in the actual dialogue balloons of his stories (Ex GG at 193) in opposition to Marvel's own reliance on a different set of margin notes. *See* Singer Decl. Ex. 42 at MARVEL0017976) *See also* Opp. 56.1 Statement at ¶ 63. Accordingly, Marvel's rote objections should not be sustained.

  Exhibit LLL:  Exhibit LLL is the copy of the cover of *Challengers of the Unknown*, No. 1. Again, this comic book, drawn by Kirby, was discussed by both Mssrs. Morrow and Evanier in their expert reports as a precursor to *The Fantastic Four*. Mor. Dec., Ex. A at 11 ("Many view *The Fantastic Four* as a descendant of Kirby's *Challengers of the Unknown* due to parallels between the works, particularly in a story that first appeared in *Challengers of the Unknown* # 2 (Aug./Sept 1958), several years before the debut of the *Fantastic Four* in November 1961."); Declaration of Mark Evanier (Docket No. 88), Ex. A at 14-15 ("Like *Fantastic Four*, *Challengers of the Unknown* depicted the adventures of *four* people who form a team after surviving an air crash.") (emphasis added). Again, Marvel questioned both Mssrs. Morrow and Evanier *extensively* about this comic book at their depositions. Tob. Dec., Ex. A at 184:14-186:2; Ex. C at 228:16-231:9. Therefore, Marvel's cries of prejudice, especially over the mere *cover* to a comic book it discussed and had ready access to, ring hollow.

Exhibit JJJ:  Exhibit JJJ consists of true and correct copies of excerpts from the 1963 treatise *Nimmer on Copyright* by Melville B. Nimmer, which was provided as a convenience to the Court due to the age of the treatise and its possible unavailability.  It is not customary nor required that a party attach copies of the legal authorities it is citing.  Considering that Marvel is not disputing the authenticity of this exhibit, it is plainly admissible.

Exhibit FFF:  Finally, Exhibit FFF is a true and correct copy of an article entitled "Jack Kirby: A By-the-Month Chronology" for the periods 1950-1959 and 1960-1964 from the online database marvelmasterworks.org.  This exhibit lists comic books Jack Kirby did during these years.  First, the site itself claims it is for "promotion of the Masterworks, Essentials and trade paperback line of books as well as Marvel Comics and their properties." Second, this exhibit is merely expanding upon the list Marvel produced in this action in the book *The Art of Jack Kirby* (MARVEL0018249). *See* Declaration of Marc Toberoff in Opposition to Summary Judgment (Docket No. 102), Ex. X at MARVEL0018462-66 ("Jack Kirby Publication Timeline").

## CONCLUSION

For the foregoing reasons, Marvel's motion to strike should be denied in its entirety.

Dated: April 22, 2011                     Respectfully submitted,
                                          TOBEROFF & ASSOCIATES, P.C.

                                          /s/ Marc Toberoff

                                          Marc Toberoff
                                          2049 Century Park East, Suite 3630
                                          Los Angeles, California 90067
                                          Tel.        (310) 246-3333
                                          Facsimile:  (310) 246-3101
                                          E-mail:     mtoberoff@ipwla.com

                                          Attorneys for defendants
                                          Lisa R. Kirby, Barbara J. Kirby, Neal L.
                                          Kirby and Susan M. Kirby

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was served electronically by the Court's ECF system and by first class mail on those parties not registered for ECF pursuant to the rules of this court.

Dated: April 22, 2011

Respectfully submitted,
TOBEROFF & ASSOCIATES, P.C.

/s/ Marc Toberoff

Marc Toberoff
2049 Century Park East, Suite 3630
Los Angeles, California 90067
Tel.       (310) 246-3333
Facsimile: (310) 246-3101
E-mail:    mtoberoff@ipwla.com

Attorneys for defendants
Lisa R. Kirby, Barbara J. Kirby, Neal L. Kirby and Susan M. Kirby